# DOCKET NO.
# 11-2174-cr

In The
## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,
Appellee,

-v-

FLAY ROOD,
Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPENDIX FOR DEFENDANT-APPELLANT
## FLAY ROOD

# TABLE OF CONTENTS[1]

DOCKET REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 1

CLERK'S CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 15

INDICTMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 16

INFORMATION TO ESTABLISH PRIOR CONVICTION. . . . . . . . . . . . . . A. 22

PRIOR STATE CONVICTION RECORDS.. . . . . . . . . . . . . . . . . . . . . . . . . A. 25

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
    TO DISMISS OR STRIKE THE PRIOR CONVICTION ALLEGATION
    OF THE INDICTMENT AND THE SPECIAL INFORMATION FILED
    BY THE GOVERNMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 32

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION.. . . . . . . A. 44

EXHIBIT A TO GOVERNMENT'S MEMORANDUM IN OPPOSITION. . A. 65

DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
    IN OPPOSITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 68

DISTRICT COURT'S DECISION AND ORDER RESERVING ON
    DEFENDANT'S MOTION REGARDING HIS PRIOR
    CONVICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 76

TRANSCRIPT OF PLEA HEARING.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 78

DEFENDANT'S SENTENCING MEMORANDUM. . . . . . . . . . . . . . . . . . A. 94

GOVERNMENT'S SENTENCING MEMORANDUM. . . . . . . . . . . . . . . . A. 105

---

[1] The Presentence Report (PSR) and Statement of Reasons (SOR) have been filed under seal.

GOVERNMENT'S SUPPLEMENTAL SENTENCING
     MEMORANDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 119

TRANSCRIPT OF SENTENCING HEARING. . . . . . . . . . . . . . . . . . . . . . A. 126

JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 158

NOTICE OF APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A. 164

Case 11-2174, Document 17, 10/04/2011, 408740, Page4 of 167

APPEAL, CLOSED

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [LIVE - Version 4.2] (Syracuse)
# CRIMINAL DOCKET FOR CASE #: 5:10-cr-00149-DNH All Defendants

Case title: USA v. Rood

Magistrate judge case number: 5:09-mj-00461-GHL

Date Filed: 03/25/2010

Date Terminated: 05/26/2011

Assigned to: Judge David N. Hurd

Appeals court case number: 11-2174 2nd Circuit

## Defendant (1)

**Flay Rood**
*TERMINATED: 05/26/2011*
*also known as*
Flay B. Rood
*TERMINATED: 05/26/2011*

represented by **Melissa A. Tuohey**
Office of the Federal Public Defender - Syracuse Office
Districts of Northern New York & Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202
315-701-0080
Fax: 315-701-0081
Email: melissa.tuohey@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public*

A. 1

Case 11-2174, Document 17, 10/04/2011, 408740, Page5 of 167

*Defender or Community Defender Appointment*

## Pending Counts

18:2251(a).F SEXUAL EXPLOITATION OF CHILDREN (1-3)

18:2252A(a)(2)(A).F and 18:2252A(a)(5)(B).F ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (4-5)

## Disposition

Deft committed to BOP for a term of Life on Cts. 1 thru 3; 15 years on Cts 4 & 5; 10 years on Ct. 6 of the Indictment to be served concurrently; supervised release for a term of life on each count to be served concurrently with standard and special conditons; $600.00 special assessment also imposed. Deft shall forfeit to the United States all items listed in the Preliminary Order of Forfeiture. Deft remanded.

Deft committed to BOP for a term of Life on Cts. 1 thru 3; 15 years on Cts 4 & 5; 10 years on Ct. 6 of the Indictment to be served concurrently; supervised release for a term of life on each count to be served concurrently with standard and special conditons; $600.00 special assessment also imposed. Deft shall forfeit to the United States all items listed in

A. 2

18:2252A(a)(2)(A).F and
18:2252A(a)(5)(B).F
ACTIVITIES RE MATERIAL
CONSTITUTING/CONTAINING
CHILD PORNO
(6)

the Preliminary Order of
Forfeiture. Deft
remanded.

Deft committed to BOP
for a term of Life on Cts.
1 thru 3; 15 years on Cts
4 & 5; 10 years on Ct. 6
of the Indictment to be
served concurrently;
supervised release for a
term of life on each count
to be served concurrently
with standard and special
conditons; $600.00
special assessment also
imposed. Deft shall
forfeit to the United
States all items listed in
the Preliminary Order of
Forfeiture. Deft
remanded.

**Highest Offense Level**
**(Opening)**

Felony

**Terminated Counts**                    **Disposition**

None

**Highest Offense Level**
**(Terminated)**

None

**Complaints**                    **Disposition**

18:2252A.F - Sexual Exploitation

A. 3

of Children, and 18:2252 Sexual
Exploitation of Minors

---

**Plaintiff**

**USA**                    represented by **Lisa M. Fletcher**
                                          Office of the United States
                                          Attorney - Syracuse
                                          P.O. Box 7198
                                          100 South Clinton Street
                                          Syracuse, NY 13261-7198
                                          315-448-0672
                                          Fax: 315-448-0658
                                          Email:
                                          lisa.fletcher@usdoj.gov
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE*
                                          *NOTICED*

                                          **Geoffrey J.L. Brown**
                                          Office of United States
                                          Attorney - Syracuse Office
                                          100 South Clinton Street
                                          P.O. Box 7198
                                          Syracuse, NY 13261
                                          315-448-0695
                                          Fax: 315-448-0689
                                          Email:
                                          geoffrey.brown2@usdoj.gov
                                          *ATTORNEY TO BE*
                                          *NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2009 | 1 | SEALED COMPLAINT: as to Sealed Defendant (1). (jmb) Modified on 9/30/2009. Unsealed on 9/30/09. |

A. 4

Case 11-2174, Document 17, 10/04/2011, 408740, Page8 of 167

| | | |
|---|---|---|
| | | (sal, ). (sal, ). [5:09-mj-00461-GHL] (Entered: 09/29/2009) |
| 09/28/2009 | 2 | SEALING ORDER: Sealing the # 1 Complaint as to Sealed Defendant until further Order of the Court. Signed by Magistrate Judge George H. Lowe on 9/28/09. (jmb) (sal, ). [5:09-mj-00461-GHL] (Entered: 09/29/2009) |
| 09/28/2009 | | TEXT MOTION for Writ of Habeas Corpus ad prosequendum for 9/30/09 at 3:30 PM before Magistrate Judge David E. Peebles, filed by USA as to Sealed Defendant. (jmb) [5:09-mj-00461-GHL] (Entered: 09/29/2009) |
| 09/28/2009 | 3 | ORDER: granting the [] Text Motion for Writ of Habeas Corpus ad prosequendum as to Sealed Defendant (1). Signed by Magistrate Judge George H. Lowe on 9/28/09. (jmb) (sal, ). [5:09-mj-00461-GHL] (Entered: 09/29/2009) |
| 09/30/2009 | | TEXT Order to Unseal Case as to Flay B. Rood. Authorized by Magistrate Judge David E. Peebles on 9/30/09. (sal, ) [5:09-mj-00461-GHL] (Entered: 09/30/2009) |
| 09/30/2009 | | Attorney update in case as to Flay B. Rood. Attorney Melissa A. Tuohey added. (sal, ) [5:09-mj-00461-GHL] (Entered: 09/30/2009) |
| 09/30/2009 | | TEXT Minute Entry for proceedings held before Magistrate Judge David E. Peebles: Initial Appearance as to Flay B. Rood held on 9/30/2009. Copy of criminal complaint is provided to the Deft.. The Deft. is advised of his rights. Maximum penalty of charges is stated. Financial Affidavit is reviewed and Judge finds the Deft. eligible for appointment of counsel. Judge appoints the OFPD as counsel. The Gov't. moves for detention of the Deft.. The Deft. is currently being held on state charges and waives his right to a detention hearing. Preliminary hearing is set for 10/14/09 at 10:00 AM before Judge |

A. 5

Case 11-2174, Document 17, 10/04/2011, 408740, Page9 of 167

| | | |
|---|---|---|
| | | Peebles. The Deft. is remanded to the custody of the USMS. APP: Lisa Fletcher, AUSA, Melissa Tuohey, Asst. FPD, and USPO: Ellen Phillips. (FTR Recorded). (sal, ) [5:09-mj-00461-GHL] (Entered: 09/30/2009) |
| 09/30/2009 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Flay B. Rood. Signed by Magistrate Judge David E. Peebles on 9/30/09. (sal, ) [5:09-mj-00461-GHL] (Entered: 09/30/2009) |
| 10/01/2009 | 5 | ORDER Approving Waiver of Detention Hearing as to Flay B. Rood. Signed by Magistrate Judge David E. Peebles on 10/1/09. (sal, ) [5:09-mj-00461-GHL] (Entered: 10/01/2009) |
| 10/01/2009 | 6 | NOTICE OF ATTORNEY APPEARANCE: Melissa A. Tuohey appearing for Flay B. Rood (Tuohey, Melissa) [5:09-mj-00461-GHL] (Entered: 10/01/2009) |
| 10/05/2009 | 7 | WAIVER of Preliminary Examination or Hearing by Flay B. Rood (Tuohey, Melissa) [5:09-mj-00461-GHL] (Entered: 10/05/2009) |
| 10/05/2009 | 8 | ORDER Approving 7 Waiver of Preliminary Examination as to Flay B. Rood. Signed by Magistrate Judge David E. Peebles on 10/5/09. (sal, ) (sal, ). [5:09-mj-00461-GHL] (Entered: 10/05/2009) |
| 10/09/2009 | 9 | STIPULATION by USA to 90 Day Extension of Time (Fletcher, Lisa) [5:09-mj-00461-GHL] (Entered: 10/09/2009) |
| 10/13/2009 | 10 | STIPULATION AND ORDER TO CONTINUE - Ends of Justice as to Flay B. Rood; Time excluded from 10/13/09 until 12/30/09. Signed by Magistrate Judge George H. Lowe on 10/13/09. (rjb, ) [5:09-mj-00461-GHL] (Entered: 10/13/2009) |
| 12/30/2009 | 11 | STIPULATION by USA to Enlargement of Time (Fletcher, Lisa) [5:09-mj-00461-GHL] (Entered: 12/30/2009) |

A. 6

| | | |
|---|---|---|
| 12/30/2009 | 12 | STIPULATION/ORDER TO CONTINUE - Ends of Justice as to Flay B. Rood; Time excluded from 12/30/2009 until 3/1/10. Signed by Magistrate Judge George H. Lowe on 12/30/2009. (amt) [5:09-mj-00461-GHL] (Entered: 12/30/2009) |
| 03/02/2010 | 13 | STIPULATION by USA to Enlargement of Time (Fletcher, Lisa) [5:09-mj-00461-GHL] (Entered: 03/02/2010) |
| 03/02/2010 | 14 | STIPULATION/ORDER TO CONTINUE - Ends of Justice as to Flay B. Rood, Time excluded from 3/2/10 until 5/2/10. Signed by Magistrate Judge George H. Lowe on 3/2/10. (rjb, ) [5:09-mj-00461-GHL] (Entered: 03/04/2010) |
| 03/25/2010 | | TEXT Minute Entry for proceedings held before Magistrate Judge David E. Peebles: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed. No special requests. APP: Lisa Fletcher, AUSA, Steno: Sue Byrne, Clerk: Shelly Muller. (sal, ) (Entered: 03/25/2010) |
| 03/25/2010 | 15 | INDICTMENT as to Flay Rood (1) count(s) 1-3, 4-6. (sal, ) (Entered: 03/25/2010) |
| 03/25/2010 | 16 | NOTICE TO DEFENDANT'S COUNSEL: An Indictment dated 3/25/10 regarding your client has been filed with the court. In the event the defendant wishes to waive appearance for an arraignment, both the defendant and defendant's counsel must complete and electronically file with the court the attached form by 4/2/10. If the court does not receive the form by the above date the court will IMMEDIATELY schedule the arraignment of your client. (sal, ) (Entered: 03/25/2010) |
| 03/26/2010 | 17 | NOTICE OF ATTORNEY APPEARANCE Geoffrey J.L. Brown appearing for USA *for the forfeiture aspects of the case* (Brown, Geoffrey) (Entered: 03/26/2010) |
| 04/01/2010 | 18 | WAIVER of Personal Appearance at Arraignment and |

A. 7

Case 11-2174, Document 17, 10/04/2011, 408740, Page11 of 167

|  |  | Entry of Plea of Not Guilty by Flay Rood (Tuohey, Melissa) (Entered: 04/01/2010) |
|---|---|---|
| 04/01/2010 | 19 | INFORMATION TO ESTABLISH PRIOR CONVICTION as to Flay Rood (Fletcher, Lisa) (Entered: 04/01/2010) |
| 04/05/2010 | 20 | ORDER Approving 18 Waiver of Presence at Arraignment and Entry of Not Guilty Plea filed by Flay Rood. Signed by Magistrate Judge David E. Peebles on 4/5/10. (sal, ) (Entered: 04/05/2010) |
| 04/05/2010 | 21 | CRIMINAL PRETRIAL SCHEDULING ORDER as to Flay Rood. Motions to be filed by 5/3/2010. Jury Trial set for 6/7/2010 09:30 AM in Utica before Judge David N. Hurd. Signed by Magistrate Judge David E. Peebles on 4/5/10. (sal, ) (Entered: 04/05/2010) |
| 05/06/2010 | 22 | Stipulation & ORDER TO CONTINUE - Ends of Justice as to Flay Rood Time excluded from 5/6/2010 until 8/6/2010. Jury Trial set for 8/9/2010 09:30 AM in Utica before Judge David N. Hurd. Motions to be filed by 7/9/2010 & shall be made returnable on 7/23/2010.Signed by Judge David N. Hurd on 5/6/2010. (see) (Entered: 05/06/2010) |
| 07/09/2010 | 23 | MOTION to Strike *Or Dismiss The Prior Conviction Allegation of the Indictment and The Special Information Filed By the Government* by Flay Rood. Motion Hearing set for 7/23/2010 10:00 AM in Utica before Judge David N. Hurd Response to Motion due by 7/6/2010 Reply to Response to Motion due by 7/12/2010. (Attachments: # 1 Memorandum of Law)(Tuohey, Melissa) (Entered: 07/09/2010) |
| 07/09/2010 |  | Set/Reset Deadlines re Motion in case as to Flay Rood 23 MOTION to Strike *Or Dismiss The Prior Conviction Allegation of the Indictment and The Special Information Filed By the Government*. Response to Motion due by 7/30/2010 Reply to Response to Motion due by |

**A. 8**

| | | |
|---|---|---|
| | | 8/13/2010. Motion Hearing set for 8/27/2010 ON SUBMIT. Ct. to issue written order. (cmr, ) (Entered: 07/09/2010) |
| 07/28/2010 | | Set/Reset Deadlines re Motion as to Flay Rood 23 MOTION to Strike *Or Dismiss The Prior Conviction Allegation of the Indictment and The Special Information Filed By the Government*. Response to Motion due by 8/4/2010 Reply to Response to Motion due by 8/16/2010. Motion Hearing set for 8/27/2010 ON SUBMIT per oral order of Judge David N. Hurd. (cmr, ) (Entered: 07/28/2010) |
| 08/04/2010 | 24 | Cross-Motion for Reciprocal Discovery and RESPONSE to Motion by USA as to Flay Rood re 23 MOTION to Strike *Or Dismiss The Prior Conviction Allegation of the Indictment and The Special Information Filed By the Government* (Attachments: # 1 Affidavit, # 2 State Conviction Information, # 3 Certificate of Service) (Fletcher, Lisa) Modified on 9/21/2010, noted that document is a cross-motion. (see) (Entered: 08/04/2010) |
| 08/13/2010 | 25 | REPLY TO RESPONSE to Motion by Flay Rood re 23 MOTION to Strike *Or Dismiss The Prior Conviction Allegation of the Indictment and The Special Information Filed By the Government* (Tuohey, Melissa) (Entered: 08/13/2010) |
| 11/18/2010 | 26 | Stipulation & ORDER TO CONTINUE - Ends of Justice as to Flay Rood Time excluded from 11/18/2010 until 1/18/2011. Jury Trial set for 1/18/2011 09:30 AM in Utica before Judge David N. Hurd. Motions to be filed by 12/20/2010 & shall be made returnable on 1/14/2011.Signed by Judge David N. Hurd on 11/18/2010. (see) (Entered: 11/18/2010) |
| 11/19/2010 | 27 | DECISION & ORDER that deft's 23 Motion to Strike or dismiss the prior conviction allegation in the Indictment and the Special Information is DENIED without prejudice as to Flay Rood; and the Government's 24 Cross-Motion |

A. 9

Case 11-2174, Document 17, 10/04/2011, 408740, Page13 of 167

| | | |
|---|---|---|
| | | for Discovery is DENIED without prejudice as to Flay Rood.Signed by Judge David N. Hurd on 11/19/2010. (see) (Entered: 11/19/2010) |
| 12/05/2010 | | NOTICE OF HEARING as to Flay RoodVideo Change of Plea Hearing set for 12/22/2010 10:30 AM, 12th Floor Video Conference Room in Syracuse before Judge David N. Hurd. Appearance required. (cmr, ) (Entered: 12/05/2010) |
| 12/23/2010 | 28 | Minute Entry for proceedings held before Judge David N. Hurd:Video Change of Plea Hearing as to Flay Rood held on 12/22/2010, Plea entered by Flay Rood (1) Guilty Count 1-6. Deft remanded. (Court Reporter Nancy Freddoso) (cmr, ) (Entered: 12/23/2010) |
| 12/23/2010 | 29 | GUIDELINE ORDER as to Flay Rood Sentencing set for 5/20/2011 02:00 PM in Utica, NY. Government Sentencing Memo Deadline 4/29/2011 Defendant Sentencing Memo Deadline 4/29/2011. Signed by Judge David N. Hurd on 12/23/2010. (cmr, ) (Entered: 12/23/2010) |
| 12/28/2010 | 30 | Letter as to Flay Rood requesting that the proposed Preliminary Order be signed and filed with the Court (Attachments: # 1 proposed Preliminary Order of Forfeiture)(Brown, Geoffrey) (Entered: 12/28/2010) |
| 01/10/2011 | 31 | PRELIMINARY ORDER OF FORFEITURE as to Flay Rood. {Six certified copies mailed to AUSA Brown on 1/10/2011} Signed by Judge David N. Hurd on 1/10/2011. (see) (Entered: 01/10/2011) |
| 01/25/2011 | 32 | PROCESS RECEIPT AND RETURN: Filed by the US Marshals o/b/o USA as to the arrest of the computer equipment referenced herein. Said property has been in USM custody since 1/10/2011. (mae) (Entered: 01/26/2011) |
| 02/11/2011 | 33 | PROCESS RECEIPT AND RETURN: Filed by the US Marshals o/b/o the USA as to the service of a certified |

A. 10

| | | copy of the Preliminary Order and accompanying documents upon Cheryl Rood by certified mail on 1/25/2011. (mae) (Entered: 02/11/2011) |
|---|---|---|
| 02/22/2011 | 34 | SERVICE by Publication *Internet Notice of Publication was published for 30 consecutive days, beginning on January 23, 2011* filed by USA (Brown, Geoffrey) (Entered: 02/22/2011) |
| 04/12/2011 | 35 | PRESENTENCE INVESTIGATION REPORT - INITIAL DISCLOSURE [LODGED] as to Flay Rood. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (mkh, ) (Entered: 04/12/2011) |
| 04/28/2011 | 36 | SENTENCING MEMORANDUM by USA as to Flay Rood (Fletcher, Lisa) (Entered: 04/28/2011) |
| 05/02/2011 | 37 | SEALED DOCUMENT/Exhibit A to 36 Government Sentencing Memorandum with Order to Seal - maintained in Clerk's Office and not available for electronic viewing. (see) Modified on 5/2/2011, added description of document. (see) (Entered: 05/02/2011) |
| 05/03/2011 | 38 | First SENTENCING MEMORANDUM by Flay Rood (Tuohey, Melissa) (Entered: 05/03/2011) |
| 05/03/2011 | 39 | PRESENTENCE INVESTIGATION REPORT - FINAL DISCLOSURE [LODGED] as to Flay Rood. The final version of the Presentence Investigation Report, including |

A. 11

Case 11-2174, Document 17, 10/04/2011, 408740, Page15 of 167

| | | |
|---|---|---|
| | | all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (dct, ) (Entered: 05/03/2011) |
| 05/11/2011 | 40 | SEALED Supplemental Sentencing Letter with letters of support - maintained in Clerk's Office and not available for electronic viewing. (see) (Entered: 05/11/2011) |
| 05/11/2011 | 41 | Order to Seal Document #40 as to Flay Rood. Signed by Judge David N. Hurd on 5/11/2011. (see) (Entered: 05/11/2011) |
| 05/11/2011 | | NOTICE OF HEARING as to Flay Rood Sentencing reset for 5/20/2011 11:00 AM in Utica before Judge David N. Hurd. Appearance required. Please adjust your calendars to reflect this change.(cmr, ) (Entered: 05/11/2011) |
| 05/13/2011 | 42 | Second SENTENCING MEMORANDUM by USA as to Flay Rood (Fletcher, Lisa) (Entered: 05/13/2011) |
| 05/16/2011 | | Set/Reset Hearings as to Flay Rood: Sentencing reset for 5/19/2011 02:30 PM in Utica before Judge David N. Hurd. Appearance required. Please adjust your calendars to reflect this change.(cmr, ) (Entered: 05/16/2011) |
| 05/16/2011 | 43 | SEALED Exhibit A to Government's 42 Response to Deft's Sentencing Memorandum with attached Sealing Order - maintained in Clerk's Office and not available for electronic viewing. (see) (Entered: 05/16/2011) |
| 05/20/2011 | 44 | Minute Entry for proceedings held before Judge David N. Hurd:Sentencing held on 5/19/2011 for Flay Rood in Utica, NY (1), Count(s) 1-3, Deft committed to BOP for a term of Life on Cts. 1 thru 3; 15 years on Cts 4 & 5; 10 years on Ct. 6 of the Indictment to be served |

A. 12

| | | |
|---|---|---|
| | | concurrently; supervised release for a term of life on each count to be served concurrently with standard and special conditons; $600.00 special assessment also imposed. Deft shall forfeit to the United States all items listed in the Preliminary Order of Forfeiture. Deft remanded. (Court Reporter Nancy Freddoso) (cmr, ) (Entered: 05/20/2011) |
| 05/20/2011 | 45 | STATUS REPORT *notifying the Court that no ancillary claims have been filed and that the Preliminary Order of Forfeiture is now final as to the defendant and no separate Final Order will be presented* by USA as to Flay Rood (Brown, Geoffrey) (Entered: 05/20/2011) |
| 05/26/2011 | 46 | JUDGMENT as to Flay Rood (1), Count(s) 1-3, 4-5, 6, Deft committed to BOP for a term of Life on Cts. 1 thru 3; 15 years on Cts 4 & 5; 10 years on Ct. 6 of the Indictment to be served concurrently; supervised release for a term of life on each count to be served concurrently with standard and special conditons; $600.00 special assessment also imposed. Deft shall forfeit to the United States all items listed in the Preliminary Order of Forfeiture. Deft remanded. Signed by Judge David N. Hurd on 5/26/2011. (see) (Entered: 05/26/2011) |
| 05/26/2011 | 47 | STATEMENT OF REASONS [LODGED] as to Flay Rood **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (cmr, ) (Entered: 05/26/2011) |
| 05/27/2011 | 48 | NOTICE OF APPEAL, re: 46 Judgment by Flay Rood No fee paid. (Tuohey, Melissa) (Entered: 05/27/2011) |
| 05/27/2011 | 49 | ELECTRONIC NOTICE AND CERTIFICATION as to Flay Rood sent to US Court of Appeals, re: 48 Notice of Appeal - Final Judgment. (Attachments: # 1 Criminal Appeals Packet for Appellant)(see) (Entered: 05/27/2011) |

A. 13

| 06/07/2011 | 50 | TRANSCRIPT REQUEST by Flay Rood for proceedings held on 12/22/10 and 5/19/11 before Judge Hurd. (Tuohey, Melissa) (Entered: 06/07/2011) |
| 08/09/2011 | | USCA Case Number is 11-2174 for 48 Appeal filed by Flay Rood. (cbm ) (Entered: 08/09/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/06/2011 13:00:05 | | | |
| PACER Login: | pd0125 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 5:10-cr-00149-DNH |
| Billable Pages: | 9 | Cost: | 0.72 |

A. 14

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## ELECTRONIC NOTICE OF CRIMINAL APPEAL & CLERK'S CERTIFICATION

Dear Clerk of the Court,

Please take notice that on May 27, 2011 the court received a notice of appeal. This notice serves to inform you of the pending appeal and provides you with the information needed to process the appeal.

I, LAWRENCE K. BAERMAN, CLERK, U.S. District Court for the Northern District of New York, DO, HEREBY CERTIFY that the foregoing docket entries, with the exception of the documents listed below, are maintained electronically on the court's CM/ECF system and constitute the Record on Appeal in the below listed action.

The following documents *are not* available electronically in the Utica Clerk's Office. Please notify our office if you need any of the following documents:

Docket No.(s):   37, 40, and 43 (Sealed Documents)

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of said Court to be hereto affixed at the City of Utica, New York, this 27th day of May, 2011.

Lawrence K. Baerman, Clerk
U.S. District Court

By:     s/Susan Evans
        Deputy Clerk

### Case Information

Case Name & Case No.       USA v. Flay Rood     5:10-CR-0149
Docket No. of Appeal:      48
Document Appealed:         46

Fee Status:    Paid ___          Due ___            Waived (IFP/CJA) X

Counsel:    CJA X             Retained ___       Pro Se ___

Time Status:   Timely X          Untimely ___

A. 15



U.S. DISTRICT COURT - N.D. OF N.Y.

FILED

MAR 2 5 2010

AT_____ O'CLOCK

Lawrence K. Baerman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

**************************************

**UNITED STATES OF AMERICA,**

v.

**FLAY ROOD,**

Defendant.

**************************************

Criminal No. 5: 10-CR- 149 (DNH)

**I N D I C T M E N T**

| 18 USC § 2251(a) | 3 Counts |
| 18 USC §2252A(a)(2)(A) | 2 Counts |
| 18 USC §2252A(a)(5)(B) | 1 Count |

## THE GRAND JURY CHARGES:
### COUNT 1

In or about January 2005, in the Northern District of New York, and elsewhere,

### FLAY ROOD,

the defendant herein, did knowingly use, persuade, induce, entice, and coerce a minor, to wit: V-1,

a male child who was born in 1997, and whose identity is known to the grand jury, to engage in

sexually explicit conduct for the purpose of producing a visual depiction of such conduct, where the

visual depiction was produced using materials that had been mailed, shipped, and transported in

interstate and foreign commerce.

In violation of Title 18, United States Code, Section 2251(a).

A. 16

**THE GRAND JURY FURTHER CHARGES:**
**COUNT 2**

In or about January, 2008, in the Northern District of New York, and elsewhere,

**FLAY ROOD,**

the defendant herein, did knowingly use, persuade, induce, entice, and coerce a minor, to wit: V-2, a male child who was born in 2005, and whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, and where the visual depictions were actually transported in interstate commerce.

In violation of Title 18, United States Code, Section 2251(a).

**THE GRAND JURY FURTHER CHARGES:**
**COUNT 3**

In or about March, 2008, in the Northern District of New York, and elsewhere,

**FLAY ROOD,**

the defendant herein, did knowingly use, persuade, induce, entice, and coerce a minor, to wit: V-3, a male child who was born in 2005, and whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Section 2251(a).

2

A. 17

**THE GRAND JURY CHARGES:**
<u>**COUNT 4**</u>

On or about August 17, 2009, in the Northern District of New York, and elsewhere,

**FLAY ROOD,**

the defendant herein, did knowingly distribute and attempt to distribute child pornography using a means and facility of interstate and foreign commerce shipped and transported in and affecting such commerce, including by computer, in that the defendant made one or more graphic video files containing images of a minor or minors engaged in sexually explicit conduct available to be downloaded by another person through use of a Peer to Peer file sharing network.

In violation of Title 18, United States Code, Section 2252A(a)(2)(A).

**THE GRAND JURY FURTHER CHARGES:**
<u>**COUNT 5**</u>

From in or about 2008, through in or about August, 2009, in the Northern District of New York, and elsewhere,

**FLAY ROOD,**

the defendant herein, did knowingly receive child pornography that, using a means and facility of interstate and foreign commerce, had been transported in and affecting interstate commerce by any means, including by computer, in that the defendant, using a computer connected to the Internet and a Peer to Peer file sharing network, downloaded numerous graphic image and video files of minors engaged in sexually explicit conduct.

In violation of Title 18, United States Code, Section 2252A(a)(2)(A).

3

A. 18

Case 11-3174 Document 17 10/04/2011 408740 Page 22 of 167

## THE GRAND JURY FURTHER CHARGES:
### COUNT 6

On or about August 31, 2009, in the Northern District of New York,

### FLAY ROOD,

the defendant herein, did knowingly possess and attempt to possess and access with intent to view material that contained an image or images of child pornography that had been transported using a means and facility of interstate commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is: numerous graphic image and video files of minors engaged in sexually explicit conduct.

In violation of Title 18, United States Code, Section 2252A(a)(5)(B).

### PRIOR CONVICTION ALLEGATION

Defendant **FLAY ROOD** has the following prior final conviction relating to the aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward:

On or about February 1, 1991, in the Court of Common Pleas, Clark County Ohio, **FLAY ROOD** entered a plea of guilty to the crime of Gross Sexual Imposition, a felony in the third degree, in violation of Ohio R.C. Section 2907.05, which, at the time of the defendant's conviction, made it unlawful to have sexual contact with another, not the spouse of the offender, when the other person is less than thirteen years of age. The basis of the conviction was that **ROOD** rubbed the penis of a 2 year old child while he also had his own penis in his hand.

As a result of the above conviction, on or about February 1, 1991, **FLAY ROOD** was sentenced to a term of imprisonment of 2 years; the sentence was suspended, and ROOD was placed

4

A. 19

on probation for 2 years with a condition that he serve 90 days in jail.

The foregoing conviction results in increased potential punishment under Title 18, United States Code, Sections 2251(e), 2252A(b)(1) and (b)(2), and under Title 18, United States Code, Section 3559(e) (Mandatory life imprisonment for repeated sex offenses against children).

## THE GRAND JURY FURTHER CHARGES:
## FORFEITURE ALLEGATION

The allegations contained in Counts 1-6 of this Indictment are hereby realleged and incorporated by reference herein for the purposes of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 2253.

As a result of committing the offenses alleged in Counts 1-6 of this Indictment, pursuant to 18 U.S.C. Section 2253(a) and upon conviction of the charges alleged in Counts 1-6, defendant **FLAY ROOD** shall forfeit to the United States: (1) his interest in any visual depiction described in Section 2251, 2251A, 2252, 2252A, 2252B, or 2260 of Title 18, United States Code, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Chapter 110 of the United States Code; (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property, to include the following items which constitute or contain such depictions, and/or were used and intended to be used to commit the offenses alleged in this Indictment:

  (a)  one Compaq Presario computer serial # CNH5471KQL;
  (b)  one JVC GRD-270 camcorder serial # 080L3622;
  (c)  one Kingston Data Traveler USB Thumb Drive; and
  (d)  3 Compact Disks.

A. 20

If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant-

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party,
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 18, United States Code, Section 2253(b), (incorporating 21 U.S.C. 853(p)) to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

Dated: March 25, 2010

A TRUE BILL,

FOREPERSON

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

By:

Lisa M. Fletcher
Assistant U.S. Attorney
Bar Roll #510187

6

A. 21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **SPECIAL INFORMATION** |
| | : | **REGARDING PRIOR CONVICTION** |
| **v.** | : | **PURSUANT TO 18 U.S.C. §§ 2251(e),** |
| | | **2252A(b)(1) and (b)(2), and 3559(e)** |
| | | |
| **FLAY ROOD,** | : | Criminal No. 5:10-CR-149 (DNH) |
| | : | |
| Defendant. | : | |
| | : | |

THE UNITED STATES ATTORNEY ALLEGES:

Defendant **FLAY ROOD** has the following prior final conviction relating to the aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward:

On or about February 1, 1991, in the Court of Common Pleas, Clark County Ohio, **FLAY ROOD** entered a plea of guilty to the crime of Gross Sexual Imposition, a felony in the third degree, in violation of Ohio R.C. Section 2907.05, which, at the time of the defendant's conviction, made it unlawful to have sexual contact with another, not the spouse of the offender, when the other person is less than thirteen years of age. The basis of the conviction was that **ROOD** rubbed the penis of a 2 year old child while he also had his own penis in his hand.

As a result of the above conviction, on or about February 1, 1991, **FLAY ROOD** was sentenced to a term of imprisonment of 2 years; the sentence was suspended, and **ROOD** was placed on probation for 2 years with a condition that he serve 90 days in jail.

The foregoing conviction results in increased potential punishment under Title 18, United

A. 22

States Code, Sections 2251(e), 2252A(b)(1) and (b)(2), and under Title 18, United States Code,

Section 3559(e) (Mandatory life imprisonment for repeated sex offenses against children).


                                        RICHARD S. HARTUNIAN
                                        United States Attorney

Dated: April 1, 2010              By:    ___/s/_____
                                        Lisa Marie Fletcher
                                        Assistant U.S. Attorney
                                        Bar Roll No. 510187

A. 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK


**************************************
THE UNITED STATES OF AMERICA,

     v.                                  Criminal No.
                                          5:10-CR-149 (DNH)

FLAY ROOD,

           Defendant.
**************************************


## CERTIFICATE OF SERVICE

    I hereby certify that on April 1, 2010, I electronically filed the **Special Information**

**Regarding Prior Conviction** with the Clerk of the District Court using the CM/ECF system.


Melissa Tuohey, Esq.

                      /s/_____

                      Tayler Robinson

A. 24

Pros. 500-U

BARRETT BROTI   PUBLISHERS, SPRINGFIELD, OHIO

# BILL OF INFORMATION

### Crim. Rule 7(B)

THE STATE OF OHIO,

Clark ................................................................ County }   COMMON PLEAS COURT

I ........ Stephen A. Schumaker ................................................... *the Prosecuting Attorney of this*

*County, says by way of information that,* (2) ................................ Flay B. Rood ....................................,

*the Defendant, on or about* ...... January 6th ...... *, 19* 91 *did in this County violate*

(3) ........ Ohio Revised Code Section 2907.05 ........................................................


XXXXX ............... in that he did have sexual contact with another, not his

spouse, and the other person involved being less than thirteen

years of age,


FILED

FEB 1 10 37 AM '91

RON ·
COMMON ·· COURT,
CLARK COUNTY, OH


*Contrary to section* ................................ *of the Revised Code of Ohio, and against*
*the peace and dignity of the State of Ohio.*

*Stephen W. Schumaker by*

*Kathleen C. Lorchansky*

Prosecutor's Signature by himself
or by an Assistant Prosecutor

A 25   GOVERNMENT EXHIBIT
B

2. Defendant's Name
3. Statute
4. Description in terms of Statute

# VERIFICATION

*CLARK*

The State of Ohio,.................................................................County.

....................................................................., *being duly sworn according to law, says that he is the Prosecuting Attorney of said County and that the allegations and charges set forth in the within information are true as he verily believes.*

*Sworn to before me and subscribed in my presence this*

.................day of.................MAY 1 8 2010.................19......

*Clerk of the Common Pleas Court of said County*

---

On this.................1st.................day of
.................February.................19 91
the within named.................
.................Flay B. Rood.................

*Defendant arraigned, and pleads*
.................guilty to this information.................
Ronald E. Vincent

By.................*Clerk*
.................*Deputy*

No.................91-CR-

Crim. Doc.................Page.................

COMMON PLEAS COURT

.................Clark.................County, Ohio

THE STATE OF OHIO
*vs.*
Flay B. Rood

INFORMATION FOR

Gross Sexual Imposition (F-3)

Filed.................19 91
.................*Clerk of said Court*
By.................*Deputy Clerk*

BARRETT BROTHERS, PUBLISHERS, SPRINGFIELD, OHIO
81-2-5

A. 26

Case 11-2174, Document 17, 10/04/2011, 408740, Page30 of 167

Clk. 279-N.

BARF    BROTHERS, PUBLISHERS, SPRINGFIELD, OHIO

# Waiver of Indictment
### Revised Code, Sec. 2941.02.1, 2941.021

COURT OF COMMON PLEAS _____Clark_____ COUNTY, OHIO

THE STATE OF OHIO
vs.

Flay B. Rood

No. 91-CR-37

I, _____Flay B. Rood_____, defendant in the above cause, having been advised by the Court of the nature of the charge against me, and of my rights under the Constitution, and being represented by counsel, do hereby waive in writing and in open Court, prosecution by indictment, and consent to prosecution by information in the Common Pleas Court.   and waive 24 hour service.

Defendant

Signed in open Court this _____ day of _____January_____, 19 91

Judge

RON V.
COMMON
CLARK

FEB 1 10 37 AM '91

FILED

CLERK
COMMON COURT
CLARK COUNTY, OH

A. 27

Case 1:12-17744 Document 17 10/04/2011 408749 Page31 of 167

No. _____ 91-CR- 3-7

Doc. _____ Page _____

## COMMON PLEAS COURT

Clark _____ County, Ohio

## THE STATE OF OHIO

vs.

Flay B. Rood

## Waiver of Indictment

Filed _February_ , 19 91

Clerk _Andrea Welsky_

by _____ Deputy

BARRETT BROTHERS, PUBLISHERS, SPRINGFIELD, OHIO

A. 28

VOL 634 PAGE 849

## COURT OF COMMON PLEAS
## CLARK COUNTY, OHIO

State of Ohio

    Plaintiff,               Case No. 91-CR-37

    -vs-

Flay B. Rood

    Defendant,        **JUDGMENT ENTRY OF CONVICTION**

On February 1, 1991, Defendant appeared in Court with counsel, executed a waiver of indictment, and entered a plea of guilty to the charge of Gross Sexual Imposition (R.C. 2907.05), a felony of the third degree, as set forth in the Bill of Information.

The Court afforded Defendant and his counsel the opportunity to speak in mitigation. No cause was shown why judgment should not be pronounced and accordingly,

IT IS THE JUDGMENT AND SENTENCE of this Court that the Defendant be imprisoned in the Ohio State Penitentiary, c/o Orient Correctional Facility, Orient, Ohio for a term of two (2) years, and be assessed the court costs of this prosecution for which execution is hereby awarded.

The sentence of imprisonment imposed herein shall be suspended and the defendant placed on probation for a term of two (2) years, subject to the following conditions;

    1.    Defendant shall serve ninety (90) days in the Clark County Jail, with credit for time served.

Issued: Cert. copy to Clark Co. Jail

A. 29

VOL 634 PAGE 849

2.   Defendant shall abide by the Clark County Adult
     Probation Department's Regulations of Probation
     which are attached hereto and incorporated
     herein as if fully rewritten.

JUDGE GERALD F. LORIG

APPROVED:

STEPHEN A. SCHUMAKER
PROSECUTING ATTORNEY

KATHLEEN C. KERCHANSKY 0036794
ASSISTANT PROSECUTING ATTORNEY

MCI: F-3   MCC: F-3

MAR 1 3 1991

CERTIFIED COPY

MAY 1 8 2010

_____, 20___ Certified a____

Entry_____ Filed Mar. 11 20 1991

_____ Clerk

Common Pleas Court, Clark County, Ohio

By _____ , Deputy

FILED
MAR 11 2 03 PM '91
ROS ___ _RK
COMM__ COURT
CLARK __NTY, OH

A. 30

## CLARK COUNTY ADULT PROBATION DEPARTMENT
### REGULATIONS OF PROBATION
VOL **634** PAGE **850**

1. To report to the Probation Department as directed by the Probation Officer.

2. To keep the Probation Officer informed of your address.

3. To remain within the jurisdiction of the Court of Common Pleas, Clark County, Ohio, unless written permission has been granted by the supervising Probation Officer.

4. To obey all Local, State, and Federal laws.

5. To actively assume the responsibility to provide for my family or dependents, and to comply with any Court order issued in such a case.

6. To actively assume the responsibility of seeking gainful employment, or pursue some type of further education.

7. To refrain from possessing, selling, or using any Narcotic Drugs, Barbituates, Amphetamines, Deliriants, or Hallucinogens, or instruments for administering them, except on the prescription of a licensed physician.

8. To refrain from operating a motor vehicle without liability insurance which meets the requirements of the State of Ohio.

9. To refrain from having in your possession or residence any firearms or dangerous ordinance, in accordance with Section 2923.13 of the Ohio Revised Code (Having Weapons While Under Disability).

10. To adhere to the following Special Conditions of the Probation Department and/or Court:

    A. To serve 90 days in Clark County Jail.

    B. To enter into and successfully complete an approved program for treatment of sex offenders.

    C. To enter into and successfully complete McKinley Hall or similar agency.

    D. Payment of court costs during probationary period.

11. In all matters not governed by the foregoing, the Probationer will comply with the instructions of the Probation Officer.

I hereby acknowledge the receipt of a copy of the REGULATIONS OF PROBATION and agree to abide by them and understand that a violation of any of these conditions, order of the Court, may be considered sufficient cause to revoke my probation.

PROBATIONER _Floyd Rood_    DATE _Feb. 11, 1991_

PROBATION OFFICER _Ronald D. Wolf_

A. 31

UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     -v-                                     CASE NO. 10-CR-149 (DNH)

FLAY ROOD,

                Defendant.

_____


## MEMORANDUM OF LAW IN SUPPORT OF FLAY ROOD'S MOTION TO DISMISS OR STRIKE THE PRIOR CONVICTION ALLEGATION OF THE INDICTMENT AND THE SPECIAL INFORMATION FILED BY THE GOVERNMENT


DATED:     July 9, 2010                  Respectfully submitted,
              Syracuse, New York

                                      ALEXANDER BUNIN
                                      Federal Public Defender


                          By:    Melissa A. Tuohey, Esq.
                                  Assistant Federal Public Defender
                                  Bar Roll No.: 510807
                                  Clinton Exchange, 3rd Floor
                                  4 Clinton Square
                                  Syracuse, New York 13202
                                  (315) 701-0080


A. 32

## PRELIMINARY STATEMENT

Flay Rood submits this memorandum in support of his motion to dismiss or strike the prior conviction allegation of the indictment and the government's special information and to have this Court declare 18 U.S.C. § 3559(e) inapplicable. He seeks an early determination as to the applicability of Section 3559(e) because without such a ruling, he has no way of knowing the maximum and minimum sentences as required by Rule 11(G), (H), and (I), of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment.

## BACKGROUND

Flay Rood is charged in a six-count indictment with three counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), one count of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Pursuant to Section 2251(e), the statutory sentencing range for producing child pornography is 15 to 30 years' imprisonment. The range is increased to 25 to 50 years if the defendant has one prior conviction under certain specified federal statutes or "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography . . . ." 18 U.S.C. § 2251(e).

In a separate statutory provision, Congress required a court to impose mandatory life imprisonment on certain sex offenders. 18 U.S.C. § 3559(e)(1) requires a person convicted of a "Federal sex offense in which a minor is the victim" to be sentenced to life imprisonment "if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is

1

A. 33

imposed." A "prior sex conviction" is defined as "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense." 18 U.S.C. § 3559(e)(2)(C). A "Federal sex offense" is defined as "an offense under Section 1591 (relating to sex trafficking of children), 2241 (relating to aggravated sexual abuse), 2242 (relating to sexual abuse), 2244(a)(1) (relating to abusive sexual contact), 2245 (relating to sexual abuse relating in death), 2251 (relating to sexual exploitation of children), 2251A (relating to selling or buying of children), 2422(b) (relating to coercion and enticement of a minor into prostitution), or 2423(a) (relating to transportation of minors)." 18 U.S.C. § 3559(e)(2)(A). A "State sex offense" is defined as "an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense if" the offense either (1) "involved interstate or foreign commerce" or (2) occurred in federal jurisdiction. 18 U.S.C. § 3559(e)(2)(B).

In addition to including reference to Section 3559(e) in a "Prior Conviction Allegation" section of the indictment, on April 1, 2010, the government filed what it termed a "Special Information Regarding Prior Conviction Pursuant to 18 U.S.C. §§ 2251(e), 2252A(b)(1) and (b)(2), and 3559(e)."[1] In this filing, the government claimed that Rood has a prior final conviction "relating

---

[1] Neither Sections 2251(e), 2252A(b)(1), (b)(2), or 3559(e) reference each other or a requirement to file a special information. The government seems to treat 3559(e) as a parallel version of 21 U.S.C § 851, which requires it to file an information before a defendant can be sentenced to an increased punishment. Section 3559(e) does not contain such a requirement and for that reasons poses a set of problems. Most immediately, by not requiring the filing of an information prior to increasing a defendant's punishment, a defendant cannot knowingly plead guilty because he has no idea what the minimum and maximum sentences will be. Furthermore, unlike Section 851, Section 3559(e) does not provide a set of procedures allowing a defendant to challenge the application of the enhancement and the opportunity to have a hearing to determine any issue that might render the enhancement inapplicable. Should this Court find Section 3559(e) applicable, Rood reserves the right to challenge 3559(e) on these and other grounds.

2

A. 34

to the aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward."[2] As alleged by the government, Rood pled guilty to Gross Sexual Imposition, in violation of OHIO REV. CODE § 2907.05. According to the government, that conviction was based on an incident in which it claims Rood "rubbed the penis of a 2 year old child while he also had his own penis in his hand." (Dkt. No. 19 at 1).

## ARGUMENT

### EVEN IF IT MAY BE CONSTITUTIONALLY APPLIED, ROOD'S PREDICATE OFFENSE IS NOT A PRIOR SEX CONVICTION WITHIN THE MEANING OF 18 U.S.C. § 3559(e).

Even if Section 3359 is otherwise constitutional or could otherwise be lawfully applied in this case, which he in no way concedes,[3] Rood's alleged prior conviction does not constitute a "prior sex conviction" under Section 3359(e). As noted above, to qualify as a "prior sex offense," a predicate sex offense resting on a state conviction, must "consist[ ] of conduct that would be a

---

[2] The government's use of the construction "relating to" appears to track the enhancement language of 18 U.S.C. § 2251(e) and 18 U.S.C. § 2252A(b)(1), but not 18 U.S.C. § 3559(e). As noted by the Ninth Circuit in *United States v. Gallenardo*, 579 F.3d 1076 (9th Cir. 2009), "[a]lthough the definitions subsection of § 3559(e) uses the phrase 'relating to,' it does so only as a shorthand description of the subject of each referenced statute. The referenced statutes themselves do not use this phrase."

[3] Rood's instant motion is limited to the applicability of the enhancement provision of 3559(e) to his case. His makes this motion assuming, though not conceding, that the prior conviction was constitutionally obtained and otherwise valid and that application of Section 3559(e) could be constitutionally and otherwise lawfully applied to increase his maximum sentence on Counts One, Two, and Three from 30 years to life, and his minimum sentence from 15 years to life. Should this Court hold that Rood's prior conviction constitutes a "prior sex conviction" as that term is defined by 3559(e)(2)(A), (B), (C), he reserves the right to challenge the application of 3559(e) on constitutional and other statutory grounds prior to sentencing. Relatedly, should the Court find that Rood's prior conviction does not trigger application of Section 3559(e), Rood reserves the right to challenge application of the increased penalties under the statutory violations charged in the respective counts of the indictment.

A. 35

Federal sex offense if," the offense involved conduct that would trigger federal jurisdiction. 18 U.S.C. § 3559(e)(2)(B). To qualify as a State sex offense, Rood's predicate must have been equivalent to a "Federal sex offense," as that term is defined by subsection (e)(2)(A). To do so, the predicate must contain congruent elements to the specific statutory provisions listed in that subsection.

Determining whether the predicate is equivalent to the specific statutory provisions listed in Section 3559(e) requires application of the categorical approach. Although this is a question of first impression, the Supreme Court has held in other contexts that a categorical approach is preferred when analyzing the application of prior offenses as predicates under federal law. This preference goes back at least to the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990), in which the Court held that the categorical approach must be applied when determining whether a defendant's prior offense constitutes a violent felony or serious drug offense under the Armed Career Criminal Act ("ACCA") of 18 U.S.C. § 924(e). Under the categorical approach, a trial court must "look only to the fact of conviction and the statutory definition of the prior crime." *Id*. at 602. *See also Lopez v. Gonzalez*, 549 U.S. 47 (2006) (applying a categorical approach to the application of the aggravated felony provision under the Immigration and Nationality Act); *Begay v. United States*, 128 S.Ct. 1581, 1584 (2008) ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.").

The Court reached this conclusion for several reasons. First, the language of the statute refers to "'a person who . . . has three previous *convictions*' for-not a person who has *committed*-three previous violent felonies or drug offenses." *Taylor*, 495 U.S. at 600 (quoting 18 U.S.C. § 924(e))

4

A. 36

(emphasis added). Second, the legislative history of the statute demonstrated Congress's preference for a categorical approach. *Id.* at 601. Third, the practical realities of a factual approach would raise serious fairness concerns and administrative difficulties. *Id.* at 602.

Similar to the reason for applying a categorical approach over a factual approach under ACCA, an examination of Section 3559(e) also dictates a categorical approach. First, as in *Taylor*, a "State sex offense" is predicated on the definition of "prior sex conviction," as defined in subsection (e)(2)(C), which requires a *conviction*. Importantly, Congress did predicate 3559(e) on a prior sex offense. Second, like the definitions of violent felony and serious drug offense under ACCA, in which Congress used the construction "offenses . . . involving," Congress used a similar construction in subsection (e)(2)(B), in which the mandatory life sentence is predicated on "an offense . . . that . . . consists of conduct that would be a Federal sex offense . . . ." Unlike ACCA, the legislative history concerning 3559(e) does not reveal Congress's intent as to the approach courts should take in applying the exception. However, similar to ACCA, applying a factual approach to 3559(e) would present serious fairness and administrative problems. For these reasons, this Court should apply a categorical approach to the application of Section 3559(e).

That a categorical approach should be employed is also clear when examining additional language of Section 3559(e). In *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009), the Seventh Circuit held that "[t]he plain meaning of [3559(e)'s] language is that a qualifying state conviction must have been based on conduct that–although lacking a federal nexus–would have constituted a "Federal sex offense" had such a federal nexus existed." In other words, the *Rosenbohm* Court held that a prior state conviction need not have either involved interstate or foreign commerce or occurred in federal jurisdiction. Sentencing courts, according to the Seventh Circuit,

5

A. 37

simply assume that the federal jurisdictional hooks set forth in 3559(e)(2)(B)(i), (ii) have been satisfied. While Rood does not concede that Court's may assume the satisfaction of the federal jurisdictional element, the Seventh Circuit's holding does support his argument that when determining whether his prior conviction qualifies as a "State sex offense," this Court must employ a elemental categorical approach–one that requires the state conviction to be congruent to the federal offenses listed in subsection (e)(2)(A) by containing identical elements, assuming that the jurisdictional element in each section has been met.

What is more, the language used by Congress in 3559(e) is distinguishable from the language found in the enhancement provisions of Chapter 110. For example, Section 2251 increases a defendant's sentence if he has one prior conviction under the laws of any state "relating to" sexual abuse and the like. As at least two circuit courts have held, by using the phrase "relating to," Congress intended to apply the enhancement provisions of Chapter 110 broadly and did not intend to limit its application to prior convictions that meet the federal definition of "sexual abuse," for example, as defined in Section 2242. *See United States v. Sinerius*, 504 F.3d 737 (9th Cir. 2007); *Rosenbohm*, 564 F.3d at 823. In so holding, however, these courts have contrasted Chapter 110 enhancements with Section 3559(e), which like Section 2241(c), increases a sentence if the state offense would have been a federal offense if federal jurisdiction had been satisfied. *Id.* Unlike the Chapter 110 enhancements, these courts have noted that Section 3359(e)(b)(2)(B) requires the elements of a state offense to be congruent with the listed federal offenses in subsection (e)(b)(2)(A). *See Sinerius*, 504 F.3d at 744 (noting that 18 U.S.C. § 2241(c), like Section 3559(e), "expressly requires that a state predicate offense include all the elements of a corresponding federal crime . . . ." (citing *United States v. Etimani*, 328 F.3d 493 (9th Cir. 2003)); *Rosenbohm*, 564 F.3d at 823 ("By

6

A. 38

[Section 3559(e)'s] clear language, Congress intended that a prior state conviction must be congruent to one of several specific, enumerated federal offenses before triggering a mandatory life sentence."). To be congruent, the state sex offense must have elements congruent to those contained within the listed federal statutes.

Rood's prior conviction in Ohio for Gross Sexual Imposition is not congruent to any offense listed in subsection (e)(2)(A). In relevant part, Section 2907.05 of the Ohio Revised Code applicable at the time of Rood's offense provided as follows:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person.
>
> (B) Whoever violates this section is guilty of gross sexual imposition. Violation of division (A)(1), (2), or (3) of this section is a felony of the fourth degree. Violation of division (A)(4) of this section is a felony of the third degree.

OHIO REV. CODE ANN. § 2907.05 (West 1990).

Pursuant to the version of Section 2907.01 applicable at the time of Rood's conviction, "sexual contact" was defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." OHIO REV. CODE ANN. § 2907.01 (West 1990).

Both the indictment and the special information indicate the government's belief that Rood was convicted of subsection (A)(4). The judgment entry of conviction also indicates that Rood was convicted of Gross Sexual Imposition, a felony of the third degree, which only applies to subsection

7

A. 39

Case 11-2174   Document 17   10/04/2011   408740   Page 43 of 167

(A)(4), pursuant to subsection (B) of Section 2907.05.  *See* Appendix A.

As a mere cursory inspection of the statutory language indicates, Section 2907.05 does not include a mens rea requirement within the primary statutory elements.[4]  Ohio courts have confirmed this interpretation.  Furthermore, Ohio courts have held that Gross Sexual Imposition is a strict liability offense.  *See*, *e.g.*, *State v. Bruce*, 2009 WL 4170493 (Ohio Ct. App. 8 Dist. 2009) ("However, this court, and others, have repeatedly held that R.C. 2907.05, gross sexual imposition involving a victim under the age of 13, is a strict liability offense and requires no precise culpable state of mind. All that is required is a showing of the proscribed sexual contact."); *but see State v. Howdyshell*, 2009 WL 2580095 (Ohio Ct. App. 5 Dist. 2009) (holding that because "sexual contact" requires touching for a purpose, Gross Sexual Imposition is not a strict liability offense."); *State v. Mundy*, 650 N.E.2d 502 (Ohio Ct. App. 2 Dist. 1994) (same).[5]  Accordingly, the act of touching another need not be done with any knowledge.  Indeed, the act of touching another can be done by accident, ignorance, or mistake.

Each offense listed in Section 3559(e)(2)(B) contains an element not found under Section 2907.05 of the Ohio Revised Code in effect at the time of Rood's conviction.  The only federal statutory provision that comes close is 18 U.S.C. § 2241(c).[6]  To obtain a conviction under Section

---

[4]  While the "sexual contact" must be for the purpose of sexually arousing or gratifying either person, the act of committing the sexual contact, according to the elements of the offense, need not be done with any mens rea.

[5]  Even if Gross Sexual Imposition is not technically a strict liability crime because it requires proof of sexual contact, which requires a showing that the defendant touched the victim for the purpose of arousing or gratifying, it is nevertheless true that Section 2907.05 does not require proof that a defendant acted knowingly.

[6]  18 U.S.C. § 1591 is easily distinguishable because it requires proof that the defendant knew, or had reckless disregard for the fact, that means of force would be used to cause the

A. 40

2241(c), the government must prove the following elements:

> First, that the defendant caused [the victim] to engage in a sexual act . . . ;

> Second, that the defendant acted knowingly in causing [the victim] to engage in that sexual act;

> Third, that [the victim] was less than twelve years old at the time of the acts alleged in the indictment; and

> Fourth, [the offense satisfies a jurisdictional element.]

3 L. Sand, *et al.*, *Modern Federal Jury Instructions-Criminal* ¶ 61-8, p. 61-19 (2009).

As relevant here, "sexual act" is defined as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). Thus, Section 2241(c) contains three mens rea requirements. First, the defendant must have acted knowingly. Second, the defendant must have intentionally touched the victim. Third, the touching must have been with an intent to arouse.

18 U.S.C. § 2241(c) contains at least two additional elements not found in Section 2907.05 of the Ohio Revised Code. Assuming, but not conceding, for the sake of argument that touching for

---

victim to engage in a commercial sex act, which is obviously not present in Section 2907.05. Section 2241(a) requires force or the threat of force, and Section 2241(b) requires proof that the defendant rendered the victim unconscious or administered by force a drug to impair the victim's ability to apprise or control conduct and then engaged in a sexual act with the victim, neither of which is found in Section 2907.05. Section 2244(a)(1) is predicated on subsections (a) and (b) of Section 2241, neither of which apply. Section 2245 requires the offense to result in death, which is not present under 2907.05. Section 2251 requires proof that the defendant acted for the purpose of producing images of the abuse, Section 2422(b) requires use of a facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce an individual to engage in illegal sexual activity, and Section 2423(a) requires the government to prove that the defendant transported a minor across state lines to engage in illegal sexual activity, none of which fit within Section 2907.05.

9

A. 41

Case 11-3174, Document 17, 10/04/2011, 406740, Page45 of 167

the purpose of arousal under Section 2907.05 is the same as touching with an intent to arouse under Section 2241(c) and 2246(2)(D), federal law still requires an additional element in the definition of sexual act not present in the definition of sexual contact under Ohio law, i.e., an intentional touching. And even if the definition of "sexual contact" under 2907.01 is coextensive with the definition of "sexual act" as defined in Section 2246, Section 2907.05 does not require proof that the defendant acted knowingly. All that is required under 2907.05 is that the defendant touched a person under 13 for the purpose of gratifying or arousing either person. Accordingly, Section 2241(c), the only statute that comes close to applying in this case, contains two elements not found in the predicate statute of conviction. Pursuant to a plain reading of the statute, then, the Ohio law does not proscribe conduct that would constitute a Federal sex offense unless this Court were to render superfluous two of the three mens rea requirements included by Congress in Section 2241(c). As the Supreme Court has held, however, a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Forrest Grove School Dist. v. T.A.*, 556 U.S. __, __, 129 S.Ct. 2484, 2499 (2009) (quoting *Corley v. United States,* 556 U.S. __, __, 129 S.Ct. 1558, 1560 (2009)). Because Section 2241(c) contains two elements not present in Rood's alleged predicate offense, this Court should find that Section 3559(e) is inapplicable to Rood should he be convicted of Counts One, Two, or Three.

Furthermore, Section 2907.05 proscribes contact with a person 13 years of age or younger, while Section 2241(c) criminalizes contact with a person less than 12 years old. Consequently, Section 2907.05 proscribes a greater swath of activity than Section 2241(c). Because Section 2907.05 is not congruent with any of the offenses listed in Section 3559(e)(2)(A), the mandatory life sentence provided by Section 3559(e) cannot be applied to Rood.

A. 42

**CONCLUSION**

For the foregoing reasons, this Court should grant Rood's motion to dismiss or strike the prior conviction allegation in the indictment and the special information filed by the government and hold that 18 U.S.C. § 3559(e) cannot be applied to Rood should he be convicted of Counts One, Two, or Three.  If holding otherwise, this Court should permit Rood, in the event of conviction, to further challenge the application of Section 3559(e) on other constitutional and statutory grounds prior to sentencing.


DATED:          July 9, 2010                          ALEXANDER BUNIN
                                                      Federal Public Defender

                                          By:   S/Melissa A. Tuohey_____
                                                Assistant Federal Public Defender
                                                Bar Roll No.: 510807
                                                Clinton Exchange, 3rd Floor
                                                4 Clinton Square
                                                Syracuse, New York   13202
                                                (315) 701-0080

cc:   Lisa M. Fletcher, Esq., AUSA
      Flay Rood

11

A. 43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*****************************
UNITED STATES OF AMERICA,

                                                  Criminal Action No.

      v.                                    5:10-CR-149 (DNH)

FLAY ROOD,

                   Defendant.
*****************************

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS OR STRIKE THE PRIOR CONVICTION ALLEGATION OF
THE INDICTMENT AND SPECIAL INFORMATION
AND CROSS-MOTION FOR RECIPROCAL DISCOVERY**

Dated: August 4, 2010                    Respectfully submitted,
                                              RICHARD S. HARTUNIAN
                                                United States Attorney

                                        */s/*
                          By:    Lisa Marie Fletcher
                                        Assistant U.S. Attorney
                                        Bar Roll No. 510187

A. 44

# TABLE OF CONTENTS

**PAGE**

| | | |
|---|---|---|
| I. | STATEMENT OF THE CASE | 1 |
| II. | SUMMARY OF THE FACTS | 3 |
| | A.     The Prior Offense | 3 |
| | B.     The Current Offenses | 4 |
| III. | UNITED STATES' RESPONSE TO DEFENDANT'S MOTION | 8 |
| | A.     The Underlying Ohio Conviction | 9 |
| | B.     The Equivalent Federal Statute | 10 |
| | C.     The Modified Categorical Approach | 12 |
| |       1.     The Culpable Mental State | 14 |
| |       2.     The Age of the Victim | 17 |
| | D.     Striking the Prior Conviction Allegation and Special Information | 18 |
| IV. | GOVERNMENT'S CROSS-MOTION FOR DISCOVERY | 18 |
| V. | CONCLUSION | 19 |

A. 45

## I.   <u>STATEMENT OF THE CASE</u>

On March 25, 2010, a six count Indictment was filed against defendant FLAY ROOD.  The first three counts of the Indictment charge him with employing, using, persuading, inducing, enticing and coercing a person under the age of eighteen to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Section 2251(a).  Each of the three counts relates to a different male child victim.  The fourth count charges the defendant with knowingly distributing and attempting to distribute child pornography using a means and facility of interstate and foreign commerce shipped and transported in and affecting such commerce, including by computer, in that the defendant made one or more graphic video files containing images of a minor or minors engaged in sexually explicit conduct available to be downloaded by another person through use of a Peer to Peer file sharing network, in violation of Title 18, United States Code, Section 2252A(a)(2)(A).  The fifth count charges that the defendant did knowingly receive child pornography that, using a means and facility of interstate and foreign commerce, had been transported in and affecting interstate commerce by any means, including by computer, in that the defendant, using a computer connected to the Internet and a Peer to Peer file sharing network, downloaded numerous graphic image and video files of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252A(a)(2)(A).  And the sixth count charges that ROOD knowingly possessed and attempted to possess and accessed with intent to view material that contained an image or images of child pornography that had been transported using a means and facility of interstate commerce, and in and affecting such commerce by any means, including by computer, and that was produced

1

<h1 style="text-align: right;">A. 46</h1>

using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is: numerous graphic image and video files of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

The Indictment also contains a prior conviction allegation and a forfeiture allegation.

At his initial appearance on September 30, 2009 the defendant waived his right to a detention hearing, reserving his right to request one in the future. He has not made such a request, and remains detained.

The defendant now makes a motion to strike the prior conviction allegation from the Indictment, as well as a Special Information filed by the Government, both of which serve to put the defendant on notice that his prior conviction subjects him to enhanced penalties. He further requests a ruling on the applicability of Title 18, United States Code, Section 3559(e) to his case. The Government maintains that the Indictment's prior conviction allegation, and the Special Information simply provide the defendant with notice as to his potential enhanced penalties, and although the Government maintains that the prior conviction is not an element of the offense, should the defendant argue or allege that the prior conviction should be proven to and found by a jury, the Government would be prepared to proceed. Furthermore, as discussed more fully below, the defendant's prior conviction for the sexual abuse of a 2 year old child is a crime that is covered by the enhanced penalty provisions of Title 18, United States Code, Sections 2251, 2252A[1], and

---

[1]     18 U.S.C. §2251(e), in pertinent part, provides:

Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward . . . , such person shall be fined under this title and

2

# A. 47

3559(e), and accordingly are applicable to the defendant.

## II.    SUMMARY OF THE FACTS

### A.    The Prior Offense

On January 10, 1991 defendant FLAY ROOD was arrested by the Springfield, Ohio City Police Department and charged with Gross Sexual Imposition for rubbing the penis of a two year old child while having his own penis in his hand. *Exhibit A.*[2]   The offense was alleged to have occurred on January 6, 1991.  *Id*.  On February 1, 1991, ROOD waived indictment, and pled guilty to the charge, a violation of Ohio Rev. Code 2907.05, a felony in the third degree. *Exhibit B*.  He was sentenced to a two year suspended sentence, and placed on probation for two years, with a condition that he serve the first 90 days in jail.  *Id*.

-------

imprisoned for not less than 25 years nor more than 50 years.

Similarly, 18 U.S.C. §2252A(b) provides, in pertinent part:

(1) Whoever violates, or attempts or conspires to violate, paragraph . . . (2) . . . of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, . . . such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

(2) Whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but, if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, . . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

These sentencing enhancements are not a part of the defendant's instant motion.  Defendant's Memorandum of Law, p.3, n.3.

[2] The name of and other identifying information about the minor child victim, and witness names, address and phone number have been redacted from the original exhibit for the purpose of filing.  18 U.S.C. §3509(d).   The exhibit in its original form was provided to the defendant in discovery and is available to the Court upon request.

3

A. 48

### B.       The Current Offenses

In July and August 2009, Utica Police Department (UPD) Sgt. Anthony Martino, in an undercover capacity on a peer to peer network, conducted an investigation into computers with New York IP addresses that were or had been sharing child pornography on the Internet.  Looking for IP addresses that were actively sharing child pornography within New York State, and specifically in Oneida County, Sgt. Martino found that IP address 67.249.48.12 was identified by a law enforcement software program as having offered suspect child pornography for downloading over 40 times between the dates of June 15, 2009 and August 8th, 2009.

Sgt. Martino was able to partially download from IP 67.249.48.12 a video file with the SHA1 digital signature CTOSIVKLQZQYLTHWP7HZV7LTVLYO6SOK,[3] and file name "5yo Girl Raped By Daddy - Preteen - Child Pornography - Illegal - PTHC - Pedo - R@ygold - Babyshivid - KDQuality - Zadoom - Lolita - QWERTY - ChildFugga - Ddoggprn (1).mpg."  Because filenames do not always accurately depict the contents of the file, Sgt. Martino compared the SHA1 value with a file recovered in previous investigations that contains the identical SHA1 value. CTOSIVKLQZQYLTHWP7HZV7LTVLYO6SOK is a video file, approximately 1 minute, 44 seconds long.   The video depicts an adult male and a pubescent female child who appears approximately 12 years old.  In the video, the male engages in sexual intercourse with the female

---

[3]  Secure Hash Algorithm Version 1 (SHA1) was developed by the National Institute of Standards and Technology (NIST) along with the National Security Agency (NSA) for use within the Digital Signature Standard (DSS) as specified within the Secure Hash Standard (SHS).  Peer to Peer programs (such as Limewire) use the SHA1 algorithm to assign a digital signature to each file which is comprised of a sequence of numbers and letters.  This digital signature, or SHA1 value, is the fingerprint (very much akin to DNA) for a digital file. By comparing the SHA1 values of two files, one can conclude that two files are or are not the same with a precision that greatly exceeds 99.9999 percent certainty.

A. 49

child.[4]

A subpoena was then issued to obtain subscriber information for IP Address 67.249.48.12 for the date/time that Sgt. Martino successfully connected to that user through the peer to peer network and was able to partially download the video file described above. Pursuant to the subpoena response, it was determined that a person with the last name ROOD (later determined to be FLAY ROOD's son) of a Utica, New York address was assigned IP Address 67.249.48.12 at that date and time.

As a result, on August 28, 2009, Hon. Barry Donalty, Oneida County Judge, issued a search warrant for the Utica residence listed on the subpoena response, authorizing a search of the residence and electronic media found therein for items evidencing violations of New York State Penal Law section 263 (distributing, receiving, or possessing child pornography). That warrant was executed by law enforcement officers on August 31, 2009.

FLAY ROOD was present during the search warrant, and agreed to be interviewed. Inv. Jeremy Van Horne of the Utica Police Department interviewed FLAY ROOD, during which ROOD admitted that he had been receiving child pornography over the Internet, including through peer to peer file sharing, and that he had saved images and videos of child pornography to his computer hard drive and to a USB thumb drive.

On September 15, 2009, while previewing the USB drive seized from ROOD's residence, UPD Officer Edin Selimovic identified images of a naked male child that appeared to be self-

---

[4] Through his investigation, Sgt. Martino also identified two additional files offered by IP Address 67.249.48.12, and similarly using the SHA1 value of one of those additional files, compared it with a previously-identified file bearing the identical SHA1 value. That file also contained child pornography.

5

A. 50

produced. These imaged depict a pre-pubescent male exposing and touching his penis. The images also depict portions of the torso and lower half of the body of an adult male, with distinctive body marks visible on the torso of the adult male. In the images, the adult is wearing pajama pants and the child is sitting on the adult's lap. In some of the images, the adult is seen pulling the child's clothing aside in order to expose his penis. These images of produced child pornography were found to have been created with a Sprint Fusic cellular phone camera model M6500C. According to the EXIF data[5] embedded in these images, they were taken on March 23, 2008.

Further investigation by UPD Inv. Jeremy VanHorne and Oneida County District Attorney Inv. Patrick O'Connor included a search warrant to photograph the body of FLAY ROOD. That search revealed the distinctive body marks seen on the adult male's torso in the images described above. In addition, investigators also subsequently recovered pajama pants that match those seen in the images. The investigation conducted by VanHorne and O'Connor also determined the identity of the child seen in the images as a child known to FLAY ROOD who was 3 years old at the time the images were taken.

Forensic analysis further identified sexually explicit images of two additional male children. One is an image created with a JVC GR-D270 camera, which matches the make and model of a digital video camera seized as evidence from ROOD's residence. The child depicted in this image was also identified by investigation as another child known to FLAY ROOD. The title of the image, as saved to the USB thumb drive where it was found, includes the name of this child. According to

_____

[5] Digital cameras save JPEG (.jpg) files with EXIF (Exchangeable Image File) data. Camera settings and scene information are recorded by the camera into the image file. Examples of stored information are shutter speed, date and time, focal length, exposure compensation, metering pattern and if a flash was used.

A. 51

the EXIF data embedded in the image, this image was taken on January 1, 2005, at which time the child would have been seven years old.

Also located on the USB thumb drive were sexually explicit images of a third pre-pubescent male child. In the photographs, a distinctive body mark is visible in the pelvic area of the child. Portions of the lower half of the body of an adult are also present in these images. The adult is wearing pajama pants and the child is sitting on the adult's lap. These images of produced child pornography were also found to have been created with a Sprint Fusic cellular phone camera model M6500C. No phone of this make/model was recovered, but the investigation revealed that the defendant previously owned such a phone. According to the EXIF data embedded in the images of this third child, they were taken on January 9, 2008. An investigation by UPD Inv. Jeremy VanHorne and Inv. Fred Eckert of the Clay County (Florida) Sheriff's Office determined the identity of the child in these images to be that of a child who resides in Florida, and who would have been four years old at the time the images were taken. The investigation further revealed that the child is known to ROOD, that the images were taken at a residence in Florida where ROOD lived for a period of time, and that on occasion ROOD and his wife babysat the child at that residence.

In addition, forensic analysis confirmed that the file sharing program Limewire was installed on the computer seized from ROOD's residence, and that it was used to receive and download child pornography. In that regard, the following search terms were found to have been used in Limewire on the computer:

    7yo
    8yo
    Anal
    Gay preteen
    Gay pthc

A. 52

Kdv
Nude boys
Preteen
Pthc
Yamad boy

Forensic analysis also revealed that when file sharing is enabled on the computer, all downloaded files are set to be shared and all files in the "\Compaq_Owner\Desktop\limewire dl" are also shared. Several illicit files were located in the "Limewire dl" folder and were shared when sharing was enabled. Additionally, an analysis of the thumbs.db file in the "Limewire dl" folder indicates that a large number of the illicit images that are found in other folders on the computer were once located in "Limewire dl" folder.

In all, forensic analysis found 70 video files and 114 still images depicting child pornography, including prepubescent children and depictions of sadistic or masochistic abuse or other depictions of violence. Of those, the National Center for Missing and Exploited Children has found that 7 of the video files, representing 4 different series, and 45 of the image files, representing 9 different series, are contained within their database of actual children previously identified by law enforcement officials in numerous different investigations.

## III.    UNITED STATES' RESPONSE TO DEFENDANT'S MOTION

Defendant FLAY ROOD moves to "dismiss or strike the prior conviction allegation of the indictment and the government's special information and to have this Court declare 18 U.S.C. §3559(e) inapplicable." Defendant's Memorandum of Law, p.1. In support, the defendant alleges that his prior conviction for Gross Sexual Imposition (Ohio Rev. Code §2907.05) does not meet statutory definition of "prior sex conviction," §3559(e)(2)(C), as required to impose the mandatory life sentence provided for in §3559(e)(1).

A. 53

For the reasons discussed below, the Government maintains that the defendant's prior conviction for sexually abusing a 2 year old child is a prior sex conviction that requires a mandatory sentence of life upon conviction of any of counts 1, 2, or 3 of the Indictment.

### A.    The Underlying Ohio Conviction

As stated above, on January 10, 1991 FLAY ROOD was arrested by the Springfield, Ohio City Police Department and charged with Gross Sexual Imposition.  The factual basis for the arrest was that, in a parked vehicle in front of his home, ROOD rubbed the penis of a two year old child while having his own penis in his hand. *Exhibit A*.  The offense was alleged to have occurred on January 6, 1991.  *Id*.  On February 1, 1991, ROOD waived indictment and pled guilty to the charge, a violation of Ohio Rev.Code §2907.05, a felony in the third degree. *Exhibit B*.  He was sentenced to a two year suspended sentence, and placed on probation for two years, with a condition that he serve the first 90 days in jail.  *Id*.

Gross Sexual Imposition, as in effect in 1991, provides:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

\*        \*        \*

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

\*        \*        \*

(B) Whoever violates this section is guilty of gross sexual imposition. . . . Violation of division (A)(4) of this section is a felony of the third degree.

Ohio Rev.Code §2907.05

A. 54

The definitions pertinent to this offense are as follows:

"Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose* of sexually arousing or gratifying either person.

Ohio Rev.Code §2907.01(B)(emphasis added).

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Ohio Rev.Code §2901.22

## B.    The Equivalent Federal Statute

"A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed."  18 U.S.C. §3559(e)(1).

By definition, a violation of 18 U.S.C. §2251 is a "Federal sex offense" for purposes of this statute.  18 U.S.C. §3559(e)(2)(A).   Accordingly, a conviction on any of counts 1, 2, or 3 of the Indictment meets this first criteria.  It is the second provision of §3559(e)(1) that ROOD challenges: that is, whether his prior conviction for having sexual contact with a 2 year old meets the definition of "a prior sex conviction in which a minor was the victim."

"[T]he term 'prior sex conviction' means a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense."   18 U.S.C. §3559(e)(2)(C).  Clearly, the 1991 conduct occurred before the conduct alleged in the Indictment.  Therefore, the only determination left is whether that conviction meets the definition of "State sex offense."  In that regard, §3559(e)(2)(b)

A. 55

defines "State sex offense" as

> . . . an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense if, to the extent or in the manner specified in the applicable provision of this title--
>
> (i) the offense involved interstate or foreign commerce, or the use of the mails; or
>
> (ii) the conduct occurred in any commonwealth, territory, or possession of the United States, within the special maritime and territorial jurisdiction of the United States, in a Federal prison, on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States, or in the Indian country (as defined in section 1151);

Accordingly, the prior crime must first be punishable by more than one year in prison. Here, ROOD's conviction was designated a felony in the third degree, *see Exhibit B*, Judgment Entry of Conviction, which by Ohio law is punishable by more than one year in prison, Ohio Rev.Code §2929.11(D)(1). In fact, although it was partially suspended, ROOD was sentenced to two years. *Exhibit B*, Judgment of Entry of Conviction.

Second, the prior conviction must "consist of conduct" that would be a federal offense if it had occurred in a manner or venue that would give rise to federal jurisdiction. In that regard, ROOD argues that the only Federal statute "that comes close" is Aggravated Sexual Abuse, 18 U.S.C. §2241(c).[6] In pertinent part, (and editing out the provisions of federal jurisdiction that are assumed pursuant to §3559(e)(2)(b)(i) and (ii)) that statute provides:

> **(c) With children.**--Whoever . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years . . . or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

Section 2241 further provides:

---

[6] For purposes of deciding his motion, it need not be determined whether or not ROOD is correct that *only* §2241 applies. See, e.g. 18 U.S.C. §2244(a)(5).

A. 56

**(d) State of mind proof requirement**.--In a prosecution under subsection (c) of this section, the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years.

The elements of 2241(c) are:

> (1)   the defendant knowingly engaged in a sexual act with [victim's name];
>
> (2)   at the time, [the victim's name] was younger than twelve years old; and
>
> (3)   the acts occurred [within the special maritime jurisdiction of the United States] [within the territorial jurisdiction of the United States] [in a Federal prison].

*Eleventh Circuit Pattern Jury Instructions* (Criminal Cases) 2010, Instruction 79.3, p. 452, http://www.ca11.uscourts.gov/documents/jury/CriminalJury2010 (last visited August 2, 2010).  As provided in §2241(d), the instruction includes the provision that: "The Government doesn't have to prove that the Defendant knew that [victim's name] was younger than 12 years old." *Id.*; *see also Ninth Circuit Pattern Jury Instructions* (Criminal Cases) 2003, Instruction 8.137, http://www.ce9.uscourts.gov/ (last visited August 2, 2010).   This instruction is not at odds with the instruction provided by ROOD.  Defendant's Memorandum of Law, p. 9.  *See* 3L Sand, *et. al.,* Modern Federal Jury Instructions - Criminal (2010) ¶61-8, p. 61-19, Comment (acknowledging that it is "equally acceptable" to include the knowledge requirement within the first element, explaining that "[t]he knowledge requirement is included as a separate element here out of a general preference for treating scienter as a separate element whenever possible.")

### C.   The Modified Categorical Approach

To determine whether the state conviction constitutes a qualifying predicate offense to enhance his penalty under 18 U.S.C. §3559(e), it must be congruent to a federal offense.  In making

A. 57

that determination, the method undertaken in the Second Circuit is the modified categorical approach. *United States v. Walker*, 595 F.3d 441 (2d Cir. 2010).

> The first step, the categorical inquiry, requires determining whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense. Importantly, the statute is not merely analyzed on its face; rather, we consider the statutory language as it has been elucidated by the relevant state's courts. If the statute as construed by courts of that state only criminalizes conduct that falls within the federal definition of the predicate offense, then the enhancement must be applied. If, on the other hand, the statute also criminalizes some conduct that does not fall within the federal definition of the predicate offense, then we undertake the second step in which we ask whether the government has shown that the plea necessarily rested on the fact identifying the conviction as a predicate offense. As the Supreme Court made clear in *Shepard*,[7] the inquiry in this second step is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Id.* at 443-44, internal citations and quotation marks omitted.[8]

Here, there is no question that what ROOD did in 1991 would be a federal offense had it been committed in a manner (i.e. by crossing a state line) or in a venue (i.e. in the "special maritime and territorial jurisdiction of the United States") that would give rise to federal jurisdiction. The victim of his crime was 2 years old, *Exhibit A*, and his sexual conduct with the child was clearly an intentional touching of the genitalia of that child, done with the intent to arouse or gratify ROOD's own sexual desire *Id.* ("he then rubbed [the child's] penis while he had his own penis in his hand.")

The issue, then, is whether the crime for which ROOD was convicted as a result of this

---

[7] *Shepard v. United States* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

[8] Although *Walker* involved a Guidelines enhancement, the approach in determining whether a prior offense is counted for sentencing enhancements is not limited to the Guidelines. enhancements. *See Taylor v. United States*, 495 U.S. 575, 599 (1990) (applying the categorical approach to a prior burglary offense in determining whether it was a crime of violence that would require a statutorily enhanced sentence under 18 U.S.C. § 924(e)).

A. 58

offense is a "state sex offense" as defined by 18 U.S.C. §3559(e).

## 1.    The Culpable Mental State

ROOD assumes for the sake of his argument that the Ohio statute's definition of sexual contact "is coextensive" with the definition of sexual act in §2246(2).  He argues, however, that the Ohio's Gross Sexual Imposition and the United States' Aggravated Sexual Abuse are irreparably divergent due to differences in scienter requirements, and because the federal statute criminalizes sexual conduct with a child less than 12, while Ohio sets the age at 13.

First, ROOD argues that Gross Sexual Imposition does not require that the crime be committed "knowingly," but instead, he contends, criminalizes sexual contact that could be "done by accident, ignorance, or mistake."  Defendant's Memorandum of Law, p. 8.  By definition, this theory is implausible and absurd.  One cannot *accidentally, ignorantly, or mistakenly* touch another's genitalia for the purpose or intent of sexual gratification.   The Ohio statute does not criminalize the mere touching, but the touching with a purpose.  And purpose is a knowing and intentional act.[9]

---

[9]  Purpose is defined as follows:

Function: *noun*

Etymology: Middle English *purpos*, from Anglo-French, from *purposer* to intend, propose, from Latin *proponere* (perfect indicative *proposui*) to propose — more at PROPOUND

Date: 14th century

**1 a :** something set up as an object or end to be attained : INTENTION **b :** RESOLUTION, DETERMINATION
**2 :** a subject under discussion or an action in course of execution

**synonyms** see INTENTION

**— on purpose** : by intent : INTENTIONALLY
"purpose" Merriam-Webster Online Dictionary. 2010. Merriam-Webster Online. 3 August 2010
<http://www.merriam-webster.com/dictionary/purpose>

Intent is defined as follows:
Function: *noun*

14

A. 59

In addition, ROOD attempts to distinguish the Ohio and Federal statutes in the mens rea of their definitions of "sexual act." "Assuming but not conceding" that intentional touching and purposeful touching are the same,[10] ROOD again reverts to his accidental touching theory and contends that "federal law still requires an additional intent element - that is an intentional touching." *Id.*, p.10.

Despite ROOD'S deconstruction and minute analysis of the words used in each of the two statutes, they in fact prohibit the same conduct – the criminal touching of the genitalia of a child. What makes the act criminal in each venue is not the touching in and of itself (in neither case would a person bathing a child be subject to criminal prosecution), but the purpose or intent behind that touching, that is sexual gratification. The Ohio courts agree. *State v. Howdyshell*, 2009 WL 2580095, *2 (Ohio Ct. App. 5 Dist. 2009)("We agree that gross sexual imposition requires proof that the sexual contact be done with purpose of sexual arousal or gratification and, therefore, that it is not a strict liability offense.") citing and agreeing with *In re: Williams* (Dec. 22, 2000), Hamilton App. Nos. C-990841, C-990892, 2000 WL 1867467:

The court, in *Williams,* stated in Fn. 1, in relevant part as follows: 'R.C.

---

Etymology: Middle English *entente*, from Anglo-French, from Late Latin *intentus*, from Latin, act of stretching out, from *intendere*

Date: 13th century

**1 a :** the act or fact of intending : PURPOSE; *especially* : the design or purpose to commit a wrongful or criminal act <admitted wounding him with intent> b : the state of mind with which an act is done : VOLITION

**2 :** a usually clearly formulated or planned intention : AIM <the director's intent>

"intent." Merriam-Webster Online Dictionary. 2010. Merriam-Webster Online. 3 August 2010 <http://www.merriam-webster.com/dictionary/intent>

[10] And they are. As demonstrated in n.9, purpose and intent define one another.

15

A. 60

2907.05(A)(4) does not specify a culpable mental state. However, R.C. 2907.01(B), by defining "sexual contact" as a "touching * * * for the purpose of sexual[ ] arous[al] or gratif[ication]," supplies the culpable mental state for a conviction under R.C. 2907.05(A)(4).'

*Howdyshell, supra*.

Over fifteen years ago the Court of Appeals of Ohio, Second District, explained the mens rea of Gross Sexual Imposition in this way:

> Mundy argues, and the state concedes, that R.C. 2907.05(A)(4) does not impose strict liability. Although the language used in that provision fails to specify any culpability, the "sexual contact" that is an essential element of R.C. 2907.05(A)(4) is defined in R.C. 2907.01(B) as the touching of certain described parts of the human body for the purpose of sexually arousing or gratifying either the offender or the victim. Thus, the culpable mental state required for a conviction of R.C. 2907.05(A)(4) is supplied by the statutory definition of "sexual contact" in R.C. 2907.01(B). In other words, in proving the violations of R.C. 2907.05(A)(4) in this case, it was incumbent upon the state to prove not only that Thomas Mundy touched a person less than thirteen years of age or caused a person under age thirteen to touch him on the proscribed parts of the body listed in R.C. 2907.01(B), including the genitals and in the case of a female the breasts, but also that Mundy committed these acts for the specific purpose or intention of sexually arousing or gratifying either himself or the victim.

*State v. Mundy,* Ohio App.3d 275, 650 N.E.2d 502, 509 (Ohio App. 2 Dist. 1994).

*State v. Bruce*, case cited by Rood does not directly hold otherwise. *Bruce* held that no culpable mental state needed to be alleged in the indictment, explaining that instead Gross Sexual Imposition requires a "showing of the proscribed sexual contact." *State v. Bruce*, 2009 WL 4170493 *13 (Ohio App. 8 Dist. 2009). *Bruce* went on to compare Gross Sexual Imposition with the age element in the Ohio statutory rape offense - for the proposition that "strict liability applies to the age element of rape." *Id*.

Accordingly, whether calling it a strict liability crime or not, by acknowledging that the "proscribed sexual contact" (which contains the culpable mental state) must be proven, *id., Bruce*

16

A. 61

does not hold differently than *Howdyshell* or *Mundy*.  *See also In re D.S.*, 160 Ohio App.3d 552, 828 N.E.2d 143, 149 (Ohio App. 8 Dist. 2005)("While touching itself is not sufficient for a conviction, the act of touching may constitute strong evidence of the intent."); *State v. Turner*, 2008 WL 5381956 *7 (Ohio App. 2 Dist. 2008)(holding that "R.C. 2907.05(A)(4) requires a mens rea of 'purposely.'")

What is of strict liability in the Ohio statute is the same in the federal statute - the defendant need not know the age of the victim.  Gross Sexual Imposition criminalizes the sexual contact with a person less than thirteen "whether or not the offender knows the age of that person."  Ohio Rev. Code §2907.05(A)(4).  Likewise, in a prosecution for Aggravated Sexual Abuse involving a child, "the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years."  18 U.S.C.§2241(d).

### 2.    The Age of the Victim

In the second prong of his argument, ROOD alleges that the Ohio statute is not congruent with the Federal statute because Ohio criminalizes sexual conduct with a child under 13, whereas Federal law criminalizes conduct with a child under 12.  Defendant's Memorandum of Law, p. 10. Where the state statute "also criminalizes some conduct that does not fall within the federal definition of the predicate offense, then we undertake the second step in which we ask whether the government has shown that the plea necessarily rested on the fact identifying the conviction as a predicate offense." *Walker*, 595 F.3d at 444.  Here, the Government has provided just that.  *Exhibit A* documents exactly the conduct committed by ROOD and which formed the factual basis for his plea: the touching of the penis of a two year old child for the purpose of sexual gratification.  Under no circumstance or theory can it be said that ROOD's conviction did or could have involved any

17

A. 62

other act with any other child of any other age. As "the government has shown that the plea 'necessarily' rested on the fact identifying the conviction as a predicate offense," *Walker,* 595 F.3d at 444, ROOD's conviction qualifies as a predicate offense under §3559(e) and he should be sentenced accordingly.

**D.      Striking the Prior Conviction Allegation and Special Information**

ROOD is correct in asserting that there is no statute that requires that the indictment allege his prior conviction, nor is there one requiring the filing of a special information. Defendant's Memorandum of Law, p. 2, n.1. Ironically, he moves to strike these notice provisions while at the same time complaining that without them "a defendant cannot knowingly plead guilty because he has no idea what the minimum and maximum sentences will be." *Id.*

Clearly, should ROOD admit his prior conviction and the underlying facts, concede that it does not present a jury issue, and acknowledge that it will enhance his sentence if he is convicted, the purpose of putting him on notice has been satisfied, and there is no reason for the prior conviction to be alleged, presented to, or considered by a trial jury. Without that, however, the Government maintains that it is a better practice to afford this notice to the defendant, and to be prepared to prove it at trial should he demand as much.

## IV. GOVERNMENT'S CROSS-MOTION FOR DISCOVERY

Pursuant to Rule 16(b)(1), the United States respectfully moves this Court for an order directing the defendant to:

(A) Permit the United States to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies of portions thereof, which are within the possession, custody, or control of the defendant, which the defendant intends to introduce as evidence in chief

A. 63

at the trial; and

(B)  Permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony.

(C)  Order the defendant to disclose to the government a written summary of testimony the defendant intends to use under Rules 702, 703 and 705 of the Federal Rules of Evidence as evidence at trial.  This summary must describe the opinions of the witnesses, the bases and reasons therefore, and the witnesses' qualifications.

## V.  CONCLUSION

In light of the foregoing, the defendant's motion to suppress and preclude evidence should be denied in all respects without need for a hearing, and the United States' cross-motion for reciprocal discovery should be granted.

19

A. 64

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

### *AFFIDAVIT OF STAN N. ERTER*

I, Stan N. Erter, having been duly sworn, do hereby state and depose as follows:

1.      I am an Investigator with the Clark County, Ohio Prosecutor's Office.  I have been so employed since November 22, 2003.  My duties include investigating and assisting in the prosecution of individuals charged with violating Ohio criminal law in Clark County.  As such, I am familiar with, have access to, and am a custodian of the records of the Clark County Prosecutor's Office.

2.      In 1991 defendant FLAY ROOD was prosecuted by the Clark County Prosecutor's Office for the crime of Gross Sexual Imposition.  The file for that case is stored in the normal course of business with the records of the Prosecutor's Office.

3.      On August 2, 2010 I retrieved the 1991 Prosecutor's Office file pertaining to FLAY ROOD.  Attached hereto is a copy of one of the documents contained within that file, a "Municipal Court Statement."  A Municipal Court Statement is a charging instrument filed with the court in a criminal case that cites, among other things, the date of the offense, the charge, and the factual basis for the charge.  It is a document filed with the court as a part of the prosecution of a defendant, and forms the factual basis for the criminal prosecution of the defendant, and any ensuing conviction.

4.      Upon a review of the Prosecuting Attorney's Office file I can affirm that the attached Municipal Court Statement, as filed with the Court, formed the factual basis for the Bill of Information and resulting guilty plea by FLAY ROOD in his 1991 Clark County case.



A 65 GOVERNMENT EXHIBIT A

5. On August 02, 2010, I examined the Criminal Indictment for charging Flay B. Rood with "Gross Sexual Imposition, having sexual contact with another person being less than thirteen years of age, whether or not he knew the age of such person, in violation of Section 2907.05 of the Ohio Revised Code. This Criminal Indictment was placed in case file 91-CR-37, stored at the Clark County Ohio Clerk of Courts, Springfield, Ohio. This document is the original in form filed with the court.

6. I also hereby certify that the "Municipal Court Statement" document is an exact copy of the original on file with the Clark County Prosecutor's Office.

Stan N. Erter
Investigator
Clark County, Ohio, Prosecuting Attorney's Office

Subscribed and sworn to before me
this _4th_ day of August, 2010
at Springfield, Ohio

Notary Public

DORA L. GIBSON, Notary Public
In and for the State of Ohio
My Commsission Expires: 12-10-2012

A. 66

# MUNICIPAL COURT STATEMENT

FENDANT: Flay B Rood      509 W. Mulberry  Springfield, Ohio
_____Name_____Address_____

TE OF ARREST: 01/10/91  DATE OF OFFENSE: 01/06/91  CHARGE: Gross Sexual Imposition

MPLAINANT: (Name, address & phone)  Robert C Davidson  Spfld. City P.D.
_____

Charged the defendant after he did admit that he had taken down
the pants and under ware of                    2yrs. old),he

then rubbed          penis while he had his own penis in his

hand. This occured in a parked vehicle in front of his home at

| Name | Address | Phone |
|------|---------|-------|
|  G   | 509 W. Mulberry |  |
|      | Clark Co. Childrens Services |  |

A. 67

UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     -v-                                   CASE NO. 10-CR-149 (DNH)

FLAY ROOD,

               Defendant.
_____


# FLAY ROOD'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO DISMISS OR STRIKE THE PRIOR CONVICTION ALLEGATION OF THE INDICTMENT AND THE SPECIAL INFORMATION


DATED:      August 13, 2010          Respectfully submitted,
             Syracuse, New York

                                    ALEXANDER BUNIN
                                    Federal Public Defender


                         By:     Melissa A. Tuohey, Esq.
                                Assistant Federal Public Defender
                                Bar Roll No.: 510807
                                Clinton Exchange, 3rd Floor
                                4 Clinton Square
                                Syracuse, New York 13202
                                (315) 701-0080

A. 68

Flay Rood submits this reply to clarify the nature and grounds of the legal positions set forth in his initial memorandum as they relate to his motion to dismiss or strike the prior conviction allegation of the indictment and the government's special information and to declare 18 U.S.C. § 3559(e) inapplicable to him. He respectfully requests that this Court take this reply into consideration prior to ruling on his motion.

The parties are in substantial agreement as to the nature of the issues underlying Rood's motion. The government claims that Rood's alleged prior conviction in Ohio for gross sexual imposition would subject him to a life term of imprisonment under 18 U.S.C. § 3559(e) if he is convicted under 18 U.S.C. § 2251(a). Both the government and Rood agree that the ultimate question is whether Rood's alleged prior conviction constitutes a state sex offense as defined by Section 3559(e)(2)(B), and, in turn, by Section 3559(e)(2)(A). Whether Rood's alleged conviction qualifies ultimately turns on whether gross sexual imposition parallels Section 2241(c).[1]

---

[1] Although apparently not relying on it, the government also mentions 18 U.S.C. § 2244(a)(5), which, in turn, references Section 2241(c). The main difference between that provision and Section 2241(c) rests on whether the contact was over or under the clothing of the child. Section 2244(a)(5) would also include the touching of the "anus, groin, breast, inner thigh, or buttocks, of any person," in addition to the genitalia. As both provisions require the government to prove an "intentional touching" with a specified intent, both provisions are identical as to the scienter elements. However, by incorporating the definition of sexual contact in 18 U.S.C. § 2246(3), the proscribed areas in Section 2244(a)(5) are more narrowly circumscribed than the areas prohibited by gross sexual imposition under Ohio law. For example, Ohio defines sexual contact to include the touching of a thigh, while federal law is limited to the touching of the inner thigh. Ohio also does not include the touching of the anus. Assuming groin is equivalent to pubic area, the prohibited areas are otherwise coextensive. And by incorporating the definition of sexual act in Section 2246(2)(D), Section 2241(c) is significantly more narrow than the definition of sexual contact embedded within the crime of gross sexual imposition. For Section 2241(c) only applies to the touching of the genitalia of a child, while gross sexual imposition can be committed by touching the genitalia, thigh, buttock, pubic region, or a female breast. Because the Ohio statute covers a broader range of conduct than federal law, and because there is nothing in the charging document, plea colloquy, or judgment limiting the area Rood allegedly touched to one covered by federal law, his alleged prior

1

A. 69

The government appears to acknowledge that Section 2241(c) contains elements not present in the Ohio statute of gross sexual imposition, Ohio Rev. Code § 2907.05 (1991). In particular, Section 2241(c) requires the government to prove that a defendant intentionally touched a child under 12, that he did so with the intent to arouse the child, and that he did all of these acts knowingly. Gross sexual imposition, on the other hand, merely requires the prosecution to prove that a defendant touched a child under 13, whether intentionally or unintentionally, and that the defendant did so "for the purpose of sexually arousing or gratifying either person." Ohio. Rev. Code § 2907.01(B). Accordingly, the federal statute contains two mens rea elements not present in the Ohio statute.[2] It is this difference that is dispositive.

As Rood observed in his opening memo, a defendant can be convicted of gross sexual imposition even if he touches a child under 13 by accident, mistake, or through ignorance. Accidentally, ignorantly, or mistakenly touching a child, however, is not criminal under Section 2241(c) or 2244(a)(5). Therefore, Rood's alleged prior conviction, documents relating to which do nothing to suggest that Rood's alleged touching was anything other than accident, ignorant, or mistaken, does not consist of conduct that would be a federal offense as defined by Section

---

conviction is not covered by Section 3559(e).

[2] The government incorrectly summarizes Rood's argument. Rood has not, and does not now, concede that the definition of sexual contact under Ohio is coextensive with the definition of sexual act and sexual contact under federal law. In addition to the differences outlined in footnote 1 above, there are elemental differences. Rood assumes *arguendo* only that "with an intent" to arouse under federal law is coextensive with "for the purpose" of arousing under Ohio law. His argument rests on an additional and fundamental difference between the definitions. Federal law defining both sexual act and sexual contact contains an additional element requiring proof that a defendant intentionally touched a child. The Ohio statute contains no such similar provision. Federal law also requires that the intentional touching with the intent to arouse is done knowingly, while Ohio does not.

2

A. 70

3559(e)(2)(B).

The government complains that Rood's "minute analysis" is "implausible and absurd." This attack is based on one objection. According to the government, because the Ohio statute requires proof that the defendant touched a child for the purpose of arousal, he necessarily must have intentionally touched the child. Put somewhat differently, the government contends that a defendant cannot accidently, ignorantly, or mistakenly touch a child for the purpose of arousal. Working backwards in this fashion, the government concludes that the elemental disparity between Ohio and federal law is a distinction without a difference.[3] The government's argument lacks imagination.

There are many ways in which a person may accidently, ignorantly, or mistakenly touch a child for the purpose of arousal. While not exhaustive, two examples will suffice to demonstrate this point. After washing up in his bathroom, a married male defendant may return to his dark bedroom, where he anticipates finding his wife waiting for him. Wishing to engage his wife in a romantic encounter, he may reach over to touch her for the purpose of arousal, only to find that he has accidentally and mistakenly touched the genitalia of his child, who, suffering from nightmares, has, unbeknownst to the defendant, entered the bed to sleep with the parents. That defendant has committed gross sexual imposition, but he has not committed an offense under Sections 2241(c) and 2244(a)(5). Another defendant may be engaging a child in horseplay. Although the defendant may

---

[3] As noted in his opening memorandum, interpreting federal law in this fashion effectively reads out two of the elements included by Congress in Sections 2241(c) and 2244(a)(5). *See* Memo in Support of Motion at 10 (Dkt. No. 23). The government's reading, therefore, violates a fundamental rule of statutory interpretation, which states that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Forrest Grove School Dist. v. T.A.*, 556 U.S. __, __, 129 S.Ct. 2484, 2499 (2009) (quoting *Corley v. United States,* 556 U.S. __, __, 129 S.Ct. 1558, 1560 (2009)).

3

A. 71

touch the child in non-prohibited areas, he may be doing so for the purpose of arousal. For example, he may tickle a female child's shoulders and back, both non-prohibit areas, and he may be doing this for his own arousal. While perhaps objectionable, his conduct to that point does not constitute the offense of gross sexual imposition or an offense under Sections 2241(c) or 2244(a)(5). As he continues to engage in horseplay, the child may twist and the defendant may accidently and mistakenly touch the child's breast. That defendant has committed gross sexual imposition, but he has not committed an offense under Sections 2241(c) and 2244(a)(5). Because Rood could have committed gross sexual imposition, but not an offense under Sections 2241(c) or 2244(a)(5), he is not subject to the increased penalties under Section 3559(e).[4]

This fact would not change even if this Court applies a modified categorical approach. As the government notes, when the predicate offense proscribes a greater range of conduct than the federal offense, courts generally apply a modified categorical approach to determine whether the defendant's conviction falls within the federal definition of the predicate offense. Employing this approach to a predicate resulting from an alleged guilty plea, a reviewing court may only consider the charging document, written plea agreement, plea colloquy and any factfinding made by the court to which the defendant assented. *See*, *e.g.*, *Shepard v. United States*, 544 U.S. 13, 16 (2005). In an attempt to fit Rood's alleged prior conviction within the scope of 2241(c), the government offers Exhibit B, which contains several documents from the Court of Common Pleas, the court in which Rood was allegedly convicted: a charging document (Bill of Information), waiver of indictment, a

---

[4] Under a strict categorical approach, one Rood requests that this Court follow, the analysis would be at an end. Rood responds to the government's modified categorical approach in the event this Court employs that analysis.

A. 72

judgment entry of conviction, and the regulations of probation.[5]  There is nothing in these documents that would indicate Rood's alleged touching of a child under 13 years old was anything other than accidental, ignorant, or mistaken.  Perhaps recognizing this, the government offers Exhibit A, which includes a Municipal Court Statement and an affidavit by Stan N. Erter, an Investigator with the Clark County Prosecuting Attorney's Office.  The government's reliance on Exhibit A is both inappropriate and inadequate.

Rood objects to Exhibit A for several reasons.  First, it is offered by the Prosecuting Attorney's Office, not an employee from the court.  The meaning of claimed records relating to Rood's arrest should not be based solely on the prosecution's understanding, and the document should be authenticated by a clerk of the court.  Second, further confusing the document's significance, it is offered by an investigator with the Clark County Prosecuting Attorney's Office, not an attorney.  Third, Investigator Erter has only been employed as such since November 22, 2003.  Rood was allegedly arrested on January 10, 1991.  Whatever Investigator Erter's understanding of a Municipal Court Statement may be currently, it has little bearing on the document's significance at the time of Rood's alleged arrest and plea.  Fourth, the Statement comes from the Municipal Court of Springfield, Ohio, which merely has jurisdiction to conduct preliminary hearings in felony case.  Rood was allegedly charged and convicted in the Ohio Court of Common Pleas in Clark County.  Therefore, Investigator Erter's claim that the Municipal Court Statement is a charging instrument is not accurate.  The Bill of Information filed in the Court of Common Pleas and found in the government's Exhibit B is the charging instrument.  Neither it nor any other document in the Court

---

[5]  Rood objects to the Court's consideration of the regulations of probation included in Exhibit B.  It does not fall within the documents approved of by the Supreme Court in *Shepard*.

A. 73

of Common Pleas (Exhibit B) references or incorporates the Municipal Court Statement. Fifth, and most importantly, the document is not one approved by the Supreme Court. This is because there is nothing in Exhibit A, either in the statement or affidavit, to indicate that either Rood assented to the allegations presented therein, or that the court adopted it in accepting his alleged guilty plea. Therefore, this Court should decline to place any reliance on Exhibit A.[6] If this Court contemplates considering it, however, Rood requests a hearing to present evidence as to the meaning and significance of the Municipal Court Statement, one in which he is permitted to offer rebuttal evidence to the claims offered by Investigator Erter.

Even if this Court considers the Municipal Court Statement over Rood's objection, it still does nothing to prove Rood's alleged touching of a child under 13 years old was anything other than mistaken, accidental, or ignorant. This is because the Municipal Court Statement does not allege Rood *intentionally* touched a child. Because it fails to do so, and because Rood could have accidently, ignorantly, or mistakenly touched the child, his alleged conviction does not fall under either Sections 2241(c) or 2244(a)(5).

Before concluding, it is worth clarifying the nature of Rood's motion. He seeks an order from this Court holding that Section 3559(e) does not apply to him as a matter of law because gross sexual imposition does not constitute a state sex offense under Section 3559(e)(2)(B). If this Court agrees, then Rood moves to dismiss both the prior conviction allegation in the indictment and the special information. In the event that this Court disagrees with his analysis, or decides to later

---

[6] The only reference to the alleged age of the child in question is also limited to the Municipal Court Statement. Therefore, should this Court decline the government's invitation to consider that document, there is no way to demonstrate that the alleged victim was under 12 years old, as required to sustain a conviction under Section 2241(c). *See* Memo in Support of Motion at 10 (Dkt. No. 23).

A. 74

determine the applicability of Section 3559(e), Rood moves for an order requiring the government to strike the mandatory minimum allegations contained in the indictment and the government's special information.  Doing so will permit Rood to plead guilty to the underlying charged conduct, should he decide to do so, but not have to plead to the prior conviction allegation and special conviction, thereby permitting him to further challenge the application of Section 3559(e) on other grounds.

## CONCLUSION

Based on the foregoing reasons, this Court should grant Rood's motion to dismiss the prior conviction allegation in the indictment and the special information filed by the government and hold that 18 U.S.C. § 3559(e) cannot be applied to him should he be convicted of Counts One, Two, or Three.  If holding otherwise, this Court should strike the allegation and information and permit Rood, in the event of conviction, to further challenge the application of Section 3559(e) on other constitutional and statutory grounds prior to sentencing.

DATED:       August 13, 2010                    ALEXANDER BUNIN
                                                Federal Public Defender

                                    By:    /s/
                                           Melissa A. Tuohey
                                           Assistant Federal Public Defender
                                           Bar Roll No.: 510807
                                           Clinton Exchange, 3rd Floor
                                           4 Clinton Square
                                           Syracuse, New York   13202
                                           (315) 701-0080

                                           James P. Egan
                                           Research & Writing Specialist

cc:    Lisa Fletcher, AUSA
       Flay Rood

A. 75

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

                                  5:10-CR-149

         v.

FLAY ROOD,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| UNITED STATES ATTORNEY–SYRACUSE OFFICE<br>Attorneys for the United States of America<br>100 South Clinton Street, P.O. Box 7198<br>Syracuse, New York 13261 | LISA M. FLETCHER, ESQ.<br>GEOFFREY J.L. BROWN, ESQ. |
| OFFICE OF THE FEDERAL PUBLIC DEFENDER– SYRACUSE OFFICE<br>Districts of Northern New York & Vermont<br>Attorneys for Defendant<br>The Clinton Exchange, 3rd Floor<br>4 Clinton Square<br>Syracuse, New York 13202 | MELISSA A. TUOHEY, ESQ. |

DAVID N. HURD
United States District Judge

## <u>DECISION and ORDER</u>

       Defendant Flay Rood ("defendant" or "Rood") has moved for a determination

that 18 U.S.C. § 3559(e), the enhanced penalty provision for repeated sex offenses

against children, does not apply to him as a matter of law because his prior conviction

for Gross Sexual Imposition under Ohio Rev. Code 2907.05 does not constitute a State

Sex Offense under 18 U.S.C. § 3559(e)(2)(B).  Specifically, the defendant moves to

A. 76

dismiss both the prior conviction allegation in the March 25, 2010 Indictment and the Special Information filed by the Government on April 1, 2010. The United States of America (the "Government") opposes and also cross-moves pursuant to Fed. Rule Crim. Pro. 16(b)(1) to compel defendant's disclosure of certain materials.

Defendant's motion is premature and will be denied without prejudice. However, the Court would be amenable to taking a plea with the defendant reserving the right to challenge the applicability of 18 U.S.C. § 3559(e) to his prior conviction of Gross Sexual Imposition. Additionally, the Government's cross-motion for discovery will be denied.

Accordingly,

it is ORDERED that

1. Defendant's motion to strike or dismiss the prior conviction allegation in the Indictment and the Special Information is DENIED without prejudice; and

2. The Government's cross-motion for discovery is DENIED without prejudice.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 19, 2010
      Utica, New York.

A. 77

2

1   Video Change of Plea

2          COURT CLERK:  United States of America

3   versus Flay Rood, criminal number 2010-CR-149.

4          Counselors, your appearance for the record,

5   please.

6          MS. FLETCHER:  Lisa Fletcher for the United

7   States.  Good morning, Judge.

8          THE COURT:  Good morning.

9          MS. TUOHEY:  Good morning, Your Honor.

10  Melissa Tuohey on behalf of Flay Rood who is also present

11  here appearing by video in Syracuse, New York.

12         THE COURT:  As noted, the defendant, his

13  attorney, and the Assistant U.S. Attorney are in Syracuse.

14  I, my Courtroom Deputy, and Court Reporter are in Utica.

15  We are communicating over a videoteleconference system

16  where the defendant can observe us and we can observe him

17  and the other people in Syracuse.

18         Ms. Tuohey, I understand the defendant

19  wishes to waive his right to a personal appearance before

20  me?

21         MS. TUOHEY:  That's correct, Your Honor.

22         THE COURT:  Mr. Rood, you have a right to

23  appear personally before me.  If you waive that right, we

24  will continue with these proceedings by

25  videoteleconference.  If not, this proceeding will be

26  adjourned to be continued at a time when I am in Syracuse

A. 78

3

1    Video Change of Plea

2    or you are directed to be brought to Utica.

3           Do you waive your right to a personal

4    appearance before me and consent to continuing with these

5    proceedings by way of videoteleconference?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  A finding is made that the

8    waiver of personal appearance before me is knowingly and

9    voluntarily made, and this matter will continue by way of

10   videoteleconference.

11          Next, I understand that the defendant is

12   prepared to plead guilty to Count 1 through 6 of the

13   Indictment charging him in Counts 1, 2, and 3 with coercing

14   children to engage in sexually explicit conduct for the

15   purpose of producing visual depiction of such conduct in

16   violation of 18 U.S.C. 2251(a); and in Count 4 with

17   distribution of child pornography, in violation of

18   18 U.S.C. 2252A(a)(2)(A); and in Count 5 with receipt of

19   child pornography, in violation of

20   18 U.S.C. 2252A(a)(2)(A); and in Count 6 with possession of

21   child pornography, in violation of

22   18 U.S.C. 2252A(a)(5)(B).

23          Is that correct, Ms. Tuohey?

24          MS. TUOHEY:  That's correct, Your Honor.

25   And just for the record, pursuant to the Court's

26   November 19, 2010, order, we are reserving our right to

A. 79

4

1   Video Change of Plea

2   challenge the applicability of 18 U.S.C. 3559(e) at

3   sentencing.

4                   THE COURT:  So noted.

5                   Mr. Rood, I must inform you that if you

6   persist in your original plea of not guilty, you would have

7   each of the follow rights:

8                   The right to a speedy and public trial by an

9   impartial jury of twelve people.

10                  At trial, you would be presumed innocent

11  under the law, and the burden would be upon the government

12  to establish your guilt beyond a reasonable doubt to the

13  satisfaction of all twelve jurors.

14                  At trial, you would have a right to the

15  assistance of your attorney, and the right to see each

16  witness against you, and to have your attorney

17  cross-examine them.

18                  At trial, you would have a right to either

19  remain silent or testify in your own behalf, but you could

20  not be compelled to testify, and if you did not testify, it

21  could not be used against you in any way.

22                  Also at a trial, you would have a right to

23  use the subpoena and the other processes of the Court to

24  compel witnesses to attend and testify in your behalf and

25  also to secure documentary evidence to offer in your

26  defense.

A. 80

5

1   Video Change of Plea

2                    If you plead guilty, you are going to give

3   up all of those rights.  There will not be a trial, but I

4   will still have the same power to sentence you as if you

5   had been found guilty after a trial on Counts 1 through 6

6   of the Indictment.

7                    Is it your desire to waive and give up the

8   rights I have just explained to you, Mr. Rood?

9                    THE DEFENDANT:  Yes, sir.

10                   THE COURT:  Do you understand if you plead

11  guilty, you will be found guilty without a trial?

12                   THE DEFENDANT:  Yes, sir.

13                   THE COURT:  Do you understand that the

14  crimes to which you are proposing to plead guilty are very

15  serious crimes, they are each federal felonies?  Do you

16  understand?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  Do you understand that if you

19  plead guilty, not only will you be found guilty of six

20  federal felonies, but you may also be deprived of some

21  valuable civil rights such as the right to vote, hold

22  public office, serve on a jury or possess any kind of a

23  firearm?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  Let me now explain the procedure

26  here in open court, Mr. Rood.  If you plead guilty, you

A. 81

6

1  Video Change of Plea

2  will immediately be placed under oath by the clerk, and I

3  will proceed to ask you a series of questions so that I can

4  be satisfied you are pleading guilty freely and

5  voluntarily.

6             I am going to be asking you whether any

7  promises of leniency have been made to induce you to plead

8  guilty.  I am going to be asking you whether any threats or

9  force have been used to induce you to plead guilty.  I am

10  going to ask whether you are presently under the influence

11  of any alcohol, narcotics, drugs, pills or medicine which

12  would in any way impair your ability to understand the

13  nature of the charges against you and the consequences of

14  pleading guilty.

15             And finally, Mr. Rood, you are going to have

16  to tell me in your own words what you did so that I can be

17  satisfied you are, in fact, guilty of the charges contained

18  in Counts 1 through 6 and that you are not just pleading

19  guilty for some other reason.

20             You will be under oath.  Your answers must

21  be truthful.  If not, you could be in further difficulty

22  with the law if the government brings charges against you

23  for perjury or making a false statement.

24             Also a plea of guilty, you waive your right

25  against self-incrimination.  You cannot take the Fifth

26  Amendment, you must answer my questions.

A. 82

7

1    Video Change of Plea

2              I expect, Mr. Rood, that you have fully

3    discussed your case with your attorney, that you have been

4    advised of the charges against you, the factual basis of

5    your plea, the consequences of pleading guilty and any

6    defense you may have to any of these charges.  And I warn

7    you in the strongest terms possible that you should not

8    plead guilty unless you are, in fact, guilty of the charges

9    made against you in Counts 1 through 6 of the Indictment.

10             Do you still want to plead guilty?

11             THE DEFENDANT:  Yes.

12             THE COURT:  What is that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Mr. Minor, take the defendant's

15   plea and place him under oath.

16             COURT CLERK:  Mr. Rood, do you waive the

17   reading of Counts 1 through 6 of this Indictment, sir?

18             THE DEFENDANT:  Yes.

19             COURT CLERK:  How do you plead to Counts 1

20   through 6 of this Indictment, guilty or not guilty?

21             THE DEFENDANT:  Guilty.

22             COURT CLERK:  Please stand and raise your

23   right hand.

24

25     FLAY ROOD, being first duly sworn, was examined and

26   testified as follows under oath:

A. 83

8

1    Video Change of Plea

2                    THE COURT:  State your full name.

3                    THE DEFENDANT:  Flay Rood.

4                    THE COURT:  How old are you?

5                    THE DEFENDANT:  Fifty-seven.

6                    THE COURT:  How far did you go in school?

7                    THE DEFENDANT:  Eleventh grade.

8                    THE COURT:  When were you arrested on this

9    charge, these charges?

10                   THE DEFENDANT:  I am not positive on that.

11                   THE COURT:  Approximately.

12                   THE DEFENDANT:  I think it was in October of

13   2009.

14                   THE COURT:  And where did you live at that

15   time?

16                   THE DEFENDANT:  1004 Whitesboro Street.

17                   THE COURT:  In what village or town?

18                   THE DEFENDANT:  Utica, New York.

19                   THE COURT:  And with whom did you live?

20                   THE DEFENDANT:  My daughter.

21                   THE COURT:  And what is your daughter's

22   name.

23                   THE DEFENDANT:  Heather Rood.

24                   THE COURT:  How old is she?

25                   THE DEFENDANT:  Twenty-one.

26                   THE COURT:  Are you married?

A. 84

```
1    Video Change of Plea
2                     THE DEFENDANT:  Yes, sir.
3                     THE COURT:  Do you have any other children?
4                     THE DEFENDANT:  Yes, sir.
5                     THE COURT:  How many other children?
6                     THE DEFENDANT:  I have five in total.
7                     THE COURT:  Where do they live?
8                     THE DEFENDANT:  Utica.
9                     THE COURT:  With whom do they live?
10                    THE DEFENDANT:  Well, they are all on their
11   own now.
12                    THE COURT:  They are all adults?
13                    THE DEFENDANT:  Yes, sir.
14                    THE COURT:  Were you employed at the time
15   you were arrested?
16                    THE DEFENDANT:  No, sir.  I am disabled.
17                    THE COURT:  When is the last time you had a
18   job?
19                    THE DEFENDANT:  I have been disabled for
20   like, I think, six years.
21                    THE COURT:  Where did you work before you
22   were disabled.
23                    THE DEFENDANT:  A machine shop in Utica.
24                    THE COURT:  What was your job?
25                    THE DEFENDANT:  I was a machine operator.
26                    THE COURT:  Before you were arrested, did
```

A. 85

10

1    Video Change of Plea

2    you use narcotics?

3              THE DEFENDANT:  Prior to that years ago,

4    yes.

5              THE COURT:  What type of narcotics have you

6    used in the past?

7              THE DEFENDANT:  Not narcotics, I am sorry,

8    just alcohol.

9              THE COURT:  You didn't use any narcotics?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Have you taken any alcohol or

12   narcotics in the last twenty-four hours?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Are you now taking any kind of

15   pills, drugs or medicine?

16             THE DEFENDANT:  Just prescription.

17             THE COURT:  For what?

18             THE DEFENDANT:  Heart, blood pressure.

19             THE COURT:  Did you take medication today?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  What did you take today?

22             THE DEFENDANT:  Well, I am not sure of the

23   name on all of them.  It is just heart pills and blood

24   pressure.

25             THE COURT:  You are under the care of a

26   doctor for this condition?

A. 86

1  Video Change of Plea

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do these pills that you took

4  today have any effect whatsoever on your ability to

5  understand these proceedings and what is going on today and

6  the charges against you?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  You are represented by Attorney

9  Melissa Tuohey; is that right?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  And she was appointed by the

12 Court to help you?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Are you satisfied with her?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And has she advised you of your

17 rights?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And did you hear and understand

20 what I told you a few moments ago about your rights?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Have you read the Indictment

23 against you which contains the six charges?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And did your attorney explain

26 the charges to you?

A. 87

12

1  Video Change of Plea

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  And did she answer any questions

4  you may have had about the charges against you?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  So you understand exactly what

7  you have been charged with here, do you not?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  Now, has your lawyer, any

10 Assistant United States Attorney, any government agent or

11 anyone else made any promises that you would be treated

12 leniently or any other promises in order to induce you to

13 plead guilty?

14                    THE DEFENDANT:  No, sir.

15                    THE COURT:  Anybody use any force or make

16 any threats against you to induce you to plead guilty?

17                    THE DEFENDANT:  No, sir.

18                    THE COURT:  Are you presently on probation

19 or parole from any other court?

20                    THE DEFENDANT:  No, sir.

21                    THE COURT:  Do you have a prior conviction

22 in February of 1991 in Ohio?

23                    THE DEFENDANT:  Yes, sir.

24                    THE COURT:  What was that for?

25                    THE DEFENDANT:  What is it called?  Sexual

26 imposition.

A. 88

13

1    Video Change of Plea

2                    THE COURT:  What was the charge against you

3    then?

4                    THE DEFENDANT:  Sexual imposition.

5                    THE COURT:  Now, you have six counts in this

6    Indictment.  Count 1 involves Victim One.  What did you --

7    and she was eight years old when you did something to her

8    in January of 2005?

9                    THE DEFENDANT:  I don't understand that.

10                    MS. FLETCHER:  Excuse me, Your Honor, all

11    the victims are males.

12                    THE COURT:  Okay.

13                    I am asking you about Count 1 involves a

14    male identified as V1 born in 1997 and eight years old, and

15    you did something to him in January of 2009.

16                    What did you do to him?

17                    (Whereupon, an Attorney/Client discussion

18                    was held off the record.)

19                    THE DEFENDANT:  Yes, sir, I took pictures

20    with a camera of him.

21                    THE COURT:  Pictures of what?

22                    THE DEFENDANT:  The child nude.

23                    THE COURT:  Engaging in any sexual activity?

24                    THE DEFENDANT:  No.

25                    THE COURT:  Just nude?

26                    THE DEFENDANT:  Yes, sir.

A. 89

14

1    Video Change of Plea

2                    THE COURT:  What did you do with the

3    pictures?

4                    THE DEFENDANT:  It was on another flash

5    drive.  I never did anything with them.  I didn't have them

6    on the computer or anything.

7                    THE COURT:  Count 2 involves a V2 who was

8    born in 2005, and in January of 2008 when he was three

9    years old, what did you do with him?

10                   THE DEFENDANT:  Took pictures, Your Honor,

11   the same thing.

12                   THE COURT:  What type of pictures?

13                   THE DEFENDANT:  They were nude.

14                   THE COURT:  Any explicit conduct in the

15   picture?

16                   THE DEFENDANT:  No, sir.

17                   THE COURT:  Count 3 involves V3, also born

18   in 2005, and in March of 2008 at approximately three years

19   old, you had some contact with him?

20                   THE DEFENDANT:  Yes, sir.

21                   THE COURT:  Tell me what happened?

22                   THE DEFENDANT:  Pardon me?

23                   THE COURT:  Tell me what happened with him?

24                   THE DEFENDANT:  Same thing, I took some nude

25   pictures.

26                   THE COURT:  And in Count 4 you are charged

A. 90

15

1   Video Change of Plea

2   with distribution of child pornography.  In Count 5,

3   receipt of child pornography.  And in Count 6, possession

4   of child pornography.

5                    Tell me what that entailed, Mr. Rood?  What

6   did you do with --

7                    (Whereupon, an Attorney/Client discussion

8                    was held off the record.)

9                    THE DEFENDANT:  I was just on LimeWire and

10  downloaded some pictures.

11                   THE COURT:  What were the pictures?

12                   THE DEFENDANT:  Of nude children.

13                   THE COURT:  And what were they doing?

14                   THE DEFENDANT:  Various things, Your Honor.

15                   THE COURT:  What do you mean various things?

16  Tell me what was on the videos that you were in possession

17  of, distributed, and received?

18                   THE DEFENDANT:  Just things of a sexual

19  nature.

20                   THE COURT:  How many videos did you have of

21  that nature?

22                   THE DEFENDANT:  It says seventy videos.

23                   THE COURT:  Not what it says.  Did you have

24  seventy videos of child pornography?

25                   THE DEFENDANT:  Yes, sir.

26                   THE COURT:  And you distributed it.  How did

A. 91

16

1   Video Change of Plea

2   you distribute it?

3           THE DEFENDANT:  They picked them up, my

4   files.

5           THE COURT:  So you possessed it, you

6   received at least seventy videos of child pornography; is

7   that right?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Ms. Fletcher, what would the

10  government prove if you went to trial against Mr. Rood?

11          MS. FLETCHER:  Yes, Your Honor, the

12  government would prove, excuse me, the following elements

13  of each of the offenses.

14          As to Counts 1 through 3, we would prove

15  first that the defendant knowingly employed, used,

16  persuaded, induced, enticed, or coerced a minor or minors

17  to engage in sexually explicit conduct.

18          Second, that the defendant's actions were

19  for the purpose of producing visual depictions of such

20  conduct.

21          And third, that such visual depictions were

22  produced using materials that had been mailed, shipped, or

23  transported in interstate or foreign commerce and/or that

24  such visual depictions were actually transported or

25  transmitted using any means or facility of interstate or

26  foreign commerce or affecting interstate or foreign

A. 92

17

1   Video Change of Plea

2   commerce.

3               As to Counts 4 and 5, we would prove the

4   following elements:

5               That the defendant knowingly distributed,

6   attempted to distribute, and received visual depictions of

7   a minor or minors engaging in sexually explicit conduct.

8               And second, that such visual depictions were

9   received and distributed using a means and facility of

10  interstate and foreign commerce, or had been transported in

11  and affecting such commerce.

12              As to Count 6, we would prove that the

13  defendant knowingly possessed or accessed with intent to

14  view material that contained an image or images of child

15  pornography.

16              And second, that said depictions had been

17  transported using any means or facility of interstate and

18  foreign commerce or in and affecting such commerce, or

19  reproduced using materials which had been so transported.

20              And the factual basis for those elements we

21  would prove as follows:

22              In July and August of 2009, Utica Police

23  Sergeant Anthony Martino, in an undercover capacity on a

24  peer-to-peer network, conducted an investigation into

25  computers with New York IP addresses that were or had been

26  sharing child pornography on the Internet.

A. 93

1    Video Change of Plea

2                Looking for IP addresses that were actively

3    sharing within New York State, and specifically in Oneida

4    County, Sergeant Martino found IP address 67.249.48.12 that

5    was identified by a law enforcement software program as

6    having offered suspect child pornography for downloading

7    over forty times between June 15, 2009, and August 8, 2009.

8                Sergeant Martino was able to partially

9    download from that IP address a video file with the SHA1

10   digital signature.  The file name was "5yo Girl Raped By

11   Daddy - Pre-teen - Child Pornography - Illegal - PTHC -

12   Pedo - R@ygold - Babyshivid - KDQuality - Zadoom - Lolita -

13   QWERTY - ChildFugga - Ddoggprn(1).mpg."

14               Because files names do not always accurately

15   depict the contents of the file, Sergeant Martino compared

16   the SHA1 value of that particular file with a file

17   recovered in previous investigations containing the

18   identical SHA1 value, and found it to be a video file

19   approximately one minute and forty-four seconds long that

20   depicts an adult male and a prepubescent female child who

21   appears approximately twelve years old.  In the video, the

22   male engages in sexual intercourse with the female child.

23               A subpoena was then issued to obtain

24   subscriber information for IP address 67.249.48.12 for the

25   date and time that Sergeant Martino successfully connected

26   to that user through the peer-to-peer network and partially

A. 94

1    Video Change of Plea

2    downloaded the file already described.  Pursuant to the

3    subpoena response, it was determined that a person with the

4    last name of Rood, later determined to be the defendant

5    Flay Rood's son, of a Utica, New York address was assigned

6    that IP address at the date and time in question.

7               As a result, on August 28, 2009, Honorable

8    Barry Donalty, Oneida County Judge, issued a search warrant

9    for the Utica residence listed on the subpoena response,

10   and authorized a search of the residence and electronic

11   media found therein for items evidencing violations of New

12   York State Penal Law Section 263, that is, offenses

13   relating to child pornography.  That warrant was executed

14   on August 31, 2009.

15              Flay Rood was present during the search

16   warrant and agreed to be interviewed.  Investigator Jeremy

17   VanHorne of the Utica Police Department interviewed the

18   defendant, during which Rood admitted that he had been

19   receiving child pornography over the Internet including

20   through peer-to-peer file sharing, and that he had saved

21   images and videos of child pornography to his computer hard

22   drive and to a USB thumb drive.

23              On September 15, 2009, while previewing the

24   USB drive seized from Rood's residence, UPD Police Officer

25   Edin Selimovic identified images of a naked male child that

26   appeared to be self-produced.  These images depict a

A. 95

20

1  Video Change of Plea

2  prepubescent male exposing and touching his penis.

3            The images also depict portions of the torso

4  and lower half of the body of an adult male, with

5  distinctive body marks visible on the torso of an adult

6  male.  In the images, the adult is wearing pajama pants,

7  and the child is sitting on the adult's lap.

8            In some of the images, the adult is seen

9  pulling the child's clothing aside in order to expose his

10 penis.  The images include the lewd and lascivious

11 exhibition of that child's genitals.  This images of

12 produced child pornography were found to have been created

13 with a Sprint Fusic cellular phone camera Model M6500C.  We

14 would prove that that make and model camera is not

15 manufactured in New York State, and actually is not

16 manufactured in the United States, and as such, it has been

17 transported in and affecting interstate and foreign

18 commerce.

19            According to the data embedded in the images

20 of this victim, they were taken on March 23, 2008.  These

21 images represent Child V3 named in Count 3 of the

22 Indictment.

23            Further investigation by

24 Investigator VanHorne and the Oneida County District

25 Attorney's office Investigator Patrick O'Connor included a

26 search warrant to photograph the body of Flay Rood.  That

A. 96

1    Video Change of Plea

2    search revealed the distinctive body marks seen on the

3    adult male's torso in the images described above.  In

4    addition, investigators recovered pajama pants that match

5    those seen in the images.  And through their investigation,

6    Investigators VanHorne and O'Connor determined the identity

7    of V3 as a child known to the defendant who was three years

8    old at the time the images as charged in Count 3 were

9    taken.

10            Forensics analysis further identified

11    sexually explicit images of two additional male children

12    that were created by the defendant.  One is an image

13    created with a JVC Gr-D270 camera, which matches the make

14    and model of a digital video camera seized as evidence from

15    Rood's residence.  Again, this camera, we would prove, is

16    not manufactured in New York.  It is, in fact, not

17    manufactured in the United States and, therefore, has been

18    shipped and transported in interstate and foreign commerce.

19            The images of this child include images of

20    the lewd and lascivious exhibition of this child's

21    genitals.  The child depicted in the images is identified

22    by investigation as another child known to the defendant.

23    The title of the image of this child as saved to the USB

24    thumb drive where it was found, includes the name of this

25    child.  According to the data embedded in the image, it was

26    taken on January 1st, 2005, at which time the child would

A. 97

22

1   Video Change of Plea

2   have been seven years old.  This child is V1 is C one who

3   is named in Count 1 of the Indictment much.

4            Also located on the USB thumb drive were

5   sexually explicit images of a third prepubescent male child

6   including images of the lewd and lascivious exhibition of

7   this child's genitals.  Portions of the lower half of the

8   body of an adult are also present in these images.  The

9   adult is wearing pajama pants, and the child is sitting on

10  the adult's lap.

11           These images of produced child pornography

12  were also found to have been created with a Sprint Fusic

13  cellular phone camera Model M6500C, again not manufactured

14  in New York or the United States and, therefore,

15  transported in interstate and foreign commerce.  No phone

16  of this make and model was recovered in the investigation,

17  but investigation did reveal that the defendant had

18  previously owned such a phone.

19           According to the data embedded in the images

20  of this third child, they were taken on January 9, 2008.

21  An investigation by Investigator VanHorne and Investigator

22  Fred Eckert of the Clay County Florida Sheriff's office

23  determined the identity of the child in these images to be

24  that of a child who resides in Florida and who would have

25  been four years old at the time the images were taken.

26           The investigation further revealed that the

A. 98

1  Video Change of Plea

2  child is known to Rood, that the images were taken at a

3  residence in Florida where Rood lived for a period of time,

4  and that on occasion, Rood and his wife babysat the child

5  at that residence.  This child is V2 and is named in

6  Count 2 of the Indictment.

7              Further, as the child -- the images of the

8  child were taken in Florida and found in New York, those

9  images were actually transported by the defendant in

10 interstate commerce, that is, from Florida to New York.

11             In addition, forensics analysis confirmed

12 that a file sharing program was installed on the computer

13 seized from Rood's residence and was used to receive and

14 download child pornography from the Internet.  In that

15 regard, search terms were found to have been used in

16 LimeWire by the defendant on the computer and may include

17 such search terms as:

18             7yo, 8yo, Anal, Gay preteen, Gay pthc, Kdv,

19 Nude boys, Preteen, Pthc.

20             Forensic analysis also revealed that when

21 file sharing is enabled on the computer, all downloaded

22 files are set to be shared, and all files in the

23 "Compaq_Owner\Desktop\limewire dl" file are also shared.

24 Several illicit files were located in the "LimeWire dl"

25 folder, and were shared when sharing was enabled.

26             Additionally, analysis of the thumbs.db file

A. 99

24

1  Video Change of Plea

2  in the "LimeWire dl" folder indicates that a large number

3  of child pornography images found in other folders on the

4  computer were once located in that folder.

5           In all, forensics analysis found that

6  seventy video files and one hundred and fourteen still

7  images depicting child pornography, including sexually

8  explicit depictions of prepubescent children and depictions

9  of sadistic or masochistic abuse or other depictions of

10  violence were found on the defendant's computer and media.

11  These include the lewd and lascivious exhibition of

12  genitals of underaged children and children involved in

13  sexually explicit conduct.

14           Of those files the National Center for

15  Missing and Exploited Children has found that seven of the

16  video files, representing four different series, and

17  forty-five image files, representing nine different series,

18  are contained within their database of actual children

19  previously identified by law enforcement officials in

20  numerous different investigations.

21           THE COURT:  Mr. Rood, is what the Assistant

22  United States Attorney Fletcher just said substantially

23  what you did and what occurred in this case?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Ms. Tuohey, is that also your

26  understanding?

A. 100

25

1   Video Change of Plea

2          MS. TUOHEY:  Yes, it is, Your Honor.

3          THE COURT:  Ms. Fletcher, what is the

4   penalties the defendant is facing as a result of his plea

5   of guilty to Counts 1 through 6?

6          MS. FLETCHER:  Your Honor, the penalties in

7   this case are affected by the defendant's prior criminal

8   conviction that Your Honor alluded to earlier.  That

9   conviction is set forth in the Indictment.  It was a

10   conviction in February of 1991 to the crime of gross sexual

11   imposition, a felony in violation of Ohio law which, at the

12   time of the defendant's conviction, made it unlawful to

13   have sexual contact with another, not the spouse of the

14   offender, when the other person is less than thirteen years

15   of age.

16          The basis of that conviction was that the

17   defendant rubbed the penis of a two-year old child while he

18   also had his own penis in his hand.  As a result of that

19   conviction, the defendant was sentenced to a term of

20   imprisonment of two years.  The sentence was suspended, and

21   he was placed on probation with two years -- for two years

22   with a condition that he serve ninety days in jail.

23          As Your Honor is aware, the government

24   maintains that that conviction implicates the mandatory

25   life imprisonment provision under Section 3559(e), and

26   therefore, on Counts 1 through 3, the defendant's mandatory

A. 101

26

1    Video Change of Plea

2    sentence would be life.  We understand that the defense has

3    raised an objection to that, and the Court will rule on

4    that at sentencing.

5           Should the Court rule that the mandatory

6    life imprisonment under 3559(e) is not applicable, the

7    prior conviction, regardless, implicates heightened

8    statutory mandatory minimums and maximums under

9    Sections 2251 and 2252(a) in the following way:

10           Statutorily, and taking out 3559(e),

11    Counts 1 through 3 would carry a mandatory minimum of

12    twenty-five years, with a maximum of fifty years each.

13           Counts 4 and 5 carry each a mandatory

14    minimum of fifteen years, with a maximum of forty years.

15           And Count 6 carries a mandatory minimum of

16    ten years, with a maximum of twenty years.

17           The defendant, in addition, faces possible

18    fines of up to two hundred and fifty thousand dollars on

19    each count.  He also faces the following in regards to

20    supervised release:

21           In addition to any other penalty, the Court

22    must require the defendant to serve a term of supervised

23    release of any term of years, not less than five, and as

24    much as life, to begin at the expiration of any term of

25    imprisonment imposed upon him.

26           Should the defendant be placed on supervised

A. 102

1  Video Change of Plea

2  release, and subsequently violate any of the terms and

3  conditions of that release before the expiration of such

4  term, he may be sentenced up to five years imprisonment in

5  addition to any prison term previously imposed and in

6  addition to the statutory maximum term of imprisonment.

7          Under some circumstances, the Court may also

8  extend the term of supervised release, and it may modify,

9  reduce, or enlarge the conditions of such release.

10          As the defendant is an offender required to

11  register under Sex Offender Registration and Notification

12  Act as a result of his convictions in this case, if while

13  on supervised release, he commits any criminal offense

14  under Chapter 109A, 110, or 117, or under Section 1201 or

15  1591 of Title 18 for which imprisonment for a term longer

16  than one year can be imposed, the Court must revoke his

17  supervised release and required him to serve a term of

18  imprisonment of not less than five years on the violation.

19          There shall be a special assessment in this

20  case of six hundred dollars.

21          In addition, the defendant, as a result of

22  his conviction, must register as a sex offender, and keep

23  the registration current in each jurisdiction where he

24  resides, where he is an employee, and where he is a

25  student.  For initial registration purposes, the defendant

26  must also register in New York as a result of this

A. 103

1   Video Change of Plea

2   conviction, even if he resides in a different jurisdiction.

3   A sex offender who knowingly fails to register or update a

4   required registration may be subject to prosecution under

5   18 U.S.C. 2250, and face a penalty of up to ten years.

6              In addition, there will be the collateral

7   consequences of a felony conviction, including possible

8   forfeiture of his right to vote and right to bear arms.

9              The defendant also shall forfeit to the

10  United States all of his right, title, and interest of any

11  nature in any and all assets subject to forfeiture as set

12  forth in the Forfeiture Allegation of the Indictment,

13  including, but not limited to:

14             A Compaq Presario computer; a JVC camcorder;

15  a USB thumb drive; and three Compaq disks.

16             Furthermore, pursuant to 18 U.S.C. 2259(a),

17  the Court is required to order restitution for the full

18  amount of the victims' compensable losses as defined at

19  18 U.S.C. 2259(b)(3) and (c) as may be proved by the United

20  States or stipulated to by the parties.

21             The Court may not decline to award

22  restitution because of the defendant's economic

23  circumstances, or the fact that the victims have, or are

24  entitled to, receive compensation for their injuries from

25  the proceeds of insurance or any other source.

26             THE COURT:  Mr. Rood, do you realize the

A. 104

29

1   Video Change of Plea

2   penalties that could be imposed upon your pleading guilty

3   to Counts 1 through 6?

4                   THE DEFENDANT:  Yes, sir.

5                   THE COURT:  Ms. Fletcher, in view of the

6   many mandatory minimums, are there any additional proposed

7   advisory guideline range?

8                   MS. FLETCHER:  By my calculations, Your

9   Honor, the advisory guidelines range would be life.

10                  THE COURT:  Mr. Rood, the next step will be

11  a Presentence Report.  You must cooperate with the

12  Probation Officer in preparing that report.  Once it has

13  been completed, you, your attorney, and the government will

14  have opportunities to object to any of the facts reported

15  by Probation Officer or to challenge the advisory guideline

16  recommendations of the Probation Officer.

17                  I also inform you that parole has been

18  abolished, and when you are sentenced to prison, you will

19  not be released on parole.  Unless it is a life sentence,

20  you may secure good behavior credits of a maximum of

21  fifty-four days per year.

22                  Mr. Rood, now that you have been informed

23  about the penalties you are facing, do you still want to

24  plead guilty to Counts 1 through 6 of the Indictment?

25                  THE DEFENDANT:  Yes, sir.

26                  THE COURT:  Are you pleading guilty because

A. 105

1  Video Change of Plea

2  you are guilty and for no other reason?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Ms. Tuohey, for the record would

5  you state your background and experience?

6              MS. TUOHEY:  Yes, Your Honor.  I have been

7  practicing law in the State of New York and the Northern

8  District of New York for the past ten years.

9              I have been with the Office of the Federal

10  Public Defender for the past nine years.  I have handled

11  only federal criminal defense work, and the case that is

12  before the Court now.

13              THE COURT:  How much time have you spent

14  with this defendant and on this case approximately?

15              MS. TUOHEY:  Approximately on this case in

16  total, Your Honor, at least sixty hours.  As the Court is

17  aware, there were pretrial motions, and there is numerous

18  counts in the Indictment.  I have reviewed all the

19  discovery.  I have researched those issues.  I have shared

20  that with Mr. Rood.

21              THE COURT:  And have you advised him of his

22  rights and the nature of the charges and the consequences

23  of pleading guilty?

24              MS. TUOHEY:  I have, Your Honor.

25              THE COURT:  Have you had discovery of the

26  government's evidence, either formally or informally?

A. 106

1  Video Change of Plea

2          MS. TUOHEY:  I have had full formal

3  discovery.

4          THE COURT:  Have you made any promises or

5  threats to induce the defendant to plead guilty?

6          MS. TUOHEY:  I have not, Your Honor.

7          THE COURT:  Are you satisfied he is pleading

8  guilty freely and voluntarily?

9          MS. TUOHEY:  Yes, Your Honor.

10          THE COURT:  Are you satisfied he understands

11  the nature of the charges against him?

12          MS. TUOHEY:  I do.  I am, Your Honor, yes.

13          THE COURT:  Are you satisfied he understands

14  the consequences of pleading guilty to those charges?

15          MS. TUOHEY:  Yes, Your Honor.

16          THE COURT:  Do you know of any defense that

17  he may have?

18          MS. TUOHEY:  I do not, Your Honor.

19          THE COURT:  Do you know of any other reason

20  why he should not plead guilty to Counts 1 through 6?

21          MS. TUOHEY:  No, Your Honor.

22          THE COURT:  Based on the foregoing, I find

23  that the defendant's plea of guilty to Counts 1 through 6

24  of the Indictment is voluntary.

25          I find the defendant is fully competent and

26  capable to enter a plea of guilty.

A. 107

32

1   Video Change of Plea

2          I find the defendant understands the charges

3  against him and the consequences of pleading guilty, and I

4  find there is an independent basis in fact for me to accept

5  and enter the plea of guilty to Counts 1 through 6 of the

6  Indictment.

7          Therefore, I direct the Clerk to enter a

8  plea of guilty to Counts 1 through 6 of the Indictment

9  charging the defendant, Flay Rood, in Counts 1, 2, and 3

10  with coercing children to engage in sexually explicit

11  conduct for the purpose of producing visual depiction of

12  such conduct in violation of 18 U.S.C. 2251(a); and in

13  Count 4 with distribution of child pornography in violation

14  18 U.S.C. 2252A(a)(2)(A); and in Count 5 with receipt of

15  child pornography in violation of 18 U.S.C. 2252A(a)(2)(A);

16  and in Count 6 with possession of child pornography in

17  violation of 18 U.S.C. 2252A(a)(5)(B).

18          I direct the Probation Department to prepare

19  and submit a presentence report.

20          Sentencing is tentatively scheduled for

21  Friday, May 20, 2011, at 2:00 p.m. in Utica, New York.

22          The defendant is presently detained, and I

23  assume that that detention should continue.

24          Anything further, counselors?

25          MS. FLETCHER:  Nothing further, Your Honor.

26          MS. TUOHEY:  No, Your Honor.  Thank you.

A. 108

33

1    Video Change of Plea

2                    THE COURT:   The defendant is remanded to the

3    custody of the United States Marshals pending sentencing.

4                    Mr. Minor.

5                    COURT CLERK:   Court stands in recess.

6                    (Whereupon, a brief recess was taken.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A. 109

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,


    -v-                                     CASE NO. 10-CR-149 (DNH)


FLAY ROOD,

                      Defendant.

---

# SENTENCING MEMORANDUM

DATED:     May 3, 2011               Respectfully submitted,
             Syracuse, New York

                                       LISA A. PEEBLES
                                       Federal Public Defender

                          By:

                                       Melissa A. Tuohey, Esq.
                                       Assistant Federal Public Defender
                                       Bar Roll No. 510807
                                       Office of the Federal Public Defender
                                       4 Clinton Square, 3rd Floor
                                       Syracuse, New York   13202
                                       (315) 701-0080

A. 110

## PRELIMINARY STATEMENT

On December 22, 2010, Flay Rood entered a guilty plea to a 6 Count Superseding Indictment.  Counts 1 through 3 charge him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & 18 U.S.C. § 3559(e)(1); Counts 4 and 5 charge him with Distribution and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); and Count 6 charges him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

The PSR sets forth a total advisory offense level of 43 and a Criminal History Category V, resulting in a recommended guideline range of Life.  Pursuant to 18 U.S.C. § 2251(e), the statutory sentencing range for producing child pornography is 15 to 30 years' imprisonment.  The range is increased to 25 to 50 years if the defendant has one prior conviction under certain specified federal statutes or "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography . . . ."  18 U.S.C. § 2251(e). Additionally, the Superseding Indictment alleges that Rood's prior Ohio State Conviction for Gross Sexual Imposition, a felony in the third degree, subjects him to mandatory Life, under 18 U.S.C. § 3559(e).

Prior to entering a plea of guilty, Rood filed a Motion to Dismiss or Strike the Prior Conviction Allegation of the Indictment and Special Information, that alleges Rood's prior conviction qualifies as a predicate offense under 18 U.S.C. § 3559(e).  By way of Decision and Order from this Court, dated November 19, 2010, the Court denied Rood's motion without prejudice on the ground that it was premature and must be raised at the time of sentencing.  Rood renews his motion at this time and relies upon motion papers previously filed on July 9, 2010, as well as his Reply to the Government's Response, filed on August 13, 2010.  (*See* Docket Nos.:

A. 111

23-25, 27).

Defense counsel respectfully submits, upon reviewing the statutory factors set forth under 18 U.S.C. § 3553(a), that a sentence of no more than 25 years is more than sufficient to achieve the statutory sentencing goals.

## OBJECTIONS TO THE PSR

Rood objects to the factual allegations contained in paragraphs 18 and 19 of the PSR. Counsel is awaiting statements from family members that can provide further detail with regard to these objections and will supplement these objections when this information is received.

For now, with respect to paragraph 18, he denies the allegations that he sexually abused V-3. The allegations surfaced on September 9, 2009, following Rood's arrest for this offense on August 31, 2009. The pictures of V-3 that were taken by Rood occurred on March 23, 2008. These allegations came forward for the first time one year and six months following the taking of the pictures of V-3. With respect to paragraph 19, he objects to this entire paragraph and denies the allegations in their entirety. Again, this statement from Rood's granddaugher involves allegations that were supposed to have occurred over five years ago and were made for the first time following Rood's arrest for this offense. Upon information and belief, these allegations are uncorroborated and have not been verified.

## SENTENCING AFTER *UNITED STATES V. BOOKER*

*Booker* reaffirmed the constitutional mandate first announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Booker*, 543 U.S. at 244 (quoting *Apprendi*, 530 U.S. at 490). In order

A. 112

to comply with the Sixth Amendment right to a jury trial, the "statutory maximum" is the maximum sentence a judge may impose solely on the basis of facts found by a jury or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 303 (2004).

*Booker* held that the mandatory nature of the United States Sentencing Guidelines violates the Sixth Amendment. As a result of this conclusion, the Supreme Court excised those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory. These are 18 U.S.C. § 3553(b)(1), mandating use of the Guidelines, and 18 U.S.C. § 3742(e), which "sets forth standards of review on appeal." *Booker*, 543 U.S. at 245-46. Instead of being bound by the Sentencing Guidelines, a sentencing court is now required to consider the Guideline ranges along with the statutory factors set forth in 18 U.S.C. § 3553(a), specifically:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) To afford adequate deterrence to criminal conduct;
    (C) To protect the public from further crimes of the defendant; and
    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for–
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines– . . .
(5) any pertinent policy statement– . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Most recently, the Supreme Court has held that district courts are no longer required or permitted to simply defer to the Sentencing Commission's policies. *United States v. Rita*, 127 S.Ct.

3

A. 113

2456, 2458 (2007).  A district court may conclude that the guideline sentence fails to reflect  §

3553(a) considerations, reflects an unsound judgment, does not treat Defendant's characteristics in

the proper way, or that a different sentence is appropriate "regardless." *Id.* at 2463.

A.      18 USC § 3553(a) FACTORS

### OFFENSE CONDUCT/BACKGROUND OF ROOD

Rood was discovered to have downloaded images of child pornography onto his

computer during a Utica Police investigation into peer-to-peer file sharing programs in August of

2009.  An IP address, later connected to Rood, resulted in a search warrant for his residence.

Upon being confronted by Utica Police Investigators on August 31, 2009, at his residence, Rood

admitted to downloading child pornography using the Limewire peer-to-peer file sharing

program.   Following his admissions, his computer, thumb drive, camcorder, and compact disks

were seized from his home.

A search of Rood's computer revealed a total of 114 still images, and 70 videos of child

pornography.  A search of his thumb drive uncovered 17 images of three prepubescent males (V-

1, V-2, and V-3), that were produced by Rood and make up Counts 1 through 3 of the

Superseding Indictment.

V-1 is Rood's grandson and he was 7 years old when Rood produced one picture of him

on January 1, 2005.  The photograph shows V-1 with his pants pulled down and his penis

exposed.

V-2 was a child that was babysat by Rood's wife, Cheryl Rood, when they lived in

Florida between 2007 and 2008.  There are four images of this child, who was two years old at

the time the images were created.  Two of the images are of the child sitting on the defendant's

4

A. 114

lap without pants on and the other two images are of the child standing with his pants down (one image displays the child's penis, the other image displays the child's buttocks). These images were taken by Rood on January 9, 2008.

V-3 is Rood's grandson, the brother to V-1, who was 3 years old when the pictures were taken by Rood. There are 12 images pertaining to V-3. Some of these images consist of the child's clothes being pulled to the side to expose his penis. Some images are of the child sitting on the defendant's lap. These images were taken by Rood on March 23, 2008.

The images of V-1, V-2, and V-3, were stored on Rood's thumb drive and they were not distributed by Rood to others. These images do not involve acts of sexual intercourse, and the majority of the images include only shots of the genitalia of the children. These charges carry the heaviest penalty, as Rood is facing a mandatory minimum term of 25 years imprisonment, with a maximum of 50 years, on each of counts 1 through 3.

25 years imprisonment is a significant amount of time, especially in light of Rood's age and his failing health. He is now 57 years old. If this Court were to sentence him to the minimum term of 25 years imprisonment, Rood would not be released from prison until he is close to 80 years old.[1] The United States Sentencing Commission has found "recidivism rates decline relatively consistently as age increases." *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, A Component of the Fifteen Year Report on the U. S. Sentencing Commission's Legislative Mandate (May 2004). In addition, the Department of Justice has found that "management

---

[1] Rood was arrested on state charges on August 31, 2009, and he has remained in custody since that date. The state charges will be dismissed in favor of federal prosecution. As such, he is entitled to 21 months of prior custody credit from the BOP. With almost two years of credit, Rood would approximately be released close to the age of 80.

5

A. 115

problems with elderly inmates, . . . are intensified in the prison setting and include: vulnerability

to abuse and predation, difficulty in establishing social relationships with younger inmates, need

for special physical accommodations in a relatively inflexible physical environment." *See*

Correctional Health Care, *Addressing the Needs of Elderly, Chronically Ill and Terminally Ill*

*Inmates*, U.S. Dept. Of Justice National Institute of Corrections, 9, 10 (2004).  The elderly in the

report are defined throughout the report as age 50 or older.

      In addition to his age, Rood has numerous health problems.  (PSR ¶¶ 100-102).  He

requires new dentures and he is deaf in his left ear.  He has degenerative joint disease and

arthritis in his spine.  He has had four prior back surgeries, and he still suffers from chronic back

pain.  He has already suffered at least two heart attacks, the first occurred when he was in his

30's, and his last occurred approximately 5 years ago.  His heart condition required a stent

placement.  In addition to his heart issues, his lungs are plagued by chronic obstructive

pulmonary disease (COPD).  He also suffers from hypertension, high cholesterol, depression, and

obstructive sleep apnea.

      Rood has gone through periods of depression, requiring psychiatric treatment and anti-

depressant medication.  (PSR ¶ 103).  For over twenty years, he abused alcohol, which accounts

for the series of drinking and driving offenses set forth in the PSR.  (PSR ¶¶ 80-85, 87-89, 93).

Fortunately, he has maintained sobriety since 1995, after completing inpatient and outpatient

treatment.  During his years of alcohol abuse, he was convicted of the offense in Ohio, reflected

in paragraph 86 of the PSR, and currently being disputed as an offense that qualifies for

mandatory life enhancement under 18 U.S.C. § 3559(e)(1).  The objections surrounding this

conviction have been fully briefed in Rood's pre-plea motion filed with this Court on July 9,

A. 116

2010.  Additionally, at the time of that offense, both Flay and Cheryl Rood had been drinking

alcohol on that night, and they both state that the period of time that Flay was in the car alone

with Chad Rood, was very brief.  There are no other allegations of sexual misconduct involving

Flay Rood against Chad Rood, or any of his other children.  In fact, they love and support their

father, and they find it hard to believe he is guilty of this offense.  (PSR ¶ 99).  These statements

were also made by Chad Rood, who is now 22 years old, the victim of the Ohio offense.  It is a

significant factor for the Court's determination, that Flay Rood's own children, especially Chad

Rood, report no allegations of sexual misconduct by their father.

Rood has been in a relationship with Cheryl Rood for 27 years, but they did not marry

until June of 2000.  They have two children together, Chad and Heather Rood.  Flay Rood has

three other children with his ex-wife, Hazel Pearson, and they had three children together,

Richard, Paula, and Ann Rood.  They are grown, and they have children of their own.

Specifically, Ann Rood has five children from five different men, and four of them were raised

by Flay and Cheryl Rood, after they gained legal custody of the children.  According to Rood, his

daughter struggled with drug and alcohol abuse that left her unable to care for her children.

Ann's oldest child is the subject of the allegations set forth in paragraph 19 of the PSR that are

being objected to by Rood.  There are no other allegations of sexual misconduct from the other

grandchildren that were raised by Rood.          '

### *U.S.S.G. § 4B1.5*

All of the above factors further support non-application of U.S.S.G. § 4B1.5, the Repeat

and Dangerous Sex Offender Against Minors enhancement, that causes a recommended guideline

range of Life imprisonment.  (PSR ¶ 74).   The arguments made in Rood's pre-plea motion

A. 117

surrounding Rood's prior conviction, that occurred 20 years ago, are also being relied upon in support of this argument. Application of this enhancement raises Rood's criminal history category from category II to category V. To apply a Life sentence, based upon the facts surrounding that prior offense, the age of that offense, the complete lack of investigation, and the fact that no further allegations of similar conduct have come forward from Rood's own children, especially Chad Rood, would result in a severe and harsh punishment.

Based upon Rood's background, his age and health issues, the motion filed by Rood in connection with his prior Ohio conviction, Rood seeks a non-guideline sentence of no more than 25-years imprisonment. A 25-year sentence will be more than sufficient to satisfy the statutory purposes of sentencing, as set forth in Section 3553(a). Such a sentence is substantial and would obviously reflect the seriousness of the offense. There can be little doubt that a 25-year sentence would serve as an adequate deterrent and such a sentence would obviously promote respect for the law and provide just punishment for this offense. 18 U.S.C. § 3553(a)(2)(A).

A. 118

**CONCLUSION**

The Supreme Court has returned discretion to the sentencing courts and reaffirmed the principle that sentencing is a uniquely individualized process which must take into account all circumstances surrounding an offense and a defendant's background. Based upon the foregoing, counsel respectfully requests that the Court consider imposing a sentence of 25 years in prison.

DATED: May 3, 2011      Respectfully submitted,

             LISA A. PEEBLES
             Federal Public Defender

         By:  */s/*
             Melissa A. Tuohey, Esq.
             Asst. Federal Public Defender
             Bar Roll No: 510807
             4 Clinton Square, 3rd Floor
             Syracuse, New York 13202
             (315) 701-0080

A. 119

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

              v.

FLAY ROOD,

              Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Case No.  10-CR-149 (DNH)

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a sentence of Life.

# I

## INTRODUCTION

On December 22, 2010 defendant FLAY ROOD entered a guilty plea to Counts 1 through 6 of  Indictment 10-CR-149.  Counts 1 - 3 each charge that ROOD knowingly used, persuaded, induced, enticed, and coerced a minors (V-1, V-2, and V-3, respectively) to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a).  Counts 4 - 6, respectively, charge ROOD with knowingly distributing, receiving, and possessing child

A. 120

pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A)(Counts 4 and

5) and 2252A(a)(5)(B)(Count 6).  ROOD is scheduled to be sentenced on May 20, 2010.

## II

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

### 1.    <u>Statutory Maximum and Minimum Sentences</u>

FLAY ROOD has a prior conviction that enhances his statutory sentences. PSR ¶¶86, 111-12.

Specifically, as alleged in the Indictment, and in the Special Information filed by the Government,

the defendant has the following prior final conviction relating to the aggravated sexual abuse, sexual

abuse, or abusive sexual conduct involving a minor or ward:

On or about February 1, 1991, in the Court of Common Pleas, Clark County Ohio, FLAY

ROOD entered a plea of guilty to the crime of Gross Sexual Imposition, a felony in the third degree,

in violation of Ohio R.C.  Section 2907.05, which, at the time of the defendant's conviction, made

it unlawful to have sexual contact with another, not the spouse of the offender, when the other person

is less than thirteen years of age.  The basis of the conviction was that ROOD rubbed the penis of

a 2 year old child while he also had his own penis in his hand.  As a result of this conviction, on or

about February 1, 1991, FLAY ROOD was sentenced to a term of imprisonment of 2 years.   The

sentence was suspended, and ROOD was placed on probation for 2 years with a condition that he

serve 90 days in jail.

The Government maintains that the foregoing conviction results in increased potential

punishment under Title 18, United States Code, Sections 2251(e), 2252A(b)(1) and (b)(2), and under

Title 18, United States Code, Section 3559(e) in the following respects:

      **a.**      As to Counts 1 - 3 of the Indictment, Title 18, United States Code, Section 2251(e)

**Page 2**

A. 121

provides, in pertinent part:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward . . ., such person shall be fined under this title and imprisoned for *not less than 25 years nor more than 50 years*. (Emphasis added).

**b.** However, as to Counts 1 - 3, the statutory enhancement in §2251(e) is superseded by Title 18, United States Code, Section 3559(e). Entitled "mandatory life imprisonment for repeated sex offenses against children," this statute provides:

> A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed.[1]

**c.** As to Counts 4 and 5 of the Indictment, Title 18, United States Code, Section 2252A(b)(1) provides, in pertinent part:

> Whoever violates, or attempts or conspires to violate, paragraph . . . (2) . . . of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . , *such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years*. (Emphasis added).

**d.** As to Count 6 of the Indictment, Title 18, United States Code, Section 2252A(b)(2) provides, in pertinent part:

> Whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined

---

[1] By motion filed July 9, 2010, the defendant objected to the application of §3559(e), and moved for the references to it in the Indictment and Special Information filed by the Government be stricken. By Decision and Order filed November 19, 2010, this Court denied the defendant's motion as premature. The Government maintains that for all of the reasons outlined in our August 4, 2010 response to the defendant's motion, §3559(e), and a mandatory life sentence, is applicable to each of Counts 1 - 3.

**Page 3**

A. 122

under this title or imprisoned not more than 10 years, or both, but, if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . , *such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.* (Emphasis added).

In addition, each count of conviction carries with it a mandatory term of supervised release of at least 5 years, and up to life. 18 U.S.C. §3583(k); PSR ¶116.

## 2.     Guidelines Provisions

### a.     Offense Level

The Government adopts the Guidelines calculations of the Probation Officer, without qualification, resulting in a total offense level of 43. PSR ¶¶28 -76.

### b.     Acceptance of Responsibility

The defendant is entitled to a two-level downward adjustment to his offense level for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a). PSR ¶¶27, 71. The government moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for having "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." PSR ¶72. Regardless, the defendant's total offense level remains 43. PSR ¶¶71-76.

### c.     Criminal History Category

According to the presentence report, as a repeat and dangerous sex offender, U.S.S.G. §4B1.5(a)(2), the defendant's criminal history category is V. PSR ¶90. The Government agrees with the Probation Office's determination of the defendant's criminal history category.

A. 123

### d. Guidelines Range and Sentence

As described above, the defendant's total offense level is 43 and his criminal history category is V. As a result, the Sentencing Guidelines advise that the defendant receive a sentence of Life. PSR ¶113. The Guidelines also advise:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. §5G1.2(d); PSR ¶114. Accordingly, even were this Court to find persuasive the defendant's argument that the mandatory life sentence required by 18 U.S.C. §3559(e) is not applicable to him, the Guidelines advise running the sentences on each count of conviction consecutively to one another to the extent necessary to achieve the total punishment. In that event, in order to accomplish the overall Guidelines sentence of life, the Government moves for consecutive terms of imprisonment on Counts 1 - 3, where the alternative statutory sentence, 18 U.S.C. §2251(e), is a minimum of 25 years, and a maximum of 50 years.

### III

### GOVERNMENT'S SENTENCING RECOMMENDATION [2]

#### 1. <u>Mandatory Life Sentence</u>

---

[2] The Government reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

A. 124

The Government continues to maintain that a life sentence is mandated in this case by 18 U.S.C. §3559(e). PSR ¶111. As discussed at length in our August 4, 2010 Response to Defendant's Motion to Dismiss or Strike the Prior Conviction Allegation of the Indictment and Special Information[3] ROOD's conviction qualifies as a predicate offense under §3559(e) and he should be sentenced accordingly.

Nevertheless, even were the Court to accept the defendant's argument that his prior conviction for abusing his then-two-year-old son does not qualify as a prior conviction within the meaning of §3559(e), a sentence amounting to life is still warranted by a Guidelines calculation, PSR ¶113-14, as well as by the factors this Court must consider under 18 U.S.C. §3553(a).

## 2. **Guidelines Sentence**

As the defendant's total offense level is 43, and his criminal history category is V, his Guidelines sentence is Life. PSR ¶113. Absent the application of §3559(e), the statutory minimum sentence on each of Counts 1 - 3 would be 25 years, and the statutory maximum would be 50 years. 18 U.S.C. §2251(e).[4] Therefore, to achieve the Guidelines sentence of Life (PSR ¶113) the Government submits that a total punishment that includes consecutive sentences on each of Counts 1 - 3 (even then with concurrent sentences on Counts 4 - 6) is warranted. Such a sentence is reasonably designed to achieve the total punishment, as a minimum of 75 years, and a maximum of

---

[3] The Government incorporates herein by reference the arguments set forth in our August 4, 2010 motion response.

[4] The defendant's July 2010 motion objected to the application of §3559(e) only, and did not address the enhancements mandated by §2251(e) (or §2252A(b)), which apply to defendants who have a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward," which is a different standard and definition than that of the "prior sex conviction" required under §3559(e).

A. 125

150 years, amounts to a life sentence, and as such accomplishes the sentence called for by the Guidelines.

The government objects to the imposition of a sentence below the applicable guidelines range.[5] The record reveals no mitigating factors not adequately considered by the Sentencing Commission that would remove this case from the "mine-run" of similar cases, *see Rita v. United States*, 551 U.S. 338, 352 (2007). In that regard, while the Government is mindful of the continuing debate about Guidelines sentencing and child pornography crimes, *see United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010), the arguments raised in that debate are inapplicable in cases where, as here, the defendant's crimes, or history, include the hands-on abuse of children:

> We recognize that this court recently expressed concern regarding the substantive reasonableness of a child pornography sentence. See *United States v. Dorvee*, 604 F.3d 84 (2d Cir.2010).[6] *This case does not present the same issues, specifically whether the defendant was likely sexually to assault a child*. See *id*. at 94. Here, Levy actually molested a five-year-old girl, bragged about his conduct online, and thereafter not only failed to accept responsibility, but lied under oath about his culpability. In these circumstances, the challenged sentence falls within the wide range available to the district court to address the factors specified in 18 U.S.C. § 3553(a), particularly the seriousness of the crime and the need for deterrence.

*United States v. Levy*, 385 Fed. Appx. 20, *25 (2d Cir. 2010)(upholding a 30 year sentence for the production of child pornography where the defendant produced three images of one child on one occasion) (emphasis added); *see also United States v. Swackhammer*, 400 Fed. Appx. 615, 616-17 (2d Cir. 2010)(distinguishing *Dorvee* in a child pornography case where there was evidence that

---

[5] Again, we make this argument as an alternative sentencing argument in the event that the Court does not impose the mandatory life sentence under §3559(e).

[6] This is the cite for the original decision in *Dorvee*, filed on May 11, 2010. The Court of Appeals amended and superseded the opinion, reported at 616 F.3d 174, on August 4, 2010. This does not affect the decision in *Levy*.

A. 126

defendant "repeatedly molested his children.")

Here, like in *Levy*, ROOD has been convicted of production of child pornography.  As such, also like in *Levy*, the issues that concerned the *Dorvee* court are not present.  But ROOD's case contains even more aggravating circumstances than *Levy* because it involves the victimization of three separate children abused on three separate occasions, and the production of 17 separate images. PSR ¶14.  And, ROOD's crimes were committed over time: the image of V-1 was taken in 2005, the images of V-2 were taken in January, 2008, and the images of V-3 were taken in March, 2008.  PSR ¶¶15-17.  Moreover, what is not accounted for by these crimes of conviction is ROOD's history of abusing other children as well: his two year old son in 1991, PSR ¶86, and the repeated rapes of his granddaughter from ages 11 - 15.  PSR ¶19.

Accordingly, a Guidelines sentence is reasonable and just.

## 3.    Title 18, United States Code, Section 3553(a)

In addition to the reasonableness of a Guidelines sentence in this case, a sentence of or amounting to Life is also warranted  under a separate analysis of the factors set forth at 18 U.S.C. §3553(a).  Those considerations include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant - including the harm done to the child victims whose hands-on abuse by the defendant is the subject of Counts 1 - 3 (while accounting separately for the separate harm done to each of these children), the defendant's long-standing history of the sexual abuse of children, and the harm done to the children who are the victims of his Internet child pornography crimes (Counts 4 - 6); (2) the seriousness of the offense; (3) to promote respect for the law; (4) just punishment for the offense; (5) adequate deterrence to criminal conduct; (6) protection of the public from further crimes of the defendant; (7) the kinds of sentences available; (8) pertinent

A. 127

policy statements; and (9) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### 18 U.S.C. §3553(a)(1)

The first factor to be considered under §3553(a) is the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1). It is hard to imagine an offense more deserving of a life sentence. The defendant's crimes have damaged the lives of the three victims of Counts 1 - 3 in a way too horrible to imagine. PSR ¶¶ 14-18. Even so, these are not the only children damaged by the defendant. In 1991 he was convicted of sexually abusing his son when the child was but two years old, PSR ¶86. And, if this history were not compelling enough, when the defendant's abuse of V-3 came to light and was investigated, it was disclosed by the defendant's teenage granddaughter that she too was a victim of his sexual abuse, beginning at age 11, having sacrificed herself to the defendant in order to save her then-9-year-old sister from him. PSR ¶19. As a result, the defendant raped this child consistently from age 11 until she ran away from home at age 15. *Id.* The abuse and breach of trust suffered by these children will be re-lived and suffered by them and their families for the rest of their lives. PSR ¶¶24, 25.

Together with all of this, ROOD appears before this Court as an example of the close interplay between hands-on child sexual abuse and an appetite for trading in, receiving, and collecting child pornography - that is, images depicting the abuse of children at the hands of others. In that way, the defendant has also victimized additional children, for years, by trading in their images through peer-to-peer file sharing. PSR ¶¶12-13, 20-22. Seventy video files, and 114 image files, mostly depicting pre-pubescent children, and many depicting sadistic, or masochistic abuse, or other depictions of violence, were recovered from the defendant's computer. PSR ¶21. Within

A. 128

these files, an additional 34 child victims were identified by the National Center for Missing and Exploited Children as known children identified in prior investigations - who are now identified victims of the defendant's Internet child pornography crimes. PSR ¶22. ROOD not only re-victimized each of these children by receiving, sharing, viewing, collecting, and possessing the images of their abuse, but with these offenses he helped to sustain a world-wide market that thrives on the abuse of children. As such, his crimes reach as far and wide as the Internet does - and are not confined, as some may argue, to the four walls of his home.

With all of this, it is clear that ROOD poses a long-standing, real, and substantial threat to children. Thus, the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §3553(a)(1), *alone* provide ample evidence that FLAY ROOD is a dangerous sex offender for whom a sentence of Life (or the equivalent thereof) is appropriate - and necessary.

## 18 U.S.C. §3553(a)(2)

The next set of factors to be considered in imposing a sentence include:

the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2).

Certainly the recommended consecutive sentences on Counts 1 - 3 achieve all, or at least most, of these objectives.[7]   Few offenses are more serious, and the recommended sentence

---

[7] The defendant does not appear to be in need of educational or vocational training, and although the defendant requires some medical care, it appears that it is being adequately taken care

A. 129

acknowledges that, while at the same time affording adequate deterrence to others. Given the number of victims, and the nature and extent of the defendant's crimes, a maximum sentence is just. Further, the defendant's history demonstrates that the only way to protect the public, specifically, children, from him is to keep him in a place where he has no possibility of access to them.

Moreover, whether they would not or could not see the true nature of the man before them, it is troubling that the danger posed by ROOD is still to this day being denied by his family. PSR ¶¶ 98-99. Despite the wealth of evidence against him, and his own admissions to it, ROOD's wife told the Probation Officer that in 27 years he has "never been inappropriate with a child or touched a child in a sexual way." PSR ¶98. It is of grave concern that the abuse of the children referred to in Counts 1 - 3 occurred in the homes shared by the defendant and his wife, and that at least with V-2, occurred when the child was left in the care of both of them. PSR ¶¶16, 19. It is revealing, too, that the defendant's wife now denies that ROOD had done anything wrong to their two year old child in 1991 (PSR ¶98) - either forgetting that she was the one who called the police, or erroneously confident that those reports would not surface.[8] When the danger posed by a defendant like ROOD is, for years and years, either allowed by, denied by, or hidden from those closest to him, the only way to ensure he does not re-engage in illegal activity, and the only way to protect others from it, is through incarceration. *See* 18 U.S.C. §3553(a)(2)(C).

---

during his incarceration. PSR¶¶100-02.

[8] Reports from the 1991 incident clearly refer to the defendant's wife (then-live-in-girlfriend) as the "R.P." or "Reporting Party." Not only did she report the offense on January 6, 1991, but she also re-iterated her statements to investigators on January 8, 1991. While the defendant's statements about what had occurred were vague at first, on January 10, 1991 he admitted the abuse to which he later pled guilty. These reports will be provided to the Court and counsel under separate cover, and under seal. *See* 18 U.S.C. §3509(d); *Local Rules of Practice United States District Court for the Northern District of New York*, Effective January 1, 2011, Section XI, p. XI-2, Rule 1.3.

A. 130

**18 U.S.C. §3553(a)(3), (4), (5), and (6)**

The final set of factors to be considered in imposing sentence, pertinent to this matter, are:

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
     (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
             *     *     *
(5) any pertinent policy statement--
     (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

             *     *     *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. §3553(a)(3)-(6).

The only kind of sentence available to ROOD is incarceration, and the sentencing range as established by the Guidelines is Life. PSR ¶113. It is also noteworthy that the Guidelines offense levels go only as high as 43, while ROOD scores out at 45. PSR ¶75.

While the defendant's Guidelines sentence is Life, PSR ¶113, the maximum sentence on each count of conviction for Counts 1 - 3 is 50 years. PSR ¶82. As such, the Guidelines provide that "the sentence imposed on one or more of the other counts *shall* run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. §5G1.2(d)(emphasis added).

**Page 12**

A. 131

Further, §3553(a) instructs that the Court should consider applicable policy statements. Here, the policy statement issued by the Sentencing Commission at U.S.S.G. §5K2.0(b) advises against a departure from the Guidelines sentence in this matter, as it provides:

> DOWNWARD DEPARTURES IN CHILD CRIMES AND SEXUAL OFFENSES.--Under 18 U.S.C. § 3553(b)(2)(A)(ii), the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that--
>
> (1) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;
>
> (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and
>
> (3) should result in a sentence different from that described.
>
> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

The Government submits that there is no mitigating circumstance at all in this matter, much less one that meets the rigorous criteria set forth in this policy statement.

Finally, adherence to the Guideline sentence is the best way to assure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6). If all defendants, like ROOD, with a criminal record for the sexual abuse of a toddler, who abuse and produce child pornography of multiple children over a period of time, while also raping their granddaughter from the time she was 11 until she ran away from home at 15,

A. 132

and who trade in, download, collect, and possess images depicting the sexual abuse of other children, while scoring at an offense level of 45, and a criminal history category of V, were sentenced to the Guidelines range of Life, or it's equivalent, there will be no sentencing disparity.

**IV**

**CONCLUSION**

While the Government submits that a sentence of Life is mandated by 18 U.S.C. §3559(e), as discussed above, in the alternative a sentence that accomplishes the defendant's Guidelines sentence of Life is just and reasonable under the facts and circumstances of this case, and the relevant considerations of 18 U.S.C. §3553(a) justify and warrant such a sentence.

Accordingly, the Government submits that if the Court does not impose a life sentence under §3559(e), the sentence otherwise imposed should account for and recognize the separate harm caused to each of the defendant's three separate abuse victims by imposing consecutive sentences on Counts 1, 2, and 3. As 18 U.S.C. §2251(e) mandates a minimum of 25 years, and a maximum of 50 years on those counts of conviction, three consecutive sentences within that range, with concurrent sentences on Counts 4, 5, and 6, would amount to a life sentence, which is sufficient, but not greater than necessary to comply with and accomplish the many goals of sentencing. 18 U.S.C. §3553(a). Respectfully submitted this 27th day of April, 2010.

RICHARD S. HARTUNIAN
United States Attorney


_/s/_____
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

**Page 14**

A. 133

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*************************************

UNITED STATES OF AMERICA

        v.

FLAY ROOD,

                Defendant.

*************************************

Case No. 10 -CR- 149 (DNH)

GOVERNMENT'S RESPONSE TO
DEFENDANT'S SENTENCING
MEMORANDUM

On April 28, 2011, pursuant to the Uniform Presentence Order issued by the Court, the United States filed a sentencing memorandum in the above-captioned matter. The Sentencing Memorandum of the United States addressed the Presentence Investigation Report (PSR) only as we had not yet received the defendant's sentencing arguments or objections to the PSR. The Government reserved its right to respond in writing to any sentencing objections or arguments raised by the defendant after the filing of our memorandum, and we file this response in answer to the objections and arguments raised in the Sentencing Memorandum filed by the defendant on May 3, 2011.

## DEFENDANT'S OBJECTIONS AND ARGUMENTS

1.    <u>Factual Allegations in Paragraphs 18 and 19</u>

The defendant objects to the factual allegations contained in paragraphs 18 and 19 of the PSR. Defendant's Sentencing Memorandum, p. 2. Specifically, the defendant denies that he abused V-3, the subject of Count 3 of the Indictment. *Id.* However, the images of V-3 themselves establish this abuse. PSR ¶17 ("In some of the images, the defendant is pulling the child's clothing aside in order to expose his penis and the defendant is grabbing or touching the child's penis.") These images

A. 134

have been disclosed to the defense, were reviewed by the Probation Officer in preparation of the report, PSR ¶11, and are available for the Court's review upon request. Moreover, these images corroborate the statements of the defendant's granddaughter that she observed the defendant give the 3-year-old a "hand job." PSR ¶19. Accordingly, the Government maintains that the Probation Officer correctly related the facts of the defendant's abuse of V-3, and they should not only remain in the report, but should also be considered by this Court in fashioning a sentence.

Furthermore, the defendant's objection to paragraph 19 should also be rejected. First, the allegations did not occur "over five years ago," Defendant's Sentencing Memorandum, p.2, but instead occurred "from the time [the granddaughter] was 11 years old, when they lived in Florida, until December 2, 2008," the day before she ran away from home. PSR ¶19. While the granddaughter has no witness to her abuse, that alone is not cause to reject her statement. *See United States v. Carmona*, 873 F.2d 569 (2d Cir. 1989). Moreover, this child's statements about observing the abuse of V-3 are corroborated by the images themselves, lending credibility to her own disclosures about her grandfather, PSR ¶¶17, 19[1]. This child has been ostracized from her family, and has not been allowed to visit with her younger siblings who are in the care and custody of the defendant's wife. As such, it is of no surprise that those children would offer statements in lock-step with the views of their care-giver and the ROOD family- supporting the defendant and not their sister. Moreover, the family's denials about ROOD's crimes, including his *admitted* activity in this case, put into context the bias which colors their uniform support of ROOD and degradation of the granddaughter.

---

[1] A copy of the sworn statement of the granddaughter will be provided to the Court and counsel as Exhibit A to this response. As the child is a minor, that statement will be filed under separate cover and under seal. See 18 U.S.C. §3509(d).

**Page 2**

A. 135

2.    **Defendant's Objection to a Clearly Applicable Guidelines Enhancement Must be Denied.**

The defendant argues that the current denials surrounding the sexual abuse involved in his prior 1991 conviction, the age of the conviction, the facts of that case, and "the complete lack of investigation" of that matter support "non-application of U.S.S.G. §4B1.5." Defendant's Sentencing Memorandum, pp. 7-8. Not one of these factors are relevant to determining the admissibility of this Guideline. There are only two relevant issues: (1) whether his current offense is a "covered sex crime," which it is,[2] and (2) whether he committed the current offense "subsequent to sustaining at least one sex offense conviction," which he has. Nowhere in the Guideline or the application notes is there a provision putting a temporal limitation on the prior conviction, or limiting it to any surrounding factual scenario, or investigative technique. Moreover, the allegation that the 1991 case was brought despite a "complete lack of investigation," is baseless, and the reports of that investigation, previously provided to the Court and counsel, demonstrate as much.

As the Guideline clearly applies, the Court cannot refuse to apply it:

As *Crosby*[3] recognized, even under an advisory Guidelines system, district courts "will normally have to determine the applicable Guidelines range ... in the same manner as before *Booker* [ ][4]," *id*. at 111-12, in order to decide whether "(i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence," *id*. at 113. In *United States v. Rubenstein*[5], we recently ruled that a Guidelines error that "appreciabl[y] influence[s]" this

_____

[2] ROOD's convictions for producing child pornography are covered sex crimes. U.S.S.G. §4B1.5, Application Note 2.

[3]  *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

[4]  *United States v. Booker,* 543 U.S. 220 (2005)

[5] *United States v. Rubenstein*, 403 F.3d 93 (2d Cir. 2005).

**Page 3**

A. 136

decision could render the final sentence unreasonable. 403 F.3d at 98.

*United States v. Canova,* 412 F.3d 331. 350-51 (2d Cir. 2005). Moreover, "'improperly calculating' the applicable 'Guidelines range' constitutes a 'significant procedural error' warranting remand for resentencing under [an abuse of discretion] standard." *United States v. Salim*, 549 F.3d 67, 72 (2d Cir. 2008) quoting *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597 (2007).

Furthermore, even if ROOD did not have the 1991 conviction, §4B1.5 would still apply. Specifically, §4B1.5 (b) provides:

In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:

(1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.

(2) The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

A "pattern of sexual activity" is defined as engaging in prohibited sexual conduct "on at least two separate occasions." U.S.S.G. §4B1.5, Application Note 4(B)(I). "Prohibited sexual conduct" includes the production of child pornography. §4B1.5, Application Note 4(A). As such, even if ROOD did not have the 1991 conviction (and even without considering his repeated rapes of his granddaughter, PSR ¶19) his convictions for three counts of producing child pornography would themselves result in application of §4B1.5, and a 5-level increase to his offense level (increasing it from 45 to 50). *See* PSR ¶75. With no increase in his criminal history category, ROOD'S resulting Guideline would continue to be Life.

Either way, ROOD is exactly the type of offender for which this Guideline enhancement was

**Page 4**

A. 137

designed, and a sentence of Life is recommended, as it meant to "ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." U.S.S.G. §4B1.5, Background, *citing* Section 401(i)(1)(A) of Public Law 108-21 (PROTECT Act).

**3.     Defendant's Request for a Non-Guidelines Sentence Should be Rejected**

The defendant argues for a non-Guidelines sentence of 25 years.  Defendant's Sentencing Memorandum, pp. 4-8.  In support, he offers several arguments purportedly in mitigation.

First, ROOD argues that the images he produced of the three child victims "do not involve acts of sexual intercourse, and the majority of the images include only shots of the genitalia of the children."  *Id*. at 5.  What he fails to mention is that the images of V-3 (who was 3 years old at the time) depict the defendant "pulling the child's clothing aside in order to expose his penis and . . . grabbing or touching the child's penis."  PSR ¶17.  Furthermore, after a trip to the defendant's house, the child disclosed to his mother that the defendant "touched his penis and butt, and he [the child] touched the defendant's penis." PSR ¶18.  The child also disclosed that it hurt. *Id*.  There are few crimes more serious than the sexual abuse of a child - in any form.  That the defendant is not alleged to have engaged in "sexual intercourse" with any of these three children is not a mitigating factor - and does not lessen the crimes he committed.[6]

Second, the defendant offers a blank statement that recidivism declines as age increases, without discussion of how or whether the offered statistics are even valid in child exploitation offenses.  *See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic

---

[6]  This argument by the defendant also ignores his prior conviction for the abuse of his son, and the allegations of his repeated rape of his granddaughter, and his longstanding child pornography offenses.  PSR ¶¶86, 19, 20.

Proc. 457, 458 (2007):

> The course of pedophilia[7] is usually long term. In a study that examined the relationship between age and types of sexual crimes, Dickey et. al.[8] found that up to 44% of pedophiles in their sample of 168 sex offenders were in the older adult age range (age, 40-70 years). When compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that pedophiles offend in their later years at a greater rate than other sexual offenders.

Third, ROOD moves for a non-Guidelines sentence by arguing that "elderly" (defined as age *50* and up) inmates have a harder time adjusting to prison life, and that ROOD has numerous health problems. Defendant's Sentencing Memorandum, pp. 5-6. It cannot go unnoticed that by definition, ROOD was "elderly" when he committed all of the charged offenses, and that he was not hampered in their commission by health issues. ROOD was 51 in January, 2005 when he committed Count 1 of the Indictment, 54 when he committed Count 2, and 55 when he committed Count 3. Moreover, it should not be forgotten that ROOD has also pled guilty to child pornography offenses - the distribution, receipt, and possession of child pornography over the course of at least 2 years - May 2007 through August, 2009 - committed at ages 54 to 56. PSR ¶¶15-17, 20-21. As such, FLAY

---

[7] The diagnostic criteria for pedophilia, all of which are present here, are:

> A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or *behaviors involving sexual activity with a prepubescent child or children* (generally age 13 years or younger).
> B. *The person has acted on these sexual urges*, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
> C. The person is at least age 16 and at least 5 years older than the child or children in Criteria A.

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (DSM -IV-TR), 2000, p. 572 (emphasis added).

[8] Dickey R, Nussbaum D, Chevolleau K, Davidson H. *Age as a differential characteristic of rapists, pedophiles, and sexual sadists*. J Sex Marital Ther.2002;28:211-218.

**Page 6**

A. 139

ROOD stands as a testament against the notion that as one ages his proclivity to engage in criminal

conduct lessens, or that because of health issues he will not offend against a child.  But for the fact

of his arrest, it is virtually certain that he would have continued in his offenses.  And when

considering whether ROOD's adjustment to prison life is a reason to mitigate his sentence, the Court

should at the same time weigh and consider what adjustment to childhood, and right to a normal life,

ROOD took from the children he so carelessly victimized, and the lingering effect his crimes have

had on the lives of their families- whose trust he betrayed.  PSR ¶¶24, 25.

Fourth, it is irrelevant whether ROOD was drunk the night he abused his son in 1991, and

whether the "only" children he abused are the three charged in the Indictment (the Court would have

to discount the compelling statement of his granddaughter to find this).   Defendant's Sentencing

Memorandum, pp. 6-7.  These are hardly reasons to impose a non-Guidelines sentence in a case

where a man stands convicted of using 3 toddlers to engage in sexually explicit conduct for the

purpose of producing (and collecting) explicit images of those children, while at the same time

victimizing innumerable other children by engaging in the distribution, receipt, and possession of

child pornography from the Internet.

Even without the mandatory sentence of Life in §3559(e), or a Guidelines range that also

calls for Life, the history of this defendant, and the nature and seriousness of his current offenses,

justify the imposition of just that sentence.

Respectfully submitted this 13th day of May, 2011

RICHARD S. HARTUNIAN
United States Attorney
/s/
By: Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No.510187

A. 140

2

1   Sentencing

2                COURT CLERK:  United States of America

3   versus Flay Rood, criminal number 2010-CR-149.

4                Counselors, your appearance for the record,

5   please.

6                MS. FLETCHER:  Lisa Fletcher appearing on

7   behalf of the United States.  Good afternoon, Your Honor.

8                THE COURT:  Good afternoon.

9                MS. TUOHEY:  Good afternoon, Your Honor.

10  Melissa Tuohey appearing on behalf of Flay Rood who is also

11  present.

12               THE COURT:  Any reason why we should not now

13  proceed with sentencing?

14               MS. FLETCHER:  No, Your Honor.

15               MS. TUOHEY:  No, Your Honor.

16               THE COURT:  First of all, Ms. Tuohey, you

17  have had an opportunity to review the Presentence Report

18  with your client?

19               MS. TUOHEY:  I have, Your Honor.

20               THE COURT:  Mr. Rood, you have had a chance

21  to go over this report with your lawyer?

22               THE DEFENDANT:  Yes, sir.

23               THE COURT:  Ms. Tuohey, you have indicated

24  in your papers you have some objections to the Paragraphs

25  18 and 19?

26               MS. TUOHEY:  Yes, Your Honor.

A. 141

3

1   Sentencing

2            THE COURT:  Mr. Rood, do you have any

3   objections to anything else in this report other than, as

4   your counsel has indicated, Paragraphs 18 and 19?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Ms. Tuohey, do you wish to be

7   heard?

8            MS. TUOHEY:  Your Honor, as I set forth in

9   my letter, and I attached letters of support from members

10  of Mr. Rood's family, the allegations that are being

11  objected to, specifically with respect to V-3, I understand

12  that, yes, some of the images involved in the offense,

13  Mr. Rood is touching the penis of V-3.

14           However, the allegations that he denies are

15  that there were any sexual acts consisting of penetration,

16  of that like manner, or the allegations set forth in

17  Paragraph 19 regarding what his granddaughter stated

18  happened on that date.

19           Again, Your Honor, we are objecting on the

20  basis of the timing.  First of all, they came forward for

21  the first time following Mr. Rood's arrest for this

22  offense, that pertains to V-3, and secondly, the

23  allegations regarding his granddaughter and the sister of

24  his granddaughter.  Again, that statement was provided five

25  years after the events were alleged to occur.  There has

26  not been any corroboration of those allegations.

A. 142

4

1   Sentencing

2           I think the letters of support from his

3   family members who speak about those incident and

4   specifically the letters of his grandchildren contradict

5   those allegations, Your Honor.

6           THE COURT:  Well, let me ask you.

7   Paragraphs 18 and 19 reflect interviews, and there is also

8   a statement that has been submitted from the granddaughter.

9   He has denied it, but there is no denying that these were

10  interviews and that this was the substance of the

11  interviews; isn't that correct?

12          MS. TUOHEY:  Yes, Your Honor.

13          THE COURT:  So.  Ms. Fletcher, do you wish

14  to be heard?

15          MS. FLETCHER:  Judge, for all the reasons

16  outlined in our response, we believe that not only should

17  this remain in the PSR, but should be considered by the

18  Court.  As you pointed out, they are simply relating the

19  interviews of these people.  We have a sworn statement from

20  the granddaughter, and the images that were found on the

21  defendant's computer corroborate, not only the sexual

22  contact with V-3, but the granddaughter's rendition of what

23  happened when she observed that abuse.

24          THE COURT:  Okay.  The objections to

25  Paragraphs 18 and 19 are denied, and they will both remain

26  in the Presentence Investigation Report.

A. 143

5

1   Sentencing

2                In addition to the Presentence Report, I

3   have, and it should be on the record, the prior motion

4   which is set forth in Dockets 23, 24, and 25, and have been

5   considered in my rulings that I will be making in the

6   future in this case, in a few moments.

7                Also I have received in addition to that,

8   the government's sentencing memorandum and the -- that's at

9   Docket 36; the defendant's sentencing memorandum at

10  Docket 38.  Docket 40 has a number of letters in support of

11  family and friends of Mr. Rood.  And the government's

12  response at Docket No. 42 which some victim impact

13  statements at Docket 43.

14               Are there any further written materials I

15  should review before we proceed further counselors?

16               MS. FLETCHER:  No, Your Honor.

17               MS. TUOHEY:  No, Your Honor.

18               THE COURT:  Next, the Probation Department

19  has set forth a total offense level of forty-five, based on

20  the grouping in Paragraphs 30 through 70, of forty-eight.

21               And, Ms. Fletcher, does the government move

22  for an additional one level for acceptance of

23  responsibility and a prompt plea of guilty?

24               MS. FLETCHER:  Yes, your Honor.

25               THE COURT:  That motion is granted.  And as

26  set forth in Paragraph 73, it results in a total offense

A. 144

6

1    Sentencing

2    level of seventy-three.  At Paragraph 74, the prior sex

3    conviction does got play into the total.  And the total

4    offense level would be forty-five, and as set forth in

5    Paragraph 76, the maximum is a total offense level of

6    forty-three with a criminal history category five, as set

7    forth in Paragraph 90 of the Presentence Report, which I

8    will read.

9                 The total of the criminal history points is

10   three.  According to the sentencing table at U.S.S.G.

11   Chapter 5, Part A, three criminal history points establish

12   a criminal history category of two.  However, pursuant to

13   U.S.S.G. Section 4B1.5(a)(2), the defendant's criminal

14   history category becomes a five because he is a repeat and

15   dangerous sex offender.  This would result in a guideline

16   imprisonment of life.

17                And the defendants have objected to that,

18   together with their motion, and we are talking about the

19   prior conviction of the defendant as to whether it applies

20   in this case.  And you may be seated a moment because I

21   want the record to show what this prior conviction is.

22                January 10, 1991, when he was age

23   thirty-seven, the gross sex imposition, third degree

24   felony, Springfield, Ohio.  And according to the court

25   records, on January 6, 1991, the defendant admitted to

26   taking done his two-year-old son's pants and underwear and

A. 145

7

1   Sentencing

2   rubbing his son's penis while he had his own penis in his

3   hand.  This occurred in a parked vehicle in front of his

4   residence.

5              According to police and court records, the

6   mother of the child, Cheryl Cornell, reported that she and

7   the defendant had been out drinking, and they came home

8   around 3:00 a.m. with their two children.  The defendant

9   told her to go into the house, and he would bring their

10  two-year-old son inside.  After some time, she went back to

11  the car and saw the defendant with his pants unzipped and

12  his penis in his hand, and the child lying next to him with

13  his pants pulled down.  She took the child into the house

14  and checked his butt and penis, but found nothing unusual.

15  She asked him if Daddy touched him, and he stated, "Daddy

16  played with my dink-dink."

17             That is the conviction that we are

18  determined with.

19             Ms. Tuohey, do you wish to elaborate further

20  on your objections to that being included which would

21  result in a life sentence?

22             MS. TUOHEY:  Your Honor, I will address it

23  regarding our pretrial motion previously filed with the

24  Court regarding a ruling on whether or not that conviction

25  would satisfy a mandatory life sentence under

26  18 U.S.C. 3559(e).  If the Court makes a ruling on that and

A. 146

8

1    Sentencing

2    denies our motion, the rest of the arguments will stand

3    moot, given the fact that the mandatory life will become

4    his guideline sentence.

5              So, Your Honor, I guess we are seeking a

6    ruling on that in regard to our motion.  As we stated, we

7    are -- our argument is that his Ohio conviction does not

8    qualify under 3559(e) given the fact of the elements of the

9    Ohio offense versus the federal offense, that under the

10   Taylor Elemental Categorical Approach, Your Honor, the Ohio

11   statute calls for less than the federal offense.

12             I think both parties are in agreement that

13   the only comparable federal statute is found under

14   18 U.S.C. 2241, and in comparing those two convictions are

15   those two statutes, Your Honor.  Looking at the language,

16   the Ohio statute does not require the mens rea element as

17   defined by the federal statute.

18             For example, it is our argument that the

19   mens rea requirement set forth in the federal statute that

20   requires an intentional touching for the purpose of arousal

21   for either party is missing in the Ohio statute, which that

22   sexual contact is defined as any touching of the prohibited

23   areas for the purpose of sexual gratification of either

24   party.

25             THE COURT:  What you are arguing is that

26   under the Ohio statute, you are arguing that any accidental

A. 147

1   Sentencing

2   touching of an infant would still be a crime.

3              MS. TUOHEY:  Yes.  Whereas, it would not

4   under the federal statute.

5              With regards to the information that the

6   Court relies upon in making this determination as set forth

7   in our reply memorandum, we are specifically objecting to

8   the Court considering or looking to Government Exhibit 80

9   for the reasons set forth in our reply memorandum that we

10  do not believe under Ohio law that these -- first of all,

11  the affidavit of the investigator from the Clark County,

12  Ohio prosecutors' office stating that the municipal court's

13  statement was before the Ohio Common Pleas Court, we're not

14  in agreement with that under the procedures.

15             And what we discovered with regard to the

16  municipal court's statement, is in the lower court that is

17  presented for purposes of preliminary hearing and was not

18  part of the charging documents set forth in Government

19  Exhibit B.

20             Even if the Court were to deny our Taylor

21  elemental categorical approach even under a modified

22  categorical approach, looking at charging documents just in

23  Government Exhibit B, again the Ohio statute fails to meet

24  the elements of the federal statute.

25             For those reasons, Your Honor, as fully

26  briefed in our memorandum and our reply, that Ohio state

A. 148

10

1   Sentencing

2   conviction fails to meet the requirements under

3   Section 3559(e), and therefore, it should not subject

4   Mr. Rood to a mandatory term of life imprisonment.

5           THE COURT:  Thank you.

6           Ms. Fletcher, you may be heard.

7           MS. FLETCHER:  Yes, Judge.  In preparing for

8   today's argument, I reviewed our reply to the motion, and I

9   think it is pretty comprehensive, and just to reiterate a

10  couple of points.

11          First, the defense is arguing against the

12  culpable mental state.  It is not a strict liability crime

13  in Ohio for the gross sexual imposition as we have laid

14  out.  Not only by the reading of the statute, itself, it is

15  not the mere touching that is criminalized, but the

16  touching with a purpose.  Purpose and intent define one

17  another.  That is the requisite mental state.  It is laid

18  out in some of the case law that we have cited from Ohio.

19          "It must be the purpose or intention of

20  sexually arousing or gratifying either himself or the

21  victim," as stated in State versus Mundy which is cited in

22  our reply brief.

23          Furthermore, as to the categorical or the

24  modified categorical approach as cited in United States

25  versus Walker, if the statute criminalizes some conduct, it

26  does not fall within the federal definition of the

A. 149

1  Sentencing

2  predicate offense.  Then we undertake the second step in

3  which we ask whether the government has shown that the plea

4  necessarily rested on a fact identifying the conviction as

5  a predicate offense.

6           It is the government's position that the

7  only issue or the only difference between the Ohio State

8  statute and the concurrent federal statute is that the

9  federal statute criminalizes the touching of somebody

10 twelve and younger, where the Ohio statute criminalizes the

11 touching of someone thirteen and younger.

12          And we believe that through our exhibits and

13 through the paperwork, including the Municipal Court

14 statement, that we have proved beyond any shadow of a doubt

15 that it, in fact, rested on a fact identifying the

16 conviction as a predicate offense.

17          THE COURT:  Thank you.

18          A defendant is subject to enhanced penalties

19 if he has a prior conviction relating to the aggravated

20 sexual abuse, sexual abuse or abuse of sexual conduct

21 involving a minor.  Pursuant to 18 U.S.C. 3559(e)(1):

22          "A person who is convicted of a federal sex

23 offense in which a minor is the victim shall be sentenced

24 to life imprisonment if the person has a prior sex

25 conviction in which a minor was the victim, unless the

26 sentence of death is imposed."

A. 150

12

1    Sentencing

2              The defendant attorney, in a very

3    imaginative argument, argues that unlike federal law, the

4    touch of a minor would be a crime under -- the accidental

5    touching of a minor would be a crime under the Ohio

6    statutes, and defense counsel provides some examples which

7    I compliment her on using her ingenuity to do so.

8              However, the Ohio statute is -- does not

9    penalize the accidental touching of a minor and, therefore,

10   it is the same as the Federal Statute 2251.  As set forth

11   in the Ohio statute, it says:

12             "Sexual conduct means any touching of the

13   erogenous zone of another, including without limitation the

14   thigh, genitals, buttock, pubic region, or, if the person

15   is a female, a breast, for the purpose of sexually arousing

16   or gratifying either person."

17             And then it is important to note that the

18   Ohio Code goes on to state:

19             "A person acts purposely when it is his

20   specific intention to cause a certain result, or, when the

21   gist of the offense is a prohibition against conduct of a

22   certain nature, regardless of what the offender intends to

23   accomplish thereby, it is his specific intention to engage

24   in conduct of that nature."

25             Therefore, I find that the defendant's prior

26   conviction as set forth in Paragraph 86 of the Presentence

A. 151

13

1   Sentencing

2   Report is a violation of Ohio Code 2907.05 and is a state

3   sex offense.  It is a prior conviction with a minor, which

4   a minor is a victim under Section 3559(e)(2)(c).  The

5   defendant's convictions in which he pled guilty under

6   Counts 1 through 3 are also convictions of federal sex

7   offenses under 18 U.S.C. 3559(e)(1).

8                    Therefore, I find that the mandatory

9   minimum applies.  For the record, pursuant to U.S.S.G. 5, a

10  base offense level of forty-three, with a criminal history

11  category of five, the guideline range of imprisonment is

12  life imprisonment.

13                   On Counts 1 through 3, the mandatory minimum

14  term of imprisonment is life imprisonment pursuant to

15  18 U.S.C. 3559(e)(1).  These offense are Class A felonies.

16  18 U.S.C. 3559(a)(1).

17                   On Counts 4 and 5, the minimum term of

18  imprisonment is fifteen years, and the maximum term of

19  imprisonment is forty years, pursuant to

20  18 U.S.C. 2252A(b)(1).  These offenses are Class B

21  felonies.  18 U.S.C. 3559(a)(2).

22                   On Count 6, the minimum term of imprisonment

23  is ten years, and the maximum term of imprisonment is

24  twenty years, pursuant to 18 U.S.C. 2252A(b)(2).  This

25  offense is Class C felony.  18 U.S.C. 3559(a)(3).

26                   Therefore, any other motions for a

A. 152

14

1   Sentencing

2   non-guideline sentence factors is denied as moot.

3            And at this time, Ms. Fletcher, does the

4   government have any victims that wish to be heard?

5            MS. FLETCHER:  Yes, Your Honor.  H.R. would

6   like to speak and, Your Honor, H.R. is a minor, and I would

7   request that in the transcription of this proceeding, she

8   be referred to by her initials.

9            THE COURT:  So noted.

10           VICTIM H.R.:  Hi.  I am H.R.  I would like

11  it say, Poppy, how could you?  I trusted you.  You were

12  supposed to protect us from getting hurt.  Instead, you

13  hurt us.  I can hardly speak because I am so ashamed to

14  even say that I am related to you.

15           I just wanted to let you know one thing.

16  Why us little kids, who didn't know any better, so why

17  would you do this?  Why?  We were so innocent, young, and I

18  could speak for me, A., and actually any others, you ruined

19  our lives.  And now we are traumatized.

20           And thanks to you, I can't go to bed at

21  night without having nightmares, and I also have flashbacks

22  that are uncontrolled.  So now I can say thank you for the

23  horrible life because now I know what not to do.

24  Sincerely, H.

25           THE COURT:  Thank you.

26           Any other victims?

A. 153

15

1    Sentencing

2                    MS. FLETCHER:  No, your Honor.

3                    THE COURT:  Ms. Tuohey, any family or

4    friends wish to be heard?

5                    MS. TUOHEY:  No, Your Honor, in light of the

6    Court's ruling, his family is here, but we will rely on the

7    letters submitted already to the Court.  Thank you.

8                    THE COURT:  Do you wish to be heard?

9                    MS. TUOHEY:  Not beyond my sentencing

10   memorandum and papers already filed with the Court, Your

11   Honor.

12                   THE COURT:  Mr. Rood, do you wish to say

13   anything to me at this time?  If you do, stand up and say

14   so.

15                   THE DEFENDANT:  No, sir.

16                   THE COURT:  Ms. Fletcher, do you wish to be

17   heard?

18                   MS. FLETCHER:  Your Honor, I don't think I

19   can add anything to what H.R. just said, and we rely

20   otherwise on the Court's ruling today.

21                   THE COURT:  Mr. Rood, you pled guilty to six

22   offenses, two involving your grandchildren, one involving a

23   neighbor's, ages two, three, and seven.  You pled guilty to

24   having voluminous amounts of child pornography in your

25   possession.

26                   Ordinarily I would be very -- feel very bad

A. 154

1   Sentencing

2   about giving anyone a life sentence.  In your case, it is

3   not that difficult.  We must protect children, and you are

4   obviously a severe menace to society, the way you have

5   treated your own relatives.

6           I know that I have received letters from

7   your family who say that you didn't do anything.  But you

8   pled guilty, and there is pictures, and how you can -- how

9   they can believe that is rather incomprehensible that they

10  would still believe that you are innocent.  You pled guilty

11  to six counts.  That's not an innocent man.  And there are

12  pictures, pictures to prove that you took of your grandson.

13          So come forward to be sentenced, Mr. Rood.

14          Upon your plea of guilty to Counts 1 Through

15  6 of the Indictment, it is the judgment of the Court that

16  you are hereby committed to the custody of the Bureau of

17  Prisons to be imprisoned for life, on Counts 1 through 3;

18  fifteen years on Counts 4 and 5; and ten years on Count 6,

19  all to run concurrently.

20          While in custody, I recommend you

21  participate in the sex offender treatment, if eligible.  In

22  the alternative, it is recommended you participate in the

23  Sex Offender Management Program.

24          I have imposed a life sentence with the

25  understanding that you will not be eligible for release.

26  However, in the event you are released, I impose a term of

A. 155

17

1    Sentencing

2    supervised release of life on each count to run

3    concurrently.  If you ever are on supervised release, you

4    shall not commit another federal, state or local crime.

5    You shall comply with the standard conditions that have

6    been adopted by this Court, and the following special

7    conditions which have been provided to you and your

8    attorney.  I adopt these special conditions which will be

9    made part of the record.

10            You shall pay to the Clerk of Court a

11   special assessment of six hundred dollars which is due

12   immediately.  I do not impose any fine.

13            You shall also forfeit to the United States

14   all right, title, and interest in the items listed in the

15   Preliminary Order of Forfeiture signed by me on January 10,

16   2011.

17            You do have a right to appeal this sentence.

18   Consult with your attorney to determine whether or not an

19   appeal is warranted.  Any appeal must be filed within

20   fourteen days of this sentence.

21            There are no counts to be dismissed, are

22   there?

23            MS. FLETCHER:  That's correct, Your Honor.

24            THE COURT:  Anything further, counselors?

25            MS. TUOHEY:  No, Your Honor.

26            MS. FLETCHER:  Nothing further.

A. 156

18

1    Sentencing

2              THE COURT:  The defendant is remanded to the

3    custody of the United States Marshals in accordance with

4    the terms of the sentence just imposed.

5              Mr. Minor.

6              COURT CLERK:  Court stands adjourned.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A. 157

✎AO 245B    NNY(Rev. 10/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| Northern | District of | New York |
|---|---|---|

UNITED STATES OF AMERICA    **JUDGMENT IN A CRIMINAL CASE**
**V.**
Flay Rood

Case Number:      DNYN510CR000149-001

USM Number:      15838-052

Melissa A. Tuohey, Assistant Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315)701-0080
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    1 through 6 of the Indictment on December 22, 2010.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) & | | | |
| 18 U.S.C. § 3559(e)(1) | Production of Child Pornography | 1/05, 1/08, 3/08 | 1, 2, 3 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution and Receipt of Child Pornography | 8/09 | 4, 5 |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography | 8/31/09 | 6 |

The defendant is sentenced as provided in pages 2 through      6      of this judgment.  The sentence is imposed in accordance
with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)                          ☐ is    ☐ are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 19, 2011
Date of Imposition of Judgment

David N. Hurd
District Judge

May 26, 2011
Date

JAK

A. 158

AO 245B    NNY(Rev. 10/05) Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment — Page   __2__   of   __6__

DEFENDANT:      Flay Rood
CASE NUMBER:   DNYN510CR000149-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**Life on Counts 1 through 3, 15 years on Counts 4 and 5, and 10 years on Count 6; all to run concurrently.**

X   The court makes the following recommendations to the Bureau of Prisons:

The defendant participate in sex offender treatment, if eligible. In the alternative, it is recommended he participate in the Sex Offender Management Program.

X   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____ ☐ a.m. ☐ p.m.  on  _____ .

    ☐  as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on  _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on  _____ to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

A. 159

AO 245B    NNY(Rev. 10/05) Judgment in a Criminal Case - DNH    Sheet 3 — Supervised Release

Case 11-3174 Document 17 10/04/2011 408740 Page 163 of 167
Case 1:10-cr-00149-DNH Document 46 Filed 05/26/11 Page 3 of 6

Judgment—Page __3__ of __6__

DEFENDANT:        Flay Rood
CASE NUMBER:      DNYN510CR000149-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:

**The Court has imposed a life sentence with the understanding that the defendant will not be eligible for release. However, in the event he is released, the Court imposes a term of supervised release of life on each count, to run concurrently.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

x    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

x    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Deselect, if inapplicable.)

x    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;

14)   the defendant shall not possess a firearm, destructive device, or any other dangerous weapon;

15)   the defendant shall provide the probation officer with access to any requested financial information; and

16)   the defendant shall submit his or her person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

A. 160

Judgment—Page ___4___ of ___6___

DEFENDANT:        Flay Rood
CASE NUMBER:   DNYN510CR000149-001

# SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall not have any direct or indirect contact with the three identified victims.

2.  The defendant shall not have any direct contact with a person under the age of 18 unless it is supervised by a person approved of by the probation officer. The defendant shall not have indirect contact with a person under the age of 18 through another person or through a device (including a telephone, computer, radio, or other means) unless it is supervised by a person approved of by the probation officer. The defendant shall reasonably avoid and remove himself or herself from situations in which the defendant has any other form of contact with a minor.

3.  The defendant shall not be in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, or playgrounds, without the permission of the probation officer.

4.  The defendant shall participate in a mental health program, which will include, but will not be limited to, participation in a treatment program for sexual disorders. The program shall be approved by the United States Probation Office.

    The defendant's supervised release may include examinations using a polygraph, computerized voice stress analyzer, or other similar device to obtain information necessary for supervision, case monitoring, and treatment. The defendant shall answer the questions posed during the examination, subject to his or her right to challenge in a court of law the use of such statements as violations of the defendant's Fifth Amendment rights. In this regard, the defendant shall be deemed to have not waived his or her Fifth Amendment rights. The results of any examinations shall be disclosed to the United States Probation Office and the Court, but shall not be further disclosed without the approval of the Court.

5.  The defendant shall contribute to the cost of any evaluation, testing, treatment and/or monitoring services rendered in an amount to be determined by the probation officer based on the defendant's ability to pay and the availability of third party payments.

6.  The defendant shall not use or possess any computer or any other device with online capabilities, at any location, except at his or her place of employment, unless the defendant participates in the Computer Restriction and Monitoring Program. The defendant shall permit the United States Probation Office to conduct periodic, unannounced examinations of any computer equipment the defendant uses or possesses, limited to all hardware and software related to online use (e.g., use of the World Wide Web, e-mail, instant messaging, etc.). These examinations may include retrieval and copying of data related to online use, and the viewing of pictures and movies which may be potential violations of the terms and conditions of supervised release from this computer equipment including any internal or external peripherals, internet-capable devices, and data storage media. This computer equipment may be removed to the Probation Office or to the office of their designee for a more thorough examination. The Probation Office may use and/or install any hardware or software system that is needed to monitor the defendant's computer use, subject to the limitations described above.

7.  If the defendant's employment requires the use of a computer, the defendant may use a computer in connection with the employment approved by the probation officer, at the defendant's place of employment, provided the defendant notifies his or her employer of: (1) the nature of his or her conviction; and (2) the fact that the defendant's conviction was facilitated by the use of the computer. The Probation Office must confirm the defendant's compliance with this notification requirement.

8.  In the event the defendant's treatment provider determines that the use of a computer or internet service is contraindicated to the defendant's course of recovery, the Court, upon considering such information, may prohibit the use of a computer if the Court is convinced that such is the case based upon the evidence.

9.  While in treatment and for the remainder of the term of supervision following completion of treatment, the defendant shall not view, possess, own, subscribe to or purchase any material, including pictures, videotapes, films, magazines, books, telephone services, electronic media, computer programs, or computer services that depict sexually explicit conduct, as defined in 18 U.S.C. 2256(2).

# DEFENDANT'S ACKNOWLEDGMENTOF APPLICABLE CONDITIONS OF SUPERVISION

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

The conditions of supervision have been read to me. I fully understand the conditions and have been provided a copy of them.

_____          _____
Defendant                                                            Date

_____          _____
U.S. Probation Officer/Designated Witness                Date

A. 161

Case 11-3176 Document 17 10/04/2011 408740 Page 165 of 167
Case 5:10-cr-00149-DNH Document 46 Filed 05/26/11 Page 5 of 6

Judgment — Page    5    of    6

DEFENDANT:          Flay Rood
CASE NUMBER:        DNYN510CR000149-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 600 | $ Waived | $ N/A |

☐  The determination of restitution is deferred until _____.  An *Amended Judgment in a Criminal Case* (AO 245C)  will
be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in
the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid
before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |

| **TOTALS** | $ | $ |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth
day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for
delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the    ☐  fine   ☐  restitution.

☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after
September 13, 1994, but before April 23, 1996.

A. 162

Case 11-3174, Document 17, 10/04/2011, 408740, Page166 of 167
Case 5:10-cr-00149-DNH    Document 46    Filed 05/26/11    Page 6 of 6

Judgment — Page <u>    6    </u> of <u>    6    </u>

DEFENDANT:        Flay Rood
CASE NUMBER:    DNYN510CR000149-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    X    In full immediately; or

**B**    ☐    Lump sum payment of $ _____ due immediately, balance due

      ☐ not later than _____ , or
      ☐ in accordance with ☐ D,    ☐ E,    ☐ F, or    ☐ G below; or

**C**    ☐    Payment to begin immediately (may be combined with    ☐ D,    ☐ E, or    ☐ G below); or

**D**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**E**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**F**    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**G**    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to **Lawrence K. Baerman, Clerk, U.S. District Court, Federal Bldg., P.O. Box 7367, 100 S. Clinton Street, Syracuse, N.Y. 13261-7367,** unless otherwise directed by the court, the probation officer, or the United States attorney. If a victim cannot be located, the restitution paid to the Clerk of the Court for that victim shall be sent to the Treasury, to be retrieved if and when the victim is located.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

      ☐ Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

      ☐ The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

X    The defendant shall forfeit the defendant's interest in the following property to the United States:
    The items listed in the Preliminary Order of Forfeiture dated January 10, 2011.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

A. 163

**Local Criminal Notice of Appeal Form.**

## NOTICE OF APPEAL
### United States District Court
### Northern District of New York

UNITED STATES OF AMERICA
    -V.-

FLAY ROOD

Docket No.: _____ 10-CR-149 _____

HON. DAVID N. HURD
(District Court Judge)

Notice is hereby given that _____ FLAY ROOD _____ appeals to the United States Court of Appeals for the Second Circuit from the judgment[   X   ], other[ _____ ] _____
(specify)

entered in this action on ____ May 26, 2011 ____    (date)

Offense occurred after November 1, 1987   Yes | ☐ |   No | ☐ |

This appeal concerns: Conviction only | ☐ |   Sentence only | ☐ |   No | ☐ |

Date _____ May 27, 2011 _____

TO     LISA FLETCHER, ESQ.

Address   OFFICE OF THE UNITED STATES ATTORNEY

U.S. COURTHOUSE & FEDERAL BLDG.

SYRACUSE, NEW YORK 13261

ADD ADDITIONAL PAGE (IF NECESSARY)

MELISSA A. TUOHEY, ESQ.
(Counsel for Appellant)

Address   OFFICE OF THE FEDERAL PUBLIC DEFENDER

4 CLINTON SQUARE, 3RD FLOOR

SYRACUSE, NEW YORK 13202

Telephone Number: ____ 315-701-0080 ____

| TO BE COMPLETED BY ATTORNEY | TRANSCRIPT INFORMATION -FORM B |
|---|---|

▶   **QUESTIONNAIRE** | ▶ **TRANSCRIPT ORDER** | ▶ DESCRIPTION OF PROCEEDINGS FOR WHICH TRANSCRIPT IS REQUIRED (INCLUDE DATE)

Dates

[ ☐ ] I am ordering a transcript
[ ☐ ] I am not ordering a transcript
    Reason
    [ ☐ ] Daily copy is available
    [ ☐ ] U.S. Attorney has placed order
    [ ☐ ] Other. Attach explanation

Prepare transcript of
| ☐ | Prepare proceedings _____
| ☐ | Trial _____
| ☐ | Sentencing _____
| ☐ | Post-trial proceedings _____

The attorney certifies that he/she will make satisfactory arrangements with the court reporter for payment of the cost of the transcript. (FRAP 10(b)).   ▶
Method of payment    | ____ | Funds

ATTORNEY'S SIGNATURE   S/MELISSA A. TUOHEY, ESQ    DATE   May 27, 2011

▶   **COURT REPORTER ACKNOWLEDGMENT**     To be completed by Court Reporter and forwarded to Court of Appeals,

| Date order received | Estimated completion date | Estimated number of pages |
|---|---|---|
| | Date _____   Signature _____ (Court Reporter) | |

### DISTRIBUTE COPIES TO THE FOLLOWING:

1. Original to U.S. District Court (Appeals Clerk).
2. Copy U.S. Attorney's Office.
3. Copy to Defendant's Attorney

4.   U.S. Court of Appeals
5.   Court Reporter (District Court)

USCA-2
FORM A Rev. 10-02

# A. 164